1  EVE H. KARASIK (Cal. Bar No. 155356)
   GABRIEL I. GLAZER (Cal. Bar No. 246384)
2  STUTMAN TREISTER & GLATT
   PROFESSIONAL CORPORATION
3  1901 Avenue of the Stars, 12th Floor
   Los Angeles, California 90067
4  Telephone: (310) 228-5600
   Facsimile: (310) 228-5788
5
6  Bankruptcy Counsel for the J.T. Thorpe
   Settlement Trust
7  MICHAEL E. MOLLAND (Cal. Bar No. 111830)
   BENJAMIN P. SMITH (Cal. Bar No. 197551)
8  AARON S. DUTRA (Cal. Bar No. 216971)
   MORGAN, LEWIS & BOCKIUS LLP
9  One Market
   Spear Street Tower
10 San Francisco, California 94105
   Telephone: (415) 442-1000
11 Facsimile: (415) 442-1177
12 Special Litigation Counsel for the J.T. Thorpe
   Settlement Trust
13
14
                    UNITED STATES BANKRUPTCY COURT
15
                    CENTRAL DISTRICT OF CALIFORNIA
16
                         LOS ANGELES DIVISION
17
18 In re                              ) Chapter 11
                                      )
19 J.T. THORPE, INC.,                 ) Case No. 02-14216-BB
                                      )
20      Debtor                        )
                                      ) Adversary Case No. [To Be Determined]
21 _____)
                                      ) **COMPLAINT FOR DECLARATORY**
22 J.T. THORPE SETTLEMENT TRUST       ) **JUDGMENT**
                                      )
23      Plaintiff,                    )
                                      )
24      vs.                           )
                                      )
25 MICHAEL J. MANDELBROT and THE      )
   MANDELBROT LAW FIRM                )
26                                    )
        Defendants.                   )
27 _____)
28

566103v6

1    Plaintiff, the J.T. Thorpe Settlement Trust (the "J.T. Thorpe Trust"), alleges for this

2    Complaint, upon knowledge of its own acts and upon information and belief as to all other matters as

3    follows:

4    **I.**

5    **JURISDICTION AND VENUE**

6    1.    This Court has jurisdiction over this proceeding under 28 U.S.C. §§ 157(a)

7    and 1334 and the *Order Confirming First Amended Joint Plan of Reorganization Dated August 5,*

8    *2005 and Granting Related Relief* (the "Confirmation Order") [District Court Docket No. 36] entered

9    by the United States District Court for the Central District of California in the matter of *In re J.T.*

10    *Thorpe*, Case No. CV 05-2412-SJO.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),

11    (B), and (O).  Venue is proper pursuant to 28 U.S.C. § 1409.

12    2.    This matter is an adversary proceeding governed by Part VII of the Federal

13    Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), pursuant to Bankruptcy Rule 7001(9).

14    3.    The statutory basis for the relief requested herein is 11 U.S.C. § 105(a) and 28

15    U.S.C. § 2201.

16    **II.**

17    **NATURE OF ACTION**

18    4.    Through the Complaint, the J.T. Thorpe Trust seeks a declaratory judgment in

19    a live and concrete dispute between the parties that is ripe for adjudication.  This Court entered an

20    order granting the relief requested by the J.T. Thorpe Trust to permit the examination of certain J.T.

21    Thorpe Trust claims [Docket No. 1644] (the "First Examination Order") after the J.T. Thorpe Trust

22    made a factual showing supporting the investigation it had commenced, as authorized by the Plan (as

23    defined below) documents, because the J.T. Thorpe Trust had a reason to believe that the

24    Mandelbrot Law Firm and Michael Mandelbrot (collectively, "Mandelbrot" or the "Defendants")

25    were engaged in a pattern of submitting unreliable evidence in support of claims for substantial

26    amounts of money from the J.T. Thorpe Trust (the "Investigation"). Indeed, the J.T. Thorpe Trust

27    recently deposed a former employee of the J.T. Thorpe and Mandelbrot pursuant to a separate order

28    of this Court [Docket No. 1695] (the "Second Examination Order," and, together with the First

1    Examination Order, the "Examination Orders"), which only heightened the J.T. Thorpe Trust's

2    concerns that Mandelbrot has submitted unreliable evidence to the J. T. Thorpe Trust in support of

3    Mandelbrot's claims.[1] As a result of the examinations taken to date by the J.T. Thorpe Trust, and the

4    Defendants behavior in connection with the Investigation, the J.T. Thorpe Trust now suspects that

5    the Defendants may be engaged in a broader pattern and practice of submitting unreliable evidence

6    that could affect virtually all of the claims submitted by the Defendants.

7              5.    Notwithstanding the Examination Orders and several other orders of the Court

8    and the United States District Court (the "Courts") overruling the Defendants' oppositions to

9    examinations and providing other relief in support of the Investigation, Mandelbrot has recently

10   threatened to sue the J.T. Thorpe Trust on grounds that are substantially similar to those previously

11   presented to the Courts: that the Investigation is improper and should not proceed.   Attached to this

12   Complaint as Exhibit "A" is a copy of a letter sent by the Trusts (as defined below) to Defendants

13   and which describes various disputes between the parties with respect to the Investigation.

14             6.    This Complaint seeks a determination by this Court that resolves the

15   controversy as to whether the Investigation is appropriate and authorized under the Plan documents

16   so that the Investigation can be conducted and concluded without the inordinate cost and resource

17   expense that have occurred to date and threaten to continue to the detriment of the J.T. Thorpe Trust

18   beneficiaries.

19             7.    The Thorpe Insulation Settlement Trust and the Western Asbestos Settlement

20   Trust (collectively, with the J.T. Thorpe Trust, the "Trusts") have also informed the Defendants that

21   they are conducting similar Investigations with regard to claims filed by Mandelbrot in those trusts.

22   Complaints similar to this Complaint are being simultaneously filed in the bankruptcy cases for both

23   of these trusts.

24

25

26   [1]   The J.T. Thorpe Trust will not here describe the subject matter of the deposition because
     Mandelbrot has alleged that the testimony is privileged.  The J.T. Thorpe Trust believes that the
27   Defendants' assertions of privilege are unfounded and will move the Court to resolve this
     dispute.
28

# III.

## THE PARTIES

8.     Plaintiff, the J.T. Thorpe Trust, is a trust established under the laws of the State of Nevada.  The J.T. Thorpe Trust was formed pursuant to the *First Amended Joint Plan of Reorganization Dated August 5, 2005*, as amended, [Docket No. 971] (the "Plan"), which was confirmed pursuant to the Confirmation Order.

9.     Defendant, Michael J. Mandelbrot ("Mandelbrot"), is an individual who resides in the State of California.

10.    Mandelbrot also appears to act through the Mandelbrot Law Firm ("MLF"). However, the Plaintiff has been unable to determine whether the MLF is a separate legal entity or simply a "dba" for Mandelbrot. Out of an abundance of caution, the Plaintiff is naming MLF as party in this action, and will serve MLF with this Complaint and related summons.  References to Mandelbrot and the Defendants in this Complaint include the MLF.

# IV.

## FACTUAL ALLEGATIONS

11.    On February 12, 2002, J.T. Thorpe, Inc. filed its voluntary petition commencing the above-captioned case under chapter 11 of the Bankruptcy Code.

12.    On January 18, 2006, the District Court entered the Confirmation Order.

13.    On June 29, 2006, the Plan became effective and, as a result, the J.T. Thorpe Trust came into existence.  The J.T. Thorpe Trust has continuously operated from and after the Effective Date of the Plan.

14.    Pursuant to the terms of the Plan, the J.T. Thorpe Trust:

(a)     assumed all of the Debtor's liabilities for all Asbestos Related Claims (Plan at Article 3.2(d))[2]; and

---

[2]   All capitalized terms used herein and not otherwise defined herein have the meanings ascribed to those terms in the Plan.

1   (b)   was charged with evaluating, liquidating and paying all Asbestos

2   Related Claims in accordance with the Trust Distribution Procedures (the "TDP") and the Case

3   Valuation Matrix ("Matrix") that were included and approved as a part of the Plan.  (Plan at Article

4   4.1.)

5   15.   The Plan specifically reserved the Bankruptcy Court's jurisdiction over

6   various matters following confirmation of the Plan, including the activities of the J.T. Thorpe Trust

7   and the interpretation and enforcement of the Plan. (Plan at Articles 12.2 and 12.3(q).)

8   16.   The Plan documents provide that in order to qualify for compensation from

9   the J.T. Thorpe Trust, claimants must complete and submit to the J.T. Thorpe Trust a Claim Form

10   and supporting documentation substantiating that the claimant meets various TDP and Matrix

11   criteria establishing disease and damages caused by exposure to asbestos for which the Debtor is

12   legally responsible.  (TDP at Sections 6.1 and 6.2; Matrix at Section VII(a).)  All such information

13   must be certified by the claimant or the claimant's attorney in a manner "sufficient to meet the

14   requirements of Rule 11(b) of the Federal Rules of Civil Procedure."  (TDP at Section 6.1.)  In

15   evaluating claims submitted to it, the J.T. Thorpe Trust may consider deposition testimony, invoices,

16   affidavits, business records, deck logs, military service records or other credible evidence (Matrix

17   VII(a)), and may "require the submission of any other evidence to support or verify claims. . . ."

18   (Matrix at Section I(c).)

19   17.   Pursuant to the TDP, the J.T. Thorpe Trust is vested with the authority to audit

20   the reliability of evidence submitted to the J.T. Thorpe Trust by claimants or their counsel in support

21   of claims.  (TDP at Section 5.7(a).)  Section 5.7(a) of the TDP provides:

22   The Trust with consent of the TAC and Futures Representative may
23   develop methods for auditing the reliability of evidence reasonably
    related to the value of the claim, including additional reading of x-rays
24   and verification of pulmonary function tests, as well as the reliability of
    evidence of exposure to asbestos, including exposure to asbestos-
25   containing products manufactured or distributed by Thorpe, and
    requesting from claimants or other Trusts, claims materials submitted to
26   other Trusts. In the event that the Trust reasonably determines that any
    unreliable individual or entity has engaged in a pattern or practice of
27   providing unreliable medical or other evidence to the Trust, it may
28   decline to accept additional evidence from such provider in the future.

1

2

> Further, in the event that an audit reveals that fraudulent information has been provided to the Trust, the Trust may penalize any responsible claimant or claimant's attorney by disallowing the related Trust Claim or by other means including, but not limited to, requiring the claimant or attorney submitting the fraudulent information to pay the costs associated with the audit and any future related audit or audits, reordering the priority of payment of all affected claimants' Trust Claims, raising the level of scrutiny of additional information submitted from the medical facility or other source, refusing to accept additional evidence from the same, seeking the prosecution of the claimant or claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. §152, and seeking Rule 11 sanctions.

TDP § 5.7(a) (emphasis added).

8

9

10          18.     Thus, the J.T. Thorpe Trust is authorized to develop methods for auditing the

11   reliability of evidence submitted in support of claims and, in the event that the J.T. Thorpe Trust

12   reasonably determines that any person has engaged in a pattern or practice of providing unreliable

13   evidence to the J.T. Thorpe Trust, the J.T. Thorpe Trust may decline to accept additional evidence

14   from such person.  Moreover, in the event that the J.T. Thorpe Trust's audit reveals that fraudulent

15   information has been provided to the J.T. Thorpe Trust, the J.T. Thorpe Trust may impose a number

16   of penalties upon such person, including disallowing the claim submitted by that person, requiring

17   the party submitting the information to pay for the costs of the audit, seeking the prosecution of such

18   person for submitting a false claim and requesting sanctions under Rule 11 of the Federal Rules of

19   Civil Procedure.  (TDP at Section 5.7(a).)

20          19.     Defendants have submitted approximately 2,560 claims with the J.T. Thorpe

21   Trust on behalf of claimants whom they purport to represent.

22          20.     Pursuant to the authority vested in the J.T. Thorpe Trust by the Plan, the TDP,

23   and other governing documents, the J.T. Thorpe Trust reviewed certain of the claims submitted by

24   Defendants and believes that Defendants may have engaged in a pattern or practice of submitting

25   questionable evidence to the J.T. Thorpe Trust in support of certain claims ("Mandelbrot Claims"),

26   which warrants further investigation.

27

28

21.    As more fully described in the letter sent by the J.T. Thorpe's Trust's counsel to Defendants, a redacted copy of which is attached hereto as Exhibit "A," and the terms of which are incorporated herein by reference, examples of Defendants' practices of submitting questionable evidence include:

- submitting numerous claims based upon claimants' alleged exposure to asbestos while working in shipyards, following claimants' alleged disembarkation from a United States Naval vessel, which claims are facially implausible and not supported by reliable evidence;

- submitted improbable evidence that nurses, aircraft mechanics or military police were engaged in the specialized labor of working with boilers, and when questioned, claim that there are no underlying litigation documents even though existing litigation documents conflict with these claims;

- submitted detailed evidence of exposures not claimed in litigation documents, authored by persons (e.g., a grand child or a niece of the exposed decedent) whose ability to provide such detailed information is questionable;

- withdrawn declarations that lacked the foundation required by the TDP and then resubmitted the same information to take advantage of more permissible rules regarding interrogatory responses, and when questioned, have insisted that the Trusts accept vague foundations such as "investigative work performed by attorneys" and submitted boilerplate language as evidence otherwise unsupported or contrary to military records to meet exposure duration requirements;

- submitted evidence that contradicts the previous litigation documents;

- submitted a claim that a client, a malignant mesothelioma victim, is still alive even though the diagnosis of the malignancy (one almost always fatal within a few years) was made 20 years ago and insisted there are no more current medical reports;

- submitted claims where the exposure site claimed is an approved site, but after review of the deposition transcript or other original litigation documents, the Trusts determine that the claimant was actually at a different site. The transcript is then withdrawn and the claim resubmitted for the approved site with no new interrogatories, even though the prior submission does not support exposure to the claimed site;

- prosecuted at least one claim against two Trusts based on inconsistent evidence;  and

- producing certain evidence only after the Trust's issuance of a subpoena, which evidence either (i) refutes the claim in its entirety, (ii) shows the claim to be different than originally stated, or (iii) appears in conflict with the claimant's military records.

22.    Defendants deny that the evidence supporting the Mandelbrot Claims is questionable, and dispute the right and power of the J.T. Thorpe Trust to investigate the same.

23.    Representatives of the J.T. Thorpe Trust have attempted repeatedly to work with Defendants in an effort to establish the veracity of information submitted by Defendants in support of the Mandelbrot Claims.  Defendants, however, have largely refused to cooperate with the J.T. Thorpe Trust.  Indeed, Defendants have taken various steps to frustrate and impede the J.T. Thorpe Trust's efforts, which have required the J.T. Thorpe Trust to dedicate funds and significant resources to examining the propriety of the Mandelbrot Claims.

24.    Since Defendants would not voluntarily cooperate with the J.T. Thorpe Trust, on February 14, 2012, the Trust filed its "Application for Examination Pursuant to Bankruptcy Rule 2004," [Docket No. 1638] (the "Mandelbrot 2004 Application"), pursuant to which the J.T. Thorpe Trust sought authority to conduct examinations of eight (8) Mandelbrot claimants in furtherance of its Investigation to determine whether Defendants had engaged in a pattern or practice of submitting unreliable information to the J.T. Thorpe Trust.

26.    On March 14, 2012, the Bankruptcy Court entered the First Examination Order granting the Mandelbrot 2004 Application over Defendants' objection, which authorized the J.T. Thorpe Trust to proceed with its Investigation.  Defendants appealed the First Examination Order on March 28, 2012.  In the appeal, the District Court entered an order vacating a temporary stay of the First Examination Order upon finding, among other things, that the First Examination Order "was not unauthorized by law" and that Defendants failed to establish a likelihood of success on the merits in the appeal.  Defendants subsequently informed the District Court that they would seek to dismiss the appeal.

27.    Notwithstanding the First Examination Order, Defendants have largely failed to cooperate with the J.T. Thorpe Trust in scheduling the examinations authorized in the First Examination Order.  To date, the examination of only one claimant has been taken, and another claimant did not show up for her examination despite having been served with a subpoena.

28.    In addition, on August 17, 2012, the Trust filed its "Motion for Examination of John F. Lynch, IV, Pursuant to Federal Rule of Bankruptcy Procedure 2004," [Docket No. 1694]

(the "Lynch 2004 Application"), pursuant to which the J.T. Thorpe Trust sought authority to examine John F. Lynch, IV, a former employee of the J.T. Thorpe Trust and Mandelbrot, and an individual that claims to have knowledge pertinent to the Investigation.

29.    On August 23, 2012, the Bankruptcy Court entered its Second Examination Order, which granted the Lynch 2004 Application, again over Defendants' objection, and which authorized the J.T. Thorpe Trust to proceed with its Investigation by taking the examination of Mr. Lynch.

30.    The J.T. Thorpe Trust deposed Mr. Lynch on September 14, 2012.  The J.T. Thorpe Trust will not here describe the subject matter of the deposition because Mandelbrot has alleged that Mr. Lynch's testimony is privileged.[3]  Suffice it to say, however, that Mr. Lynch's testimony did not give the J.T. Thorpe Trust any comfort that the Defendants have been submitting reliable evidence in support of the Mandelbrot Claims.  To the contrary, the J.T. Thorpe Trust's concerns regarding the Defendants' practices have only been heightened as the result of Mr. Lynch's deposition.

31.    Counsel for the J.T. Thorpe Trust and Defendants have met and conferred on multiple occasions to discuss the status of the Investigation and to coordinate the scheduling of the examinations authorized by the Bankruptcy Court in the Examination Orders.   At these conferences and in correspondence with the Trusts' counsel, Defendants have repeatedly alleged that the Thorpe Trusts lack authority to conduct the Investigations and that the Investigations are improper. Defendants have also expressly threatened to bring suit against the Trusts, Trust fiduciaries, and Trust representatives for proceeding with the Investigations. In particular, in an email dated August 3, 2012, from Michael Mandelbrot to Michael Molland, counsel for the J. Thorpe Trust, regarding a further meet and confer regarding the Mandelbrot Claims, the Defendants stated:

> Again, we would like to engage in further meet and confer efforts in an
> attempt to resolve this frivolous pursuit. Should this audit continue, I can
> assure we will be Noticing Trust Representatives Depositions pursuant to Rule

---

[3]    The J.T. Thorpe Trust believes that Defendants' assertions of privilege are unfounded and will move the Court to resolve this dispute shortly.

2004 and/or filing a Direct Lawsuit against the Trust. This absolute waste of Trust resources and what should be monies for the victims of J.T. Thorpe can stop now.

32.    As a result of the Investigation to date, the J.T. Thorpe Trust believes that all of the Mandelbrot Claims must now be subject to a claims audit.  The J.T. Thorpe Trust anticipates that it will file shortly a motion in this Adversary Proceeding to approve a temporary procedure for processing evidence in connection with Mandelbrot Claims pending the conclusion of the Investigation.

33.    The J.T. Thorpe Trust desires to exercise the authority conveyed upon it by the Plan, the TDP, and the Confirmation Order by pursuing the Investigation.  As the result of Defendants' efforts to obstruct the  Investigation, the J.T. Thorpe Trust's review of the Mandelbrot Claims has become unnecessarily difficult, burdensome and expensive, to the detriment of holders of valid claims.   The J.T. Thorpe Trust seeks the relief requested herein to avoid further delay and expense and to conduct the Investigation in a manner that will allow the J.T. Thorpe Trust to conserve its resources for the benefit of all claimants holding valid claims.

**V.**

**CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT**

34.    The J.T. Thorpe Trust repeats and realleges the allegations in the preceding paragraphs of this Complaint.

35.    Pursuant to the Plan, the TDP, and other governing documents, the J.T. Thorpe Trust is vested with the authority to, among other things, review claims submitted with the Trust and to conduct an audit of the reliability of such claims.  Section 5.7(a) of the TDP authorizes the J.T. Thorpe Trust to "develop methods for auditing the reliability of evidence" submitted in support of claims and, "[i]n the event that the Trust reasonably determines that any unreliable individual or entity has engaged in a pattern or practice of providing unreliable . . . evidence to the Trust, it may decline to accept additional evidence from such provider in the future."  (TDP §

5.7(a).).  Moreover, "in the event that an audit reveals that fraudulent information has been provided to the J.T. Thorpe Trust, the  J.T Thorpe Trust may penalize any responsible claimant or claimant's attorney," including by disallowing the claim submitted by that person, requiring the party submitting the information to pay for the costs of the audit, seeking the prosecution of such person for submitting a false claim and requesting sanctions under Rule 11 of the Federal Rules of Civil Procedure.  (*Id.*)

36.    Following its review of claims submitted to the J.T. Thorpe Trust by Defendants, the J.T. Thorpe Trust has determined that Defendants may have engaged in a pattern or practice of submitting unreliable information to the J.T. Thorpe Trust.

37.    There is a live and concrete dispute between the parties, because Defendants (i) deny the J.T. Thorpe Trust's authority to conduct the Investigation, (ii) challenge the propriety of the Investigation, and (iii) are threatening to sue the J.T. Thorpe Trust for conducting the Investigation.

38.    The Investigation is necessary, appropriate, and in the best interest of the J.T. Thorpe Trust and claimants that hold valid claims against the J.T. Thorpe Trust.  The Bankruptcy Court has previously found on multiple occasions that the Investigation is warranted and the District Court has previously found that the First Examination Order "was not unauthorized by law."

39.    The J.T. Thorpe Trust desires to continue the Investigation in an expedient and efficient manner, which will allow the J.T. Thorpe Trust to conserve its resources for the benefit of all claimants holding valid claims.

40.    The J.T. Thorpe Trust seeks a declaratory judgment pursuant to 11 U.S.C. § 105(a), 28 U.S.C. § 2201, and Rule 7001(9) of the Federal Rules of Bankruptcy Procedure confirming that the  Investigation to determine whether Defendants have engaged in a pattern or practice of submitting unreliable information to the J.T Thorpe Trust is authorized by law and appropriate under the circumstances.

## VI.

## RESERVATION OF RIGHTS

41.    The J.T. Thorpe Trust reserves all of its rights against Defendants pending the outcome of the Investigation.

## VII.

## RELIEF REQUESTED

**WHEREFORE,** the J.T. Thorpe Trust respectfully requests relief as follows:

(i) the entry of a declaratory judgment confirming that the J.T. Thorpe Investigation to determine whether Defendants have engaged in a pattern or practice of submitting unreliable information to the J.T Thorpe Trust is authorized by law and appropriate under the circumstances; and

(ii) for such other relief as is just and property under the circumstances.


DATED: September 19, 2012

                              Respectfully submitted,


                              /s/ Gabriel I. Glazer
                              EVE H. KARASIK, and
                              GABRIEL I. GLAZER, Members of
                              STUTMAN, TREISTER & GLATT
                              PROFESSIONAL CORPORATION

                              MICHAEL E. MOLLAND
                              BENJAMIN P. SMITH
                              AARON S. DUTRA
                              MORGAN, LEWIS & BOCKIUS LLP

                              Attorneys for the J.T. Thorpe Settlement Trust

# Exhibit A

Morgan, Lewis & Bockius LLP
One Market, Spear Street Tower
San Francisco, CA 94105
Tel. 415-442-1000
Fax: 415-442-1001
www.morganlewis.com

**Michael E. Molland**
Attorney at Law
415-442-1121
mmolland@morganlewis.com

**Morgan Lewis**
COUNSELORS AT LAW

September 19, 2012

**VIA FEDERAL EXPRESS**

Michael J. Mandelbrot, Esq.
Mandelbrot Law Firm
505 A San Marin Drive, Suite 200
Novato, CA 94945

Michael J. Mandelbrot, Esq.
Mandelbrot Law Firm
582 Market Street, Suite 608
San Francisco, CA 94104

Re:    **Court order in LA 02-14210-BB
Meet and Confer Session, August 29, 2012
August 31, 2012 Letter to Trusts**

Dear Mr. Mandelbrot:

On August 29, 2012, the Managing Trustee of the Western Asbestos Settlement Trust ("Western"), J.T. Thorpe Settlement Trust ("J.T. Thorpe"), and Thorpe Insulation Settlement Trust ("Thorpe Insulation") (the "Trusts") and I met with you at your request. The meeting was in response to your threatened lawsuit against J.T. Thorpe if it continued its efforts to investigate the reliability of evidence being submitted by your office in support of claims and, specifically, to take depositions of certain claimants, as the Court order in LA 02-14210-BB authorized the Trust to do, after considering your objections and appeals of its orders. Your email requesting we meet and confer said: "Should this audit continue, I can assure we will be Noticing Trust Representatives Depositions pursuant to Rule 2004 and/or filing a Direct Lawsuit against the Trust." (From your August 3, 2012 email; Exhibit A.)

San Francisco  Philadelphia  Washington  New York  Los Angeles  Miami  Pittsburgh  Princeton  Chicago  Minneapolis
Palo Alto   Dallas   Houston   Harrisburg   Irvine   Boston   Wilmington   London   Paris   Brussels   Frankfurt   Beijing   Tokyo

DB2/ 23474930.9

Morgan Lewis
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 2

At the August 29th meeting, you made the following claims or contentions, which you have stated support your threatened litigation.  We informed you then that we would respond in writing and we do so here.  All responses made in this letter, which follow, are based on information I have received from the Trusts, and are not based on personal information, unless I specifically reference that it is based on personal knowledge.

- You claimed that J.T. Thorpe and its fiduciaries had breached their fiduciary duties and were engaging in unethical conduct.

Response:  You have raised these accusations before on many occasions with respect to the Trusts.  The Trusts reported your allegations in their 2010 Annual Reports and Accountings ("Annual Reports"), placing the allegations in issue before the Trusts' supervising Bankruptcy Courts.  Though you had not filed an objection, you made an appearance at the hearing on the motion to approve the 2010 Western Annual Report and your oral objections were overruled.  The Western Court invited you to file an appropriate motion addressing the issues you raised and notice it.  You declined to do so.  After considering your charges as reported in the Annual Reports, each Court entered final judgment approving the Trusts' 2010 Annual Reports and resolving your claims and contentions of breach of duty in their favor.

During our meeting, you also raised the issue of possible breaches of Trust duties when we discussed the examination of John Lynch, which was recently permitted by the Court under an August 23, 2012 order. You said that, while you had opposed the examination, you would look forward to Mr. Lynch's examination, if it could be arranged, since you believed it would reveal irregularities with the Trusts.  This, in the view of the Trustees, provided an additional reason why Mr. Lynch's examination needed to be conducted.  On September 12, 2012, we received another letter where you decided once again that you objected to the deposition of Mr. Lynch.  The deposition was conducted on

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 3

September 14, 2012.  You appeared at the deposition and cross-examined Mr. Lynch.
Neither the direct nor cross-examinations elicited any testimony to support your claims
and contentions directed at the Trusts during the meet and confer.  You interposed claims
of privilege during this examination and the Trusts will undertake to address those claims
with the Court promptly.  Suffice to say at this point, however, that nothing occurred
during Mr. Lynch's examination to encourage the trustees of these Trusts that they should
do anything but intensify their efforts to complete a thorough inquiry into the matters that
are the subject of this investigation.

● You have charged the Trusts' fiduciaries with breach of duties and claimed you
are being singled out and the claims you file are evaluated unfairly.

Response:  The Trust disputes this.  The percentage of approved claims
filed by you in all Trusts refutes it.

● You claim the Trusts initiated their investigations in retaliation for your charges
that Trust fiduciaries breached their duties.

Response:  You raised this claim before the Court previously.  You
objected in litigation only months ago to J.T. Thorpe's right to take the examinations
which you continue to say are unwarranted.[1]  After considering your specific challenge,

---

[1] *See* your opposition, pp. 5-6, as follows:

"V.   THE REQUESTED RELIEF IS HARASSING AND RETALIA-
TORY

"Not only is the relief requested by the Application not permitted by
Rule 2004 or the TDP, and wasteful, it is harassing and retaliatory...."

*        *        *

"For years, MLF has been complaining of bad faith and bias in the
processing of claims by the Trust, including the retroactive application
of Trust requirements at a time when more than 1,000 claims submitted
by MLF were pending review.  Those complaints have been ignored.
Worse yet, instead of engaging in a good faith discussion with MLF
regarding its concerns, which one would expect given that MLF submits
                                                        *(cont'd)*

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 4

the Court authorized J.T. Thorpe to conduct the examination of the claimants.  When
questionable evidence is submitted in support of claims, then it is appropriate for the
Trusts to seek further information, especially considering the average total liquidated
value for claims paid in J.T. Thorpe is $44,978, Western is $117,815, and Thorpe
Insulation is $229,177.  The Trusts continue to find that evidence you have submitted to
substantiate certain claims is questionable.  A description of some of that evidence is
listed below, beginning on page 8.

- You claim that the Trust is wasting resources pursuing your clients' examinations, as allowed under the Court's order.

<u>Response</u>: These expenses occurred almost entirely as a result of your
repeated oppositions and objections, all of which were rejected and overruled by the
Court or the District Court.  In late 2011, J.T. Thorpe sought informal interviews for eight
claimants.  You rejected these requests.  In early 2012, J.T. Thorpe then sought depo-
sitions of those eight claimants. Instead of arranging for these depositions to explain the
foundation for assertions by these witnesses, you again refused.  This refusal required
J.T. Thorpe to file pleadings with the Court in LA 02-14210-BB for these examinations
and the Court's March 12, 2012 order, over your objections, allowed them.  You
appealed that order and refused to permit any examination to occur pending that appeal.
J.T. Thorpe moved to compel one of the examinations, and the Court granted the motion.
You then requested a stay of that and all other examinations as part of your appeal to the
District Court, and after considerable litigation and further expense to J.T. Thorpe, the

---

more asbestos claims to the Trust than any other individual firm (with
the possible exception of certain TAC firms), the Trust has chosen to
retaliate against MLF and its clients. The Trust has been subjecting their
claims to a heightened level of scrutiny that is not being applied to other
claims."

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 5

District Court approved the Bankruptcy Court's order on July 18, 2012. On August 1, 2012, the examination of the first subpoenaed claimant finally took place. I personally know a second claimant was subpoenaed two times for examination, the latter examination was scheduled for August 24, 2012. She did not appear in response to either subpoena and you will not agree to produce her. Your refusal to accept service and to produce properly subpoenaed witnesses only further increased the costs to the Trust.

● You claimed you maintain an open and professional communication with Trust staff that process the claims you submit, and for that reason, you questioned why the Trusts had undertaken a formal investigation.

Response: The Trusts inform me, and documents they have sent to this office show, that their experience is to the contrary. In November 2005, you began submitting claims to Western. Shortly thereafter, representatives of Western traveled to San Francisco to meet with you and your staff to assist in your staff's ability to submit claims to Western. This was a cordial meeting. However, in early 2006, you, personally, began to behave in an unprofessional and confrontational manner, yelling and using profanity, with Trust staff, including Laura Paul, over the phone.

Laura Paul consulted with the Executive Director, Sara Beth Brown. Trust counsel, John Sande, then informed you that further communication by you to Trust staff must be in writing. During the ensuing time, and even though you had been unprofessional to Trust staff, Trust staff continued to work with your firm's staff on specific claim issues.

You then began to send a variety of emails to the Trusts which alleged bad faith, fraud and misuse of funds. You then sent to Trust staff emails in which you personally berated or insulted Trust staff, attorneys, and consultants. Copies of some of these emails are attached as Exhibit B. Excerpts of some of these emails follow:

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 6

    1.  From an email of August 28, 2009 at 3:59 p.m. to Sara Beth Brown, with copies to John Sande and Laura Paul: "Your email clearly said the claims would be reviewed by the end of the week—they weren't period. I am tired of the excuses and bullshit. .... You (and that complete idiot Chuck LeGrave [sic]) have tried since day 1 to screw my clients and my office and I'm just sick of it."

    2.  From an email of July 8, 2009 to Sara Beth Brown and Laura Paul regarding economic loss evidence: "I am now forced to follow an ignorant (clearly stupid) rule created by you two despite the fact you have a signed and verified economic loss report? No way. This is only designed (in bad faith) to screw both the victims and the attorneys...... I realize I may lose in getting you removed (since you're so 'cozy' with the TAC, Futures, etc....), but it's worth exposing you two and these ridiculous rules that you come up with to clearly try to screw victims and firms."

    3.  From the email of August 28, 2009 addressed to Sara Beth Brown with copies to Laura Paul and John Sande: "....Given the Trusts continued lies, mis-statements and failure to properly compensate victims, I fully expect to get a 'shady' re-review by you and that I'll have to arbitrate where you think YOU know more than the economist. I personally don't understand how you all can feel comfortable continually screwing the specific victims you are paid to protect and compensate—but somehow you do."

    4.  From the email of August 31, 2009 to Laura Paul with copies to Sara Beth Brown and John Sande. (But written to Sara Beth Brown) ..."I find it sad that all of you (and Chuck who I know 'advises' you on how to screw me of course) take so much enjoyment is [sic] causing problems for my office and victims. .... Given the very 'cozy' and potential unethical relationship of Steve Snyder and Gary Fergus

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 7

(didn't they used to work together?...), I know I would have a very difficult time getting you removed, although I know the facts exist supporting it (bad faith, fraud, changing rules, flat out lies, delays in processing, attempts to limit payments, reliance on incompetent defense attorneys)".

 5. From an email of April 5, 2011 to Sara Beth Brown and Laura Paul with a copy to Trustee Jack Luikart concerning the declaration rules. "The conspiracy, fraud, bad faith and specific attempts to harm my firm have gone too far. For every deficiency we receive due to the new rules ....the value of a Bad Faith lawsuit we intend to file against each of you individually (as well as each Trustee/TAC member involved). When all is said and done, I suspect it will total well over 15 million dollars."

 6. From an email dated August 26, 2011 to John Sande copy to Sara Beth Brown, Laura Paul and Steve Snyder: "Thank you for your "canned" and "boiler-plate" response. Your ignorance continues to shine.... While you and the trust seemingly take joy in making things difficult for my office (with the pathetic Chuck LaGrave) the ones you are really harming is the Claimants."

The Trust understands and expects zealous advocacy from counsel on behalf of claimants, but here your communications have impeded the open and civil dialogue necessary for the Trust to evaluate and process your claims.

 • You claimed that the Trust has treated you unfairly by arbitrarily changing its requirements for evidentiary submissions in support of the claims you file and, at times, applying these requirements retroactively.

 Response: The Trusts inform us that all new rules are posted and apply to everyone. These requirements, including the requirements that interrogatories be filed in support of claims, and that each set of interrogatories so submitted be verified by the

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 8

claimant, appear on the Trusts' Web sites and give guidance as to how to conform to them. Trust staff informs us that these same procedures are required of all firms who submit evidence in support of their claims.

• Finally, you again demanded that J.T. Thorpe abandon its right to take the examinations permitted by the Court, charging that it is improperly investigating the reliability of evidence underlying claims where there is, or eventually may be, some kind of validity to the claim.

Response: Your contention misses the point of this investigation. Particularly given the hard line approach you have adopted, this demand shows why the Trustees were, and are still, obligated to determine the reliability of the evidence you have been submitting in support of many claims. The problem is not whether asbestos exposure at a given location is or may be plausible when supported by credible evidence. It is rather that the evidence you have submitted to prove such exposure, whether or not the site is one where exposure might plausibly occur, lacks credibility. The Trusts believe the reliability of evidence submitted by you was in doubt. The following are some examples of unreliable evidence you have submitted and show how you have addressed the legitimate trust concerns that ensued.

1. You have submitted improbable evidence, e.g., that nurses, aircraft mechanics or military police are engaged in specialized labor (e.g., chipping in boilers or other refractory work) of those who work with boilers. When questioned, you claim that there are no underlying litigation documents – or that you do not have access to them – to shed light on this apparent anomaly. Existing litigation documents, however, have conflicted with these claims.

2. Without explanation you have submitted detailed evidence of exposures not claimed in litigation documents, authored by persons (e.g., a grandchild or a

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 9

niece of the exposed decedent) whose ability to provide such detailed infor-mation is questionable.

3.  You have withdrawn declarations that lacked the foundation required by trust procedures and then resubmitted the same information to take advantage of more permissible rules regarding interrogatory responses.  When questioned, you have insisted that the Trusts accept vague foundations such as "investigative work performed by attorneys" and you have submitted boilerplate language as evidence otherwise unsupported or contrary to military records to meet exposure duration requirements

4.  You have submitted evidence that contradicts the previous litigation documents.

5.  You have claimed that your client, a malignant mesothelioma victim, is still alive even though the diagnosis of the malignancy (one almost always fatal within a few years) was made 20 years ago and you insist there are no more current medical reports.

6.  You have submitted expert economic reports that the Trusts are informed and believe were based on assumptions provided by attorneys rather than by witnesses such as a spouse, heir or child. Some of the earlier email exchanges excerpted above illustrate the nature of your response when questions were raised by the Trust about those reports.

7.  The Trusts have received claims from you where the site claimed is an approved site, but after review of the deposition transcript or other original litigation documents, the Trusts determine that the claimant was actually at a different site.  You have then withdrawn the transcript and resubmitted the claim for the approved site expecting the Trusts to only consider the

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 10

interrogatories your firm created, even though the prior submission does not

support exposure to that site.

8.   You have prosecuted at least one claim against two Trusts based on incon-

sistent evidence.

When your response to inquiries directed at a sample of questionable cases (such

as the eight in which examinations were sought) is to resist all efforts to determine the

source and reliability of the evidence involved, the Trustees believe they have no option

but to question whether your claim preparation practices include submitting unreliable

evidence even in more plausible circumstances.

The Trusts are committed to assuring that beneficiaries are properly compensated

according the controlling Trust documents.  Trust staff is prepared to increase awards to

claimants in instances where the sponsoring attorney has undervalued the claim and the

evidence supports a higher award.   However, these practices you have engaged in,

described above, do not further the objective of proper compensation.  For example,

during, or just before the examination, in two of the eight cases under investigation, I am

personally aware that you have produced relevant and previously requested evidence that

was available to you long before you make the production.  The result of that evidence

was either to invalidate your claim or decrease its value.  This does not serve the interests

of your clients in being compensated promptly, and it puts the trusts to the expense of

multiple reviews of evidence proved incorrect by records from your own files that were

not revealed until court orders had been obtained to allow examination of your witness.

The following will serve to respond to the issues raised in your August 31, 2012

letter to Ms. Brown.  The Trusts have reviewed and considered the evidence you have

provided to the Trusts. The Trusts and their advisors have carefully read the 1977

document you produced and that document does not support your claims that crew

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 11

members disembarked and worked in or around boilers in shipyards.  Further, the Trusts

have asked on many occasions for military records that support such claimed exposure,

and the Trusts still have not received documents that support the claimed exposure.[2]

Pertaining to your comment regarding offers being cancelled, the Trusts' offers do

remain open for six months (and an additional six months upon the request of the firm),

unless the firm requests the offer be cancelled to allow for additional information to be

submitted.  At the time an offer is cancelled at the request of a firm, there is no longer an

offer because it was rejected by the firm.  Offer and acceptance is only final upon the

Trusts' receipt and approval of properly executed releases.  After an offer is rejected by

the firm and additional information received, the claim is processed in FIFO order and

continues through the entire process, including audit.  I understand Ms. Paul did not state

that the Trust would just merely re-value claims.  Resubmitted claims are re-reviewed in

accordance with the claims process established.  If a deficiency is noted in the resubmis-

sion, that deficiency requires correction prior to the creation of a new offer.

Example 1 – Western Claim No. 4880.  You state the medical multiplier was

missing in the offer letter by error of Western. That is an untrue statement. Your firm

submitted four sets of supporting documents without economic reports.  Further, between

2006 and 2011, you failed to include economic reports or include economic loss in the

Clam Form.

---

[2] Your letter to Ms. Brown also states that, during our meet-and-confer meeting,
Mr. Molland "represented at our meeting that he has extensive testimony that Navy
sailors do not disembark ships." This is untrue.  I made no such representation.  What I
represented was that after investigation we had not to date found reliable evidence that
Navy sailors customarily or routinely disembarked ships to do the work you say in your
claims they did – namely, that they left their assigned ships during overhaul to perform
work for substantial periods of time alongside others in shops in Long Beach Naval
Shipyard – not on their assigned ships.  Military records that pertain to these claims do
not substantiate that claim.

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 12

Example 2 – J.T. Thorpe Claim No. 981.  J.T. Thorpe received the release on May 9, 2012 and the release was reviewed on May 16, 2012.  Upon review of the release, it was discovered that the social security number on the release did not match the one you provided to in the Claim Form and supporting documents.  At that time, the release was deemed deficient and not approved or accepted, and the offer was cancelled.

Example 3 – J.T. Thorpe Claim No. 300.  When your firm rejected the offer, the claim was resubmitted and re-reviewed.

You have threatened to bring litigation against the Trusts and Trustees for doing the very things the Court has permitted J.T. Thorpe to do over your earlier objections. While the Trusts have responded to the claims that you have made in that regard, it is mindful that pursuing examinations at this time without further, continuing guidance from the Court will only engender further conflict with you.

Therefore, the Trusts today have filed and we serve with this letter pleadings initiating proceedings in the various bankruptcy courts to reconfirm what we believe, but you disagree, already has been established, *viz.*, that the Trustees are entitled, if not obligated, to conduct this investigation under the applicable Plan documents. As and when appropriate, the Trusts will seek court instructions confirming the steps the Trustees will take to complete this investigation in a manner that avoids the expense of further protracted conflict while protecting the legitimate interests of beneficiaries having valid claims.  Among other things,

- The Trusts will continue with the investigation and depositions as needed, continuing to hope for cooperation from you;

- The Trusts now believe that the suspect claim submission practices that were the subject of the original investigation into categories of cases where exposure or other evidence was implausible or suspect (such as so-called disembarkation cases) may

09/23/2006  20:31    7078763412                 MICHAEL MOLLAND                    PAGE  02/02

**Morgan Lewis**
COUNSELORS AT LAW

Michael J. Mandelbrot, Esq.
September 19, 2012
Page 13

encompass other types of claims your office has been submitting.   Accordingly, the
Trusts will commence immediately a review and audit of all active cases submitted by
your office.  The audit may require assistance of original litigation counsel who referred
the case to you and who are your co-counsel. The audit may require assistance of original
litigation counsel who referred the case to you and who are your co-counsel since it is the
trusts' understanding that most of your claims come to you by referrals from litigation
counsel who choose to use your office to file trust claims.

Claims revealed to be meritorious will receive renewed or new offers and be paid
as determined by the Court as part of instructions the Trusts will seek concerning the
completion of this investigation.

• The Trusts will seek the advice of the TAC and the Futures Representative in
each Trust to insure that they are proceeding in a fashion that is consistent with the best
interests of all beneficiaries; and

• The Trusts will endeavor to complete their investigation and reach their final
conclusions as soon as possible.

Very truly yours,

Michael E. Molland

MEM:lr

EXHIBIT A

## Rosenblatt, Lynda J.

| | |
|---|---|
| **From:** | Michael Mandelbrot [mandelbrot@asbestoslegalcenter.org] |
| **Sent:** | Friday, August 03, 2012 1:25 PM |
| **To:** | Molland, Michael E. |
| **Cc:** | Sara Beth Brown; EKarasik@Stutman.com |
| **Subject:** | Meet and Confer re: Audit |

Please allow this to serve as a additional request to meet and confer regarding the audit
taking place against my office. It is my understanding that you are continuing to serve
subpoenas on out of state witnesses and intend to pursue further depositions (at great
expense to the Trust and to my office). Given the testimony of the█████ earlier this week
and the clear lack of bad faith whatsoever by my office, we find this ongoing pursuit
frivolous, meaningless and wasteful.

After the deposition, Mr. Molland represented that he would consider a "Declaration" to
resolve this dispute. Is this something that was said in good faith? Please let us know.
Please note that Laura Paul was present during this discussion and can verify.

In addition, after the deposition, Mr. Molland was speaking about something Charlie Ay
discussed often -- the fact that "Naval Shipyard Personnel" and "Outside Contractors" were
very particular about not working on each other's job. I agree with this statement. However,
many of the claims at issue involve neither - they involve "Navy Sailors" -- individuals
whose jobs at shipyards weren't limited by contracts. Hopefully, Mr. Molland can discern the
difference.

Again, we would like to engage in further meet and confer efforts in an attempt to resolve
this frivolous pursuit. Should this audit continue, I can assure we will be Noticing Trust
Representatives Depositions pursuant to Rule 2004 and/or filing a Direct Lawsuit against the
Trust. This absolute waste of Trust resources and what should be monies for the victims of
J.T. Thorpe can stop now.

Mike Mandelbrot

EXHIBIT B

**Long, Nancy**

| | |
|---|---|
| From: | Michael Mandelbrot [mandelbrot@asbestoslegalcenter.org] |
| Sent: | Friday, August 28, 2009 3:59 PM |
| To: | Sara Beth Brown |
| Cc: | Sande III, John P.; Laura Paul |
| Subject: | RE: Economic "Re-Reviews" |

Sara Beth,

To be clear, Laura has never kept her commitments on timing with regards to checks, RA letters and reviews. The LAST I heard on the economic loss issue was OUR conversation about the issue and then your follow up e-mail listed below where you said "the end of the week" (do your 'weeks' last 20 days...mine last 7)...

Why can't you speak to me? Who can I speak with to address these issues? Your e-mail clearly said the claims would be reviewed by the end of the week -- they weren't. I'm tired of the excuses and bull shit. I can care less if the "managing Trustee" has to approve the e-mails. They weren't allegations against you, there were clearly factual statements supported by clear facts. You (and that complete idiot Chuck LeGrave) have tried since day 1 to screw my clients and my office and I'm just sick of it. We won't be providing any more documents on the economic loss reports and look forward to the arbitrations.

Mike

From: Sara Beth Brown [mailto:sbbrown@wastrust.com]
Sent: Friday, August 28, 2009 2:53 PM
To: mandelbrot@asbestoslegalcenter.org
Cc: Sande III, John P.; Laura Paul
Subject: RE: Economic "Re-Reviews"

Mike: I don't understand your email from Wednesday stating you had no information, because prior to that email at 10:31 Wednesday night, you and Laura spoke on the phone that day when you called to ask about RA letters. I know there is constant communication between Laura her staff and your office on your claims in general. I informed you in last conversation that I cannot speak to you on the phone about these issues because of your allegations against me and the Managing Trustee.

As I stated to you on the 12th of August, I needed you to either give us information to back up each economic report, or tell me that you had none, and if you had none we would make an offer based on the information available. On the 13th your office sent an email with a spread sheet listing some information on all 16 claims that had to be separated, scanned and attached to each individual claim. Since you provided further information to us on each claim, each claim had to be reviewed again with the new information. As Laura stated to you on the phone on Wednesday, before you sent your email, two of the claims had economic reports for which the back up documentation you provided was sufficient. After she spoke to you, those claims were returned to the reviewers for processing.

However, when those claims were given back to the reviewers it became apparent that one had inconsistent exposure dates and one was missing occupational information. Those claims will be returned in the ordinary course and your office should have them back by Monday. As to the other 14, Laura is sending you the itemized information that is still needed on each one by email today. Each email that we send to you on these claims has to be run by our attorney.

Sara Beth Brown
Executive Director
(775) 324-6511

CONFIDENTIALITY AND PRIVACY NOTICE
This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are

**Laura Paul**

| | |
|---|---|
| **From:** | Mike Mandelbrot [mandelbrot@asbestoslegalcenter.org] |
| **Sent:** | Wednesday, July 08, 2009 1:00 PM |
| **To:** | Sara Beth Brown; Laura Paul |
| **Subject:** | Economic Loss Issues ~ |

**Follow Up Flag:** Follow up
**Flag Status:** Completed

Laura and Sara Beth,

Hi. I left Laura a message earlier today. Should the issue of the economic loss reports not be addressed within one week, I will be forced to formally seek removal of you (and Steve Snyder) as Trustee for "Breach of Trust committed in Bad Faith..." according to the rules of the Trust Agreement. The recent 'decision' by you to require all economic loss reports to have backup and supporting information (after not requiring the same for the past 4 years) is without question a bad faith breach of Trust. There was no Notice of this new policy. There was no discussion of the new 'policy'. There has been nothing written to date on the new 'policy' and the retroactive application of it is clear bad faith. My office submitted 30+ reports according to the written rules of the Trust and according to the what the trust has required in the past. I am now forced to follow an ignorant (clearly stupid) rule created by you two despite the fact you have a signed and verified economic loss report? No way. This is only designed (in bad faith) to screw both the victims and the attorneys. No attorney to date knows of this policy. It also clearly breaches the trust we put in you to oversee the Trust accordingly. Now, according to this new policy that came into play because of the actions of one firm (not mine), my meso clients and firm is forced to suffer despite the fact we followed all written rules in submitting claims. I realize I may lose in getting you removed (since you're so 'cozy' with the TAC, Futures, etc...), but it's worth exposing you two and these ridiculous rules that you come up with to clearly try and screw victims and firms.

Mike

Mandelbrot Law Firm
Michael J. Mandelbrot, Esq.
582 Market St. Suite 608
San Francisco, CA 94104
(Office-direct) 415.399.1631
(Fax) 415. 727.4700
(Mobile) 415.307.2119
www.asbestoslegalcenter.org

## Laura Paul

| | |
|---|---|
| **From:** | Michael Mandelbrot [mandelbrot@asbestoslegalcenter.org] |
| **Sent:** | Friday, August 28, 2009 12:54 PM |
| **To:** | mandelbrot@asbestoslegalcenter.org; Sara Beth Brown |
| **Cc:** | Laura Paul; 'Sande III, John P.' |
| **Subject:** | Economic "Re-Reviews" |

Sara Beth,

We are now no less than 14 days passed when you indicated you a review would be performed on a number of pending claims with the Trust....which the Trust has been holding based on a 'new' and clearly misguided position. We have provided you all of our information for our clients, including Declarations, charts, and all requested economic loss info in our possession.
It's unfortunate that you not only can't keep your promises about reviewing claims (almost all mesothelioma claims), but you continue to completely <u>fail to communicate at all. No responses to e-mails. No Voicemails from you. No keeping your commitments.</u> Should the re-reviews done by you not meet my approval, my clients have lost 10 days each (more) to arbitrate your claims by your failure to keep your commitments. John, I thought your involvement would improve the communication from the Trust, but I was wrong there.... The Bad Faith on the Trust's part just continues....... Given the Trusts continued lies, misstatements and failure to properly compensate victims, I fully expect to get a 'shady' re-review by you and that I'll have to arbitrate every claim where you think YOU know more than the economist.
I personally don't understand how you all can feel comfortable continually screwing the specific victims you are paid to protect and compensate – but somehow you do. Please pass this on to Steve Snyder. Thank you.

Mike

**From:** Michael Mandelbrot [mailto:mandelbrot@asbestoslegalcenter.org]
**Sent:** Wednesday, August 26, 2009 10:31 PM
**To:** 'Sara Beth Brown'
**Cc:** 'Laura Paul'; 'Michael R Dunning'; 'Sande III, John P.'
**Subject:** RE: Economic loss info

Sara Beth,

Please refer to your e-mail below. In that e-mail, you indicated that we'd have offers by "the end of the week"... That is now 13 days ago. We re-submitted the information by Friday August 14. Despite your assurances below about reviewing the claims by "the end of the week", we've heard nothing. When are these claims going to be reviewed? Was this issue discussed with the Trustees? ...I'd like a copy of the minutes please. Thank you.

Mike Mandelbrot

**From:** Sara Beth Brown [mailto:sbbrown@wastrust.com]
**Sent:** Wednesday, August 12, 2009 10:57 AM
**To:** Michael Mandelbrot
**Cc:** Laura Paul; Michael R Dunning; Sande III, John P.
**Subject:** RE: Economic loss info

I met with Laura yesterday to go over the resubmitted claims and I think there has been a misunderstanding or I didn't communicate what we needed when we talked. All I see with the resubmitted claims is a letter from you which outlines the list Michael Dunning gave us. I believed that we were going to get the information submitted to the expert from each pertinent category that was part of the basis for the economic report. As I told you, no firm, other than yours, has objected to supplying the additional information. The Trusts have received items such as deposition testimony from the claimant, tax returns, social security records, W2's and pension plan documents. If I was unclear as to what was needed, I apologize. The Trusts need to have the actual documentation sent to and relied upon by the expert for each claim. If there is none, then tell me that on a claim by claim basis and we will make an offer based upon what we have by the end of the week.

Sara Beth Brown
Executive Director
(775) 324-5511

CONFIDENTIALITY AND PRIVACY NOTICE
This communication may contain information that is legally privileged, confidential or exempt from disclosure. If you are not the intended recipient, please do not read, disseminate, distribute or copy this communication. The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521. Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

**From:** Michael R Dunning [mailto:dunning@asbestoslegalcenter.org]
**Sent:** Tuesday, July 28, 2009 3:23 PM
**To:** Laura Paul; Sara Beth Brown
**Subject:** Economic loss info

Hi Sara Beth / Laura,

As requested, please find below a typical list of information we give our economist in order to value each client's economic loss amount.

Name
DOB
DOD
Gender
Race
Date of diagnosis
Marital Status
SSN
Disease
**Military service?**
-    Branch, rank and length of service
**Income when last worked prior to disability or death**
**Income when last worked after asbestos diagnosis (if applicable)**
**Monthly pension at time of death (if applicable)**
**Social Security (if applicable)**
**Disability payments?**
-    **If yes, was disability claim due to asbestos diagnosis?**
**Other income?**
-    **Investments**
-    **Rental properties**
-    **Earnings during retirement**
-    **Other**
**Performed household services?**

9/18/2012

-   **Yard work**
-   **Cleaning**
-   **Maintenance**
-   **Other**

Many of the amounts above in **bold** were obtained through discussions/interviews with the client and/or surviving spouse and do not have supporting documentation. I will be sending you a separate email tomorrow containing a list of our claims we would like to be reviewed again.

Thanks
Michael


*Mandelbrot Law Firm / Asbestos Legal Center*
*822 College Avenue, Ste B*
*Santa Rosa, CA 95404*
*Tel (707) 546 4013*
*Fax (415) 727 4700*
*www.asbestoslegalcenter.org*


*Mandelbrot Law Firm / Asbestos Legal Center*
*822 College Avenue, Ste B*
*Santa Rosa, CA 95404*
*Tel (707) 546 4013*
*Fax (415) 727 4700*
*www.asbestoslegalcenter.org*

9/18/2012

#4

## Long, Nancy

| | |
|---|---|
| From: | Michael Mandelbrot [mandelbrot@asbestoslegalcenter.org] |
| Sent: | Monday, August 31, 2009 10:09 AM |
| To: | Laura Paul |
| Cc: | Sara Beth Brown; Sande III, John P. |
| Subject: | RE: Review Economic Reports |

Sara Beth,

In looking at the e-mail below and having the weekend to think about it, I am actually shocked.... You've now taken this another step further for the worse and now seem to be requiring even MORE information regarding economic loss reports (consumption/Benefit papers) than we had previously discussed. Your approach is now further in its requirements than any Court that I've even been in and is something that is NOT required from any other Trust in the Country. I know from speaking with 3 other offices who also file claims that none of these have been requested from them and that my office has been singled out in a bad faith effort to screw victims of Western Asbestos and J.T. Thorpe, Inc. products. I've had to remind you a number of times that you are not Defense Lawyers representing Western and J.T. (although those who guide you used to have this role) but Trustees hired to administer a fund. No Trust in the Country would require me to produce these documents you've requested and I know my position is sound. I find it sad that all of you (and Chuck who I know 'advises' you on how to screw me, of course) take so much enjoyment is causing problems for my office and victims of Western/J.T. You have known from the start that your new, unwritten, unsound and unnecessary economic loss policy has an unfair and extraordinary impact on my unique office. Instead of working with me, you wait weeks, and then go further in support of your unsound policy. Given the very 'cozy' and potentially unethical relationship of Steve Snyder and Gary Fergus (didn't they used to work together?...), I know I would have a very difficult time getting you removed although I know the facts exist supporting it (bad faith, fraud, changing rules, flat out lies, delays in processing, attempts to limit payments, reliance on incompetent defense lawyers). In the meantime, I'll just arbitrate (binding) every claim and the dozens of dead or dying victims of Western and J.T. Thorpe, Inc. will have to wait for their just payments.

Mike

From: Laura Paul [mailto:lpaul@wastrust.com]
Sent: Friday, August 28, 2009 3:09 PM
To: Michael Mandelbrot
Cc: Sara Beth Brown; Sande III, John P.
Subject: Review Economic Reports

Mike,

The Trust has reviewed the additional documents you sent via email in support of your economic loss claims. After reviewing the documents, the Trust would like some additional information from your office. I have listed each claim below.

J.T. Thorpe Claims
- 2200 the econ report is ok just need additional information on occupation, claim returned to firm
- 1908 the econ report is ok just need additional information on exposure dates, claim returned to firm
- 300 the Trust is requesting additional information

1

1. Documents from the pension plan to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
2. Copy of Social Security Income

- 
- 3416 the Trust is requesting additional information
    1. Documents from the pension plan to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income

- 
- 2406 the Trust is requesting additional information
    1. Documents from the pension plan to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income
    3. Reduced consumption because of the claimant's death

- 
- 1675 the Trust is requesting additional information
    1. Copy of Social Security Income

- 1961 the Trust is requesting additional information
    1. Copy of VA benefits
    2. Documents from the pension plan to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income
    3. Reduced consumption because of the claimant's death

- 1901 the Trust is requesting additional information
    1. Documents from the pension plan to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income
    3. Reduced consumption because of claimant's death

- 3390 the Trust is requesting additional information
    1. Documents from both pension plans to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income

- 
- 2281 the Trust is requesting additional information
    1. Documents from the pension plan to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income
    3. Reduced consumption because of claimant's death

- 3322 the Trust is requesting additional information
    1. Documents from pension to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Reduced consumption because of claimant's death

Western Asbestos Claims

- 6924 the Trust is requesting additional information
    1. Documents from pension  to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income

- 6541 the Trust is requesting additional information
    1. Documents from pension  to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of income statements
    3. Copy of Social Security Income
    4. Reduced consumption because of claimant's death

- 5266 the Trust is requesting additional information
    1. Copy of Social Security Income

- 6851 the Trust is requesting additional information
    1. Documents from pension  to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income

- 7027 the Trust is requesting additional information
    1. Documents from pension  to determine the election of benefits (1. stopped at death, 2. lump sum payout, 3. surviving spouse benefits)
    2. Copy of Social Security Income

You may email me the additional information and I will attach it to the file.

Laura Paul, Senior Supervising Paralegal

Western Asbestos & J.T. Thorpe Settlement Trusts

lpaul@WASTrust.com

CONFIDENTIALITY AND PRIVACY NOTICE
This communication may contain information that is legally privileged, confidential or exempt from disclosure.  If you are not the intended recipient, please do not read, disseminate, distribute or copy this communication.  The information herein may also be protected by the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510-2521.  Anyone who receives this message in error should notify the sender immediately by telephone or by return e-mail and delete it from his or her computer.

**Laura Paul**

| | |
|---|---|
| **From:** | Michael Mandelbrot [mandelbrot@asbestoslegalcenter.org] |
| **Sent:** | Tuesday, April 05, 2011 12:30 PM |
| **To:** | Sara Beth Brown; Laura Paul |
| **Cc:** | jacklulkart@ymail.com |
| **Subject:** | New Rules Adopted re: Declarations |

**Follow Up Flag:** Follow up
**Flag Status:** Completed

It has come to our attention that new 'rules' have been adopted regarding declarations. This impacts hundreds of my firm's claims filed with the Trusts that have been sitting at the Trust for months, if not a year. All of these claims would have passed were it not for the new rules adopted by the Trust and, if adopted retroactively, has a major impact on my firm's claims (something that was well known to the Trust and all involved when this was adopted). It is clear to me, that 'new' rule was clearly adopted in "Bad Faith" and designed to specifically harm my firm (name one other firm it impacts like mine....). At this time, I'm formally demanding to know

a) When the new declaration rules were adopted;
b) Who adopted them;
c) When a decision was made to institute them retroactively? (to all claims pending with the Trust before today)

The conspiracy, fraud, bad faith and specific attempts to harm my firm have gone too far. For every deficiency we receive due to the new rules (thus affecting my office and every client I have to call and tell them exactly what has transpired), the value of a Bad Faith lawsuit we intend to file against each of you individually (as well as each Trustee/TAC member involved). When all is said and done, I suspect it will total well over 15 million dollars. I look forward to prompt answer to my questions and well as our day in Court.

Mike

**Michael J. Mandelbrot**
**Mandelbrot Law Firm/Asbestos Legal Center**
San Francisco - Novato
(415) 895-5175 (Novato)
(415) 399-1631 (San Francisco- Direct)
(415) 727-4700 (fax)

#6

Long, Nancy

| | |
|---|---|
| **From:** | Sande III, John P. |
| **Sent:** | Friday, August 26, 2011 12:31 PM |
| **To:** | Long, Nancy |
| **Subject:** | FW: Asbestos Trusts |
| **Attachments:** | Image003.jpg |

---

**From:** Michael J. Mandelbrot[SMTP:MANDELBROT@ASBESTOSLEGALCENTER.ORG]
**Sent:** Friday, August 26, 2011 12:30:28 PM
**To:** Sande III, John P.
**Cc:** lpaul@wastrust.com; Sara Beth Brown; Steve Snyder
**Subject:** Re: Asbestos Trusts
Auto forwarded by a Rule

Mr. Sande,

Thank you for your 'canned' and 'boilerplate' response. Your ignorance continues to shine. You obviously didn't read the examples since they are different claims, for different claimants using different language. They were provided as examples of claims that have passed v. claims with much more detail regarding exposures that have not passed. What I'm highlighting is bad faith and inconsistent reviews by the Trusts specifically designed to harm claimants. That being said, many cases involve 'identical' exposures to Western/JT/TI products - the fact that claims have similar language is simply because they have similar exposures as many claimants in asbestos litigation have similar exposures (i.e. worked on the same ship as the same trade or worked at the same site under a similar occupation or rating). Unfortunately, you total lack of experience in asbestos litigation seems to put this fact beyond your and the Trust's understanding.

As I mentioned, if we do not receive a Final Determination as requested on the Deficiencies we received within 10 days, we will deem the Trust's deficiencies as a Final Determination and proceed with the arbitration process.

While you and trust seemingly take joy in making things difficult for my office (with the pathetic Chuck LaGrave), the ones who you are really harming is the Claimants (those exposed to Western/JT/TI products).

Mike

**From:** "Sande III, John P." <jps@jonesvargas.com>
**To:** Michael Mandelbrot <mandelbrot@asbestoslegalcenter.org>
**Sent:** Fri, August 26, 2011 11:43:44 AM
**Subject:** Asbestos Trusts

We are in receipt of your email of Thursday, August 25, 2011 11:01AM addressed to Sara Beth Brown, Laura Paul and Steve Snyder. With respect, we disagree with the allegations contained in your email. You seem to want the Trusts to agree to the use of standardized language for approval of claims by the Trusts. These Trusts review each claim on its individual and separate merits.

