EVE H. KARASIK (Cal. Bar No. 155356)
GABRIEL I. GLAZER (Cal. Bar No. 246384)
STUTMAN TREISTER & GLATT
PROFESSIONAL CORPORATION
1901 Avenue of the Stars, 12th Floor
Los Angeles, California 90067
Telephone: (310) 228-5600
Facsimile: (310) 228-5788

MICHAEL MOLLAND (Cal. Bar No. 111830)
MOLLAND LAW
30 Fifth Street
Petaluma, CA 94952
mmolland@mollandlaw.com
Telephone: (707) 202-5511
Facsimile: (707) 202-5513

BENJAMIN P. SMITH (Cal. Bar No. 197551)
MORGAN, LEWIS & BOCKIUS LLP
One Market
Spear Street Tower
San Francisco, California 94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1177

Attorneys for the J.T. Thorpe Settlement Trust and Thorpe Insulation Company
Asbestos Settlement Trust

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>J.T. THORPE, INC.,<br><br>THORPE INSULATION COMPANY,<br><br>Debtors<br><br>———————————————<br><br>J.T. THORPE SETTLEMENT TRUST,<br><br>THORPE INSULATION COMPANY ASBESTOS SETTLEMENT TRUST,<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL J. MANDELBROT and THE MANDELBROT LAW FIRM,<br><br>Defendants. | Chapter 11<br><br>Case No. 02-14216-BB<br><br>Adversary Case No. 2:12-ap-02182-BB<br><br>Case No. 07-19271-BB<br><br>Adversary Case No. 2:12-ap-02183-BB<br><br>**DECLARATION OF STEVEN B. SACKS IN SUPPORT OF MOTION FOR ORDER INSTRUCTING THE THORPE TRUSTS REGARDING (1) THE TRUSTS' AUDIT FINDINGS REGARDING MANDELBROT AND (2) THE TRUSTS' REMEDY**<br><br>Hearing Date: January 21-24, 2014<br>Hearing Time: 10:00 a.m.<br>Place: Courtroom 1475<br>      255 E. Temple St., 14th Floor<br>      Los Angeles, CA 90012<br>Judge: Honorable Sheri Bluebond |

I, Steven B. Sacks, declare:

1. I am a partner of Sheppard, Mullin, Richter & Hampton LLP, which has served as counsel for the Trust Advisory Committees established for the Western Asbestos and J.T. Thorpe Settlement Trusts (the "Trusts"). The following facts are within my personal knowledge and if sworn as a witness, I could testify competently to these facts.

2. I was asked to attend by telephone a face-to-face meeting between Michael Mandelbrot and Alan Brayton, chair of these Trusts' Advisory Committees, which took place on September 25, 2012 at the law offices of Brayton Purcell. I participated in the meeting as counsel for the Trust Advisory Committees. I heard Mr. Brayton inform Mr. Mandelbrot at the beginning of the meeting that I was participating in the meeting by telephone. Mr. Mandelbrot acknowledged my presence at the outset of the meeting by saying hello to me and I responded. The meeting lasted approximately an hour.

3. Mr. Mandelbrot stated at the beginning of the meeting that he had requested the meeting. Mr. Mandelbrot said the Trusts had recently filed adversary proceedings against him and that he wanted the Trust Advisory Committees to intercede on his behalf with the Trusts in an effort to stop or curtail the Trusts' investigation into the reliability of certain evidence Mr. Mandelbrot had submitted in support of claims his office had filed with the Trusts.

4. In this declaration I principally address two of the subjects that were discussed at this meeting: First, statements made by Mr. Mandelbrot regarding the practice of his employees in submitting or preparing evidence for Trust claims; and, second, the methods which Mr. Mandelbrot said were used by his office to prepare declarations or other statements from relatives of diseased claimants to evidence the asbestos exposure that entitled them to compensation from a Trust.

5. Mr. Mandelbrot said that Mr. Lynch, during the period of his employment at the Mandelbrot office, had been responsible for preparing claims which had been filed by the Mandelbrot office claiming compensation from both the Western and J.T. Thorpe Trusts. Mr. Mandelbrot also said that at some time during the period of that employment Mr. Lynch had told

1

DECLARATION OF STEVEN B. SACKS
RE: MOTION FOR ORDER INSTRUCTING
RE: AUDIT FINDINGS AND REMEDY
Case No. 02-14216-BB

Mr. Mandelbrot that Mr. Mandelbrot's office should send the Trusts only documents that supported their claims, not all the documents relevant to the Trust claims. Mr. Mandelbrot said that he had checked with another employee of his office, who he named as Megan, as to what her instructions were from Mr. Mandelbrot and was told by Megan that she had been told by Mr. Mandelbrot to send all documents to the Trusts.

6. Mr. Mandelbrot further said that every claim he filed with the Trust was backed up by documents or testimony. He said that he received this evidence from the referring attorney, and that his office would obtain additional information backing it up. Mr. Mandelbrot said that every one of his "disembarkation" claims was backed up by evidence supporting the disembarkation. Mr. Mandelbrot referred to a certain document from the secretary of the navy he provided to the Trusts as supporting these disembarkation claims. Mr. Mandelbrot said that he instructed and depended on his staff to gather these and other documents to support the claims he filed with the Trusts. He also said that his staff may have assumed that a claimant that worked in a "traditional" asbestos exposed occupation on board ship also worked in such a capacity in the shipyard when they prepared his claim to file with the Trusts. If there's wrong information in claims he filed, Mr. Mandelbrot said that it was mere negligence.

7. Mr. Mandelbrot said that 7 to 10% of the claims his office filed had never been filed before in litigation, and therefore had no litigation records to support them.

8. Mr. Mandelbrot said that many of the claims he filed with the Trusts were claims for compensation for persons who were, at the time of filing, deceased. He further said that the deceased claimants' spouse or grandchildren did not know how the claimants were exposed but that he would prepare declarations or other statements from these family members of the exposure to asbestos that entitled the diseased claimant to compensation from a Trust. Mr. Mandelbrot described the process by which his office prepared the declarations or other statements from family members of deceased claimants to support those exposures. He said that he regarded it as his duty as a lawyer to educate such family members as to the circumstances of how their relatives were exposed to asbestos. Mr. Mandelbrot said that he gave these relatives the decedents' military

records — and the J.T. Thorpe documents in the case of the J.T. Thorpe claims — and explained the circumstances of the exposures that entitled the decedent to compensation. Mr. Mandelbrot said that after educating the family members as to the circumstances of the asbestos decedent's asbestos exposure it was his practice to ask the relative if they believed their decedent was exposed and to put their statement in their declaration for the relative to sign. I heard Mr. Mandelbrot say that in his opinion this practice of educating a family member who lacked actual knowledge of the asbestos exposure of their family - so they could attest or declare to it - was appropriate and a common practice at other offices who submitted claims to the Trusts.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed at San Francisco, California on the date set forth below.

Executed this 7th day of August, 2013.

_____
Steven B. Sacks