Kenneth N. Klee (State Bar No. 063372)
Thomas E. Patterson (State Bar No. 130723)
Daniel J. Bussel (State Bar No. 121939)
David M. Guess (State Bar No. 238241)
KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone:    310-407-4000
Facsimile:    310-407-9090

Benjamin P. Smith (State Bar No. 197551)
MORGAN LEWIS & BOCKIUS LLP
One Market, Spear Street Tower
San Francisco, California  94105
Telephone: (415) 442-1000
Facsimile: (415) 442-1001

*Attorneys for the J.T. Thorpe Settlement Trust and
Thorpe Insulation Company Asbestos Settlement Trust*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| In re | Chapter 11 |
| J.T. THORPE, INC. | Case No. 02-14216-BB |
| and | Adversary Case No. 2:12-ap-02182-BB |
| THORPE INSULATION COMPANY, | Case No. 07-19271-BB (Case Closed) (Jointly Administered with Case No. 07-20016-BB) |
| Debtors. | Adversary Case No. 2:12-ap-02183-BB |
| J.T. THORPE SETTLEMENT TRUST | |
| and | **TRUSTS' OPPOSITION TO MANDELBROT AMENDED MOTION TO STAY ENFORCEMENT OF JUDGMENT AND ORDER FOLLOWING TRIAL** |
| THORPE INSULATION COMPANY ASBESTOS SETTLEMENT TRUST, | |
| Plaintiffs, | Date:    May 27, 2014 |
| v. | Time:    2:00 p.m. |
| | Crtrm.:    1475 |
| MICHAEL J. MANDELBROT and THE MANDELBROT LAW FIRM, | 255 E. Temple St., 14th Floor Los Angeles, CA  90012 Honorable Sheri Bluebond |
| Defendants. | |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# <u>TABLE OF CONTENTS</u>

**Page(s)**

I.      OVERVIEW ........................................................................................................ 1

II.     MANDELBROT ENGAGED IN, AND ADMITTED, A PATTERN AND
        PRACTICE OF MISCONDUCT IN PROSECUTING CLAIMS BEFORE THE
        TRUSTS ............................................................................................................. 3

III.    MANDELBROT FAILS TO SATISFY THE REQUIREMENTS FOR A STAY
        PENDING APPEAL ........................................................................................... 6

        A.      Mandelbrot Cannot Demonstrate Any Likelihood of Success on the Merits. .......... 7

        B.      Mandelbrot Does Not Show That He Will Be Irreparably Harmed. ....................... 12

        C.      Mandelbrot Ignores the Substantial Injury to the Trusts and Their
                Beneficiaries If a Stay Is Issued. .............................................. 13

        D.      The Public Interest Does Not Favor a Stay Pending Appeal. ................................ 15

IV.     CONCLUSION ................................................................................................. 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.),*
    361 B.R. 337, 350-51 (S.D.N.Y. 2007) ...................................................................17

*In re Adelphia Commc'ns Corp.,*
    368 B.R. 140 (Bankr. S.D.N.Y. 2007) ..................................................................15

*Bell Atl. Bus. Sys. v. Storage Tech. Corp.,*
    1994 WL 125173, at *3 (N.D. Cal. Mar. 31, 1994) ..............................................13

*Caplan v. Fellheimer Eichen Braverman & Kaskey,*
    68 F.3d 828, 839 (3d Cir. 1995) .......................................................................12, 13

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.),*
    671 F.3d 1011 (9th Cir.) *cert. denied* 133 S. Ct. 119 (2012) ...........................15, 16

*Dotster, Inc. v. Internet Corp.,*
    296 F. Supp. 2d 1159, 1163 (C.D. Cal. 2003) ......................................................12

*Dowell v. Biosense Webster, Inc.,*
    102 Cal. Rptr. 3d 1 (Cal. Ct. App. 2009) ...............................................................8

*Edwards v. Arthur Andersen LLP,*
    189 P.3d 285 (Cal. 2008) ....................................................................................7, 8

*FTC v. World Wide Factors, Ltd.,*
    882 F.2d 344, 347 (9th Cir. 1989) ........................................................................15

*Greaux v. Mermin (In re Marriage of Greaux),*
    167 Cal. Rptr. 3d 881 (Cal. Ct. App. 2014) ...........................................................8

*Haight v. Superior Court,*
    285 Cal. Rptr. 845 (Cal. Ct. App. 1991) ..............................................................11

*Herb Reed Enters., LLC v. Fla. Entm't Mgmt.,*
    736 F.3d 1239 (9th Cir. 2013) ..............................................................................13

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) ...............................................................................................6

*Howard v. Babcock,*
    863 P.2d 150 (Cal. 1993) ..................................................................................9, 11

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

*Humane Soc'y v. Gutierrez*,
    558 F.3d 896 (9th Cir. 2009)..................................................................................6

*Levy v. Cohen*,
    561 P.2d 252 (Cal. 1977) ....................................................................................12

*Nken v. Holder*,
    556 U.S. 418 (2009) ..............................................................................................7

*Salt Lake Tribune Publ'g Co. v. AT&T Corp.*,
    320 F.3d 1081, 1106 (10th Cir. 2003) ................................................................12

*SEC v. Wilde*,
    2013 WL 2303761, at *5 (C.D. Cal. May 20, 2013) .............................................7

*Silguero v. Creteguard, Inc.*,
    113 Cal. Rptr. 3d 653 (Cal. Ct. App. 2010) .........................................................8

*Stoll v. Gottleib*,
    305 U.S. 165 (1938) ............................................................................................12

*Ventura Cnty. Christian High School v. City of San Buenaventura*,
    233 F. Supp. 2d 1241, 1253 (C.D. Cal. 2002) ....................................................13

*Winter v. N.R.D.C., Inc.*, 555 U.S. 7 (2008) ..........................................................6, 7

**Statutes**

18 U.S.C. § 152 .........................................................................................................6

CAL. BUS. & PROF. CODE § 16600 ....................................................................*passim*

**Other Authorities**

ABA FORMAL OP. 93-371 ......................................................................................9, 10

ABA FORMAL OP. 95-394 ..........................................................................................10

ABA MODEL R. 5.6 ................................................................................................9, 10

CAL. R. PROF'L COND. 1-500(A) ......................................................................*passim*

STATE BAR OF CAL. FORMAL OP. 1988-104 ..............................................................10

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    J.T. Thorpe Settlement Trust and Thorpe Insulation Company Asbestos Settlement Trust

2    (the "**Trusts**")[1] hereby oppose the motion [Dkt. Nos. 241 & 245 (as amended)] (the "**Motion**") of

3    Michael J. Mandelbrot and Mandelbrot Law Firm ("**Mandelbrot**") for a stay of this Court's

4    *Judgment in Adversary Proceedings* [Dkt. No. 234] (the "**Judgment**") and *Order Following Trial*

5    *on Adversary Complaints and Motion for Instructions* [Dkt. No. 233] (the "**Order Following**

6    **Trial**") pending Mandelbrot's appeal of the Judgment, the Order Following Trial, and the *Order*

7    *Granting Motion to Enforce January 23, 2014 Stipulated Agreement* [Dkt. No. 232] (the

8    "**Enforcement Order**").

9                                                    **I.**

10                                          **OVERVIEW**

11    Mr. Mandelbrot is a California attorney who has filed numerous claims for compensation

12    of asbestos-related injuries against the Trusts and the Western Asbestos Settlement Trust

13    ("**Western Trust**") on behalf of various individual clients.  This Court has found that the Trusts

14    and the Western Trust (which uses the same claims-processing facilities as the Trusts) reasonably

15    determined that Mandelbrot "engaged in a pattern and practice of filing unreliable evidence in

16    support of claims filed with the [Trusts]."  Order Following Trial ¶ 9.  The Trustees, after making

17    this reasonable determination, took the logical and responsible action of seeking instruction from

18    this Court with regard to their processing of claims filed by Mandelbrot.  In the midst of trial on

19    this matter, after this Court's receipt of substantial evidence establishing the impropriety of

20    Mandelbrot's conduct, Mandelbrot agreed on the record in open court to resolve the Trusts'

21    complaints against him by consenting to a settlement that barred him from the filing of claims

22

23    _____

24    [1]    Unless otherwise required by the context, statutory references are to title 11 of the United
States Code (the "**Bankruptcy Code**").  The Trusts are both created pursuant to section 524(g) as
25    successors to the respective mass asbestos debtors with whose assets they were vested and whose
asbestos liabilities they assumed, but those debtors were not affiliates of each other
26    notwithstanding the similarity of their names.  Although both chapter 11 cases were assigned to
this Court they have been separately administered.
27

28

against the Trusts, the Western Trust, and the Plant Asbestos Settlement Trust ("**Plant Trust**")[2]

and requiring Mandelbrot to transfer his current clients to new counsel so they may pursue their

claims or receive future payments based on adjustments to the Trusts' payment percentages or

funds received ratios. *Declaration of Gary S. Fergus* [Dkt. No. 209] ("**Fergus Decl.**") ¶ 11, Ex. 1

(1/23/14 Trial Tr. at 3:11-4:20; 16:7-13). After Mandelbrot subsequently tried to renege on the

settlement, *Findings of Fact and Conclusions of Law* [Dkt. No. 235] ("**Findings**"), at Findings of

Fact ¶ 19,  this Court issued the three orders appealed from implementing and enforcing the

settlement.

Based on the Motion,[3] it appears that Mandelbrot's appeal will focus on the legal claim

that this Court erred in enforcing the Mandelbrot settlement because its  provision barring

Mandelbrot from filing new claims against the Trusts, the Western Trust, and the Plant Trust is

illegal and violates the public policy of the State of California, as expressed in California Business

& Professions Code Section 16600 ("**Section 16600**") and California Rule of Professional

Conduct 1-500(A) ("**Rule 1-500**"). Neither the statute, which expresses a public policy against

covenants not to compete, nor the rule, which expresses a public policy against tying the

resolution of a client's claim to his lawyer's agreement to restrict his practice, is applicable to this

situation.

The settlement is designed to protect the integrity of the Trusts', the Western Trust's, and

the Plant Trust's internal processes against a known source of claims supported by unreliable and

---

[2] The Plant Trust has the same Trustees and Futures Representative as the Trusts and the Western Trust, and, like the Trusts, uses the Western Trust's claims-processing facility.

[3] Mandelbrot originally raised, and then abandoned, a potpourri of contract defenses to enforcement of his on-the-record settlement, at various times arguing that he did not assent to the settlement, that his assent was coerced, that his offer of settlement was validly retracted, and that the settlement was contingent on the execution of a writing, among other scattershot arguments. *See Motion to Enforce January 23, 2014 Stipulated Agreement* [Dkt. No. 208] at 12-19. At the hearing on the Trusts' motion to enforce the settlement, however, Mandelbrot conceded the validity of the settlement but for his assertion that its term preventing him from representing parties before the Trusts and the Western Trust violated public policy by restricting his ability to practice law. Hrg. Tr. 20:10-24, Mar. 27, 2014. The Motion follows suit by focusing on that issue.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    potentially fraudulent evidence.  The Trusts are not in competition with Mandelbrot and do not

2    seek to enforce any covenant not to compete against Mandelbrot; they simply do not want to

3    process claims from a source that they know to be unreliable.

4    Nor does the settlement tie the resolution of any claim against the Trusts to a restriction on

5    the claimant's attorney's future practice: The Trusts asserted a claim against Mandelbrot

6    individually, based on his own misconduct in presenting unreliable evidence to them.  Nothing in

7    the public policy of the State of California is even vaguely opposed to allowing Mandelbrot to

8    consensually resolve the Trusts' dispute with him regarding his own misconduct in proceedings

9    before the Trusts through a settlement approved by the Trusts' supervising court that bars him

10   from continuing to represent claimants before the Trusts, the Western Trust, and the Plant Trust in

11   the future.

12   No stay pending appeal can issue given the weakness of Mandelbrot's legal argument and

13   its negligible probability of success.  Even if Mandelbrot had tendered a substantial issue on

14   appeal, however, the balance of the harms here, and the public interest, strongly favor allowing the

15   Trusts to process claims from Mandelbrot clients and prospective clients solely on the basis of

16   evidence tendered by untainted representatives of those claimants pending the resolution of this

17   dispute over the terms of the Mandelbrot settlement.  Accordingly, the Motion fails to meet any of

18   the criteria for issuance of a stay pending appeal and should be denied.

19   **II.**

20   **MANDELBROT ENGAGED IN, AND ADMITTED, A PATTERN AND PRACTICE OF**

21   **MISCONDUCT IN PROSECUTING CLAIMS BEFORE THE TRUSTS**

22   The evidence at trial and this Court's own findings establish a pattern of misconduct that,

23   regardless of any agreement by Mandelbrot, justifies both the Trusts and the Court in barring

24   Mandelbrot from prosecuting claims against the Trusts, the Western Trust, and the Plant Trust.

25   Moreover, Mandelbrot himself has conceded the material underlying facts supporting that ban.

26   The Trusts' audit and investigation of the Mandelbrot claims revealed the following facts.

27   In the majority of cases, Mandelbrot serves as an agent for other lawyers for the limited purpose of

28   submitting claims to asbestos trusts.  *Motion for Order Instructing the Thorpe Trusts* [Dkt. No.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

132], Ex. A  ¶¶ 3-4, at 5-25 (May 24, 2013 letter from Stephen M. Snyder, Managing Trustee, to

Mandelbrot, advising Mandelbrot of the Trusts' audit findings and conclusion) (the "**Letter**"), at

17.  He fronts filing fees in exchange for 25% of the referring counsel's contingent fee.  *Id.* at 19.

As such, in the majority of cases he does not have a direct relationship with the claimant and does

no primary investigation.  In this capacity he filed some 200 claims against the Trusts, including

108 "disembarkation" claims,[4] whose implausibility and inconsistencies triggered the Trusts'

initial concerns about the reliability of Mandelbrot's filings.[5]  *Declaration of Laura Paul* [Dkt.

No. 152-1] ("**Paul Decl.**") ¶¶ 34-37, 51, 62.  That investigation revealed, among other things, 50

instances among those 200 claims in which witnesses, many of whom could not have had personal

knowledge of the circumstances of the claimants' asbestos exposure, gave seriatim inconsistent

versions of the asserted exposure.  Letter at 10; Paul Decl. ¶¶ 74-76, *see also id.* ¶¶ 77-101.  The

documentation supposedly supporting these claims was not only without foundation and

---

[4] These claims involve sailors assigned to United States Navy vessels who claimed exposure to
Thorpe or JT Thorpe asbestos after disembarking from their vessels and performing work in
port in a manner that was inconsistent with Navy regulation and practice.  When challenged,
many of these claims then inconsistently were transformed into claims of asbestos exposure
while on board ship.  Letter at 10; Paul Decl. ¶ 75-76.

[5] Through July 26, 2013, Mandelbrot had submitted claims with JT Thorpe Trust, Thorpe
Insulation Trust, and Western Trust.  Paul Decl. ¶ 33.  In the summer of 2011, Trust claims
processors notified Laura Paul, the Senior Supervising Paralegal of the Trusts and the Western
Trust, of several claims submitted by Mandelbrot, and Paul herself noticed many unusual
claims he had submitted.  *Id.* ¶¶ 34-35.  This prompted Paul to look further into various
Mandelbrot claims, and she found several deficiencies and discrepancies.  *Id.*  ¶¶ 36-47.
Thereafter, the Trusts identified four patterns of suspect claims and Paul provided exemplar
claims for further analysis to determine if the issues with the Mandelbrot claims were isolated
or part of a larger pattern.  *Id.* ¶¶ 48-49.  Paul determined that the issues were not isolated and
gathered 23 claims as samples for further review.  *Id.* ¶ 49.  Chuck LaGrave, as legal
consultant to the Trusts, reviewed these 23 claims.  *Id.*  At a Trustee meeting in September
2011, LaGrave made a presentation on his review of the sample claims, and the Trustees, with
the consent of their Trust Advisory Committees and Futures Representatives, determined that
an audit would be conducted regarding Mandelbrot's claims, pursuant to Section 5.7(a) of the
Trust Distribution Procedures.  *Id.* ¶ 50.  Paul and the claims processors identified more than
200 claims falling within the four categories she had earlier identified, which Paul "believed
warranted further assessment and review." *Id.* ¶ 51.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   subsequently recanted.  Letter at 14; Paul Decl. ¶ 126.  It was also tendered through form

2   allegations that did not vary significantly from case to case, or through inconsistent claims of

3   asbestos exposure made with different trusts at the same time, and accompanied in some instances

4   by obvious indicia of unreliability such as invalid signatures, backdating, and improper

5   verifications.  Letter at 10-13; Paul Decl. ¶¶ 28, 79-101.  Moreover, Mandelbrot obstructed the

6   Trusts' attempts to audit and verify suspicious claims, refusing to make witnesses available to

7   representatives of the Trusts.  Letter at 10-11, 14-15; Paul Decl. ¶¶ 47, 126; *see Declaration of*

8   *Sara Beth Brown* [Dkt. No. 157-6] ¶¶ 13-19, 30-39.

9     The evidence uncovered by the Trusts of Mandelbrot's pattern and practice of filing

10  unreliable claims produced at trial was overwhelming.  Indeed, rather than testify and subject

11  himself to cross-examination, in order to resolve the charges against him, Mandelbrot, acting with

12  the advice of his trial counsel, admitted to the existence of the pattern and practice of submitting

13  unreliable claims that the Trusts had found.  This Court found:

14   &bull; "Mandelbrot agreed that the J.T. Thorpe Trust's, the Thorpe Insulation Trust's and
15  the Western Trust's determinations stated in the May 24th letter, including the
    determination by all three trusts that Mandelbrot, the person and the firm,
16  are unreliable and with respect to the J.T. Thorpe Trust and Thorpe Insulation Trusts
    specifically, have engaged in a pattern and practice of filing unreliable evidence
17  and support claims filed with those two trusts, are reasonable in light of the
    evidence assessed in connection with the audit."  Findings, at Findings of Fact
    ¶ 3(g).

18

19   &bull; "Mandelbrot agreed that the remedy imposed by the J.T. Thorpe Trust and the
    Thorpe Insulation Trust in the May 24th letter providing for the disallowance of all
20  further evidentiary submissions by Mandelbrot is authorized under the Trust
    Distribution Procedures of each trust, and is reasonable in light of the Trusts' audit
    and investigative findings."  *Id.* ¶ 3(h).

21

22   &bull; "Mandelbrot agreed that the investigation of Mandelbrot – by the J.T. Thorpe
    Trust, the Thorpe Insulation Trust and the Western Trust – and the determinations
23  and the remedy imposed were reasonable, not based upon improper interpretations
    of the terms of the three trusts, were and are consistent with the trusts' fiduciary
24  duties, were conducted pursuant to a valid trust purpose, were not done in bad faith
    and were not an abuse of discretion."  *Id.* ¶ 3(i).

25    Based on these admitted facts, even if Mandelbrot had not agreed (as he did on the record)

26  that he would henceforth desist from prosecuting asbestos claims against the Trusts, the Western

27  Trust, and the Plant Trust, the Trusts and the bankruptcy court would have had no reasonable

28  alternative but to ban Mandelbrot from prosecuting claims before them as a sanction under the

1    Trusts' own court-approved governing documents. *See* Trust Distribution Procedures for the

2    Trusts and for the Western Trust § 5.7; Trust Distribution Procedures for the Plant Trust § 5.8(a)

3    (collectively, the "**TDPs**").[6]

### III.

### MANDELBROT FAILS TO SATISFY THE REQUIREMENTS

### FOR A STAY PENDING APPEAL

7    Mandelbrot misstates the legal standard for obtaining a stay pending appeal by relying on

8    superseded pre-*Winter v. N.R.D.C., Inc.*, 555 U.S. 7 (2008) authorities that adopt a sliding scale

9    approach to the traditional four-part standard. Motion at 8.

10    Under current law, Mandelbrot must demonstrate that each of four factors favors a stay

11    pending appeal: (1) a strong likelihood of success on the merits of his appeal; (2) irreparable injury

12    to the appellant absent a stay; (3) lack of substantial injury to the other parties resulting from a

13    stay; and (4) the public interest. *See Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *Humane*

_____

[6] Section 5.7 of the Trust Distribution Procedures of the Trusts and the Western Trust provides:

> The Trust with consent of the TAC [the Trust Advisory Committee] and Futures
> Representative may develop methods for auditing the reliability of evidence
> reasonably related to the value of the claim, including additional reading of x-rays
> and verification of pulmonary function tests, as well as the reliability of evidence of
> exposure to asbestos, including exposure to asbestos-containing products
> manufactured or distributed by Thorpe [or Western], and requesting from claimants
> or other Trusts, claims materials submitted to other Trusts. ***In the event that the
> Trust reasonably determines that any unreliable individual or entity has engaged
> in a pattern or practice of providing unreliable medical or other evidence to the
> Trust, it may decline to accept additional evidence from such provider in the
> future. Further, in the event that an audit reveals that fraudulent information
> has been provided to the Trust, the Trust may penalize any responsible claimant
> or claimant's attorney by disallowing the related Trust Claim or by other means***
> including, but not limited to, requiring the claimant or attorney submitting the
> fraudulent information to pay the costs associated with the audit and any future
> related audit or audits, reordering the priority of payment of all affected claimants'
> Trust Claims, raising the level of scrutiny of additional information submitted from
> the medical facility or other source, refusing to accept additional evidence from the
> same, seeking the prosecution of the claimant or claimant's attorney for presenting
> a fraudulent claim in violation of 18 U.S.C. § 152, and seeking Rule 11 sanctions.

Trust Distribution Procedures for the Trusts and for the Western Trust § 5.7(a) (emphasis added).
The Plant Trust's Trust Distribution Procedures contain substantially the same language as the
emphasized language above, in that document's section 5.8(a).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   *Soc'y v. Gutierrez*, 558 F.3d 896, 896-97 (9th Cir. 2009) (citing *Winter*, 555 U.S. at 20, as

2   abrogating the "sliding scale" test for preliminary injunctions, and requiring that all four factors

3   are met); *SEC v. Wilde*, 2013 WL 2303761, at *5 (C.D. Cal. May 20, 2013) (factors considered for

4   stay pending appeal are substantially the same as those for a preliminary injunction).

5        The first two of these factors "are the most critical." *Nken v. Holder*, 556 U.S. 418, 433-

6   434 (2009).  With respect to the first, more than a mere possibility of success on the merits is

7   required and, with respect to the second, "simply showing some 'possibility of irreparable injury is

8   inadequate.'" *Id.* at 434.  "A stay is not a matter of right even if irreparable injury might otherwise

9   result." *Id.* at 433 (internal quotation marks omitted).

10  **A.      Mandelbrot Cannot Demonstrate Any Likelihood of Success on the Merits.**

11       Mandelbrot's appeal centers on his claim that the provision of the settlement barring him

12  from representing asbestos claimants before the Trusts, the Western Trust, and the Plant Trust

13  violates California Business & Professions Code Section 16600 and California Rule of

14  Professional Conduct 1-500(A) and is therefore not legally enforceable.  Neither claim has any

15  merit.

16       Section 16600,[7] originally enacted in 1872, expresses California's long-standing pro-

17  competition policy, favoring both open competition and employee mobility.  *Edwards v. Arthur*

18  *Andersen LLP*, 189 P.3d 285 (Cal. 2008).  It renders covenants not to compete by employees, even

19  those that might be enforceable in other jurisdictions under a rule of reason, unenforceable.  *Id.* at

20  290-92 (reviewing the evolution of California's treatment of covenants not to compete); *id.* at 297

21  (holding noncompetition agreement invalid).

22

23

24

25  _____

26  [7] California Business & Professions Code Section 16600 provides: "Except as provided in this
    chapter, every contract by which anyone is restrained from engaging in a lawful profession,
27  trade, or business of any kind is to that extent void."  CAL. BUS. & PROF. CODE § 16600
    (Deering 2014).
28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

But that policy, Section 16600, and *Edwards* have nothing to do with this case. The Trusts never employed Mandelbrot and are not in competition with him.[8] Mandelbrot did not agree not to compete with the Trusts, and the Trusts are not attempting to enforce a non-competition covenant.[9] Section 16600 cannot be read to require any person to continue to deal with another who they know, or reasonably believe, is unreliable because refusing to do so would have an adverse effect on that person's livelihood or trade. Section 16600 does not privilege those who engage in misconduct and develop bad reputations to coerce others to continue to deal with them on pro-competition grounds. No California case has ever read Section 16600 to require anything along those lines. Mandelbrot cites no authority in support of such an absurd extension of Section 16600.

Similarly, the policy of California Rule of Professional Conduct 1-500(A)[10] is in no way implicated by the facts of this case. Rule 1-500(A) is directed at two specific situations neither of

---

[8] California cases applying Section 16600 focus on the context of employment and business competition. *See Edwards*, 189 P.3d at 291-92 (noting the "consistent" focus of California courts on Section 16600's "settled legislative policy in favor of open competition and employee mobility" and finding invalid a noncompetition agreement an employee had signed upon employment); *see also Silguero v. Creteguard, Inc.*, 113 Cal. Rptr. 3d 653, 661 (Cal. Ct. App. 2010) (sustaining a wrongful termination claim based on Section 16600 where employee was terminated due to a noncompetition agreement with a former employer); *Dowell v. Biosense Webster, Inc.*, 102 Cal. Rptr. 3d 1, 3, 20 (Cal. Ct. App. 2009) (noting the "interests of the employee in his own mobility and betterment" are "paramount" to the "competitive business interests of the employers" and finding invalid certain "Employee Secrecy, Non-Competition and Non-Solicitation Agreement[s]") (internal quotations omitted); *cf. Greaux v. Mermin (In re Marriage of Greaux)*, 167 Cal. Rptr. 3d 881, 891 (Cal. Ct. App. 2014) (holding that Section 16600 does not prevent the issuance of a noncompetition order).

[9] In his declaration, Mandelbrot mischaracterizes the settlement as "akin to a non-compete agreement" with the Trust Advisory Committee members. Motion, *Declaration of Michael J. Mandelbrot* ("**Mandelbrot Decl.**") ¶ 7. This characterization makes no sense, as the settlement was among Mandelbrot, the Trusts, the Western Trust, and the Plant Trust (not any individual lawyers), and it settled concerns about Mandelbrot's unreliable practices having nothing to do with competition or employment. *See* Findings, at Concls. of Law ¶ 7.

[10] California Rule of Professional Conduct 1-500 provides:

(A) A member shall not be a party to or participate in offering or making an agreement,
    whether in connection with the settlement of a lawsuit or otherwise, if the agreement
    *(FOOTNOTE CONTINUED)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  which resemble this case.  To the extent that the Rule prohibits law firms from extracting

2  covenants not to compete in the future from attorneys that are members of the firm or employed

3  by it, it is simply a special statement of the pro-competitive policy embodied more generally in

4  Section 16600 applicable to the legal profession.  As set forth above, that policy is not implicated

5  by barring Mandelbrot from filing claims with the Trusts, the Western Trust, or the Plant Trust

6  pursuant to the terms of the settlement.  This is not a covenant not to compete case.

7       Rule 1-500(A), like its analogue ABA Model Rule 5.6(b)[11] that is in force in many other

8  jurisdictions, does, however, also embody a distinct policy that makes certain kinds of settlements

9  out-of-bounds.  When two parties settle a claim between them, the settlement should reflect the

10  merits of the claim being settled.  It should not include an extraneous term restricting the practice

11  of one of the parties' lawyers.  ABA Formal Opinion 93-371 explains why:

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

13      restricts the right of a member to practice law, except that this rule shall not prohibit such
        an agreement which:

            (1) Is a part of an employment, shareholders', or partnership agreement among
        members provided the restrictive agreement does not survive the termination of the
        employment, shareholder, or partnership relationship; or

            (2) Requires payments to a member upon the member's retirement from the
        practice of law; or

            (3) Is authorized by Business and Professions Code sections 6092.5 subdivision (i),
        or 6093.

    (B) A member shall not be a party to or participate in offering or making an agreement which
        precludes the reporting of a violation of these rules.

CAL. R. PROF'L COND. 1-500.

[11] ABA Model Rule 5.6 provides:

    A lawyer shall not participate in offering or making:

    (a) a partnership, shareholders, operating, employment, or other similar type of agreement
        that restricts the right of a lawyer to practice after termination of the relationship, except an
        agreement concerning benefits upon retirement; or

    (b) an agreement in which a restriction on the lawyer's right to practice is part of the
        settlement of a client controversy.

ABA MODEL R. 5.6.  The California Supreme Court has noted that Rule 1-500 is based on the
    predecessor to ABA Model Rule 5.6 and that the ABA Model Rules may be helpful in
    interpreting the California rules.  *Howard v. Babcock*, 863 P.2d 150, 155 n.5 (Cal. 1993).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

> First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals.  Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel.  Third, the offering of such restrictive agreements places the plaintiff's lawyer in a situation where there is conflict between the interests of present clients and those of potential future clients.  While the Model Rules generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.

ABA FORMAL OP. 93-371; *see also* STATE BAR OF CAL. FORMAL OP. 1988-104 (same); ABA FORMAL OP. 95-394 (extending Rule 5.6 to cover settlements between public agencies and private parties).

This case, however, does not involve a settlement between two parties that restricts the practice of one of their lawyers.  It involves a settlement of a dispute between the Trusts and Mandelbrot arising out of Mandelbrot's own misconduct that constrains Mandelbrot's own future behavior.  Moreover, none of the policies that support the prohibition on settlements restricting the practice of one of the parties' lawyers apply here:

- The settlement does not purport to deny the public the services of a lawyer who has successfully prosecuted similar claims against a particular defendant in the past; it protects the public from one known to have engaged in a practice of filing claims on unreliable evidence that have led to additional scrutiny, audits and expense.[12]

---

[12] *See* Findings, at Concls. of Law ¶ 7(a) ("[T]he J.T. Thorpe Trust's, the Thorpe Insulation Trust's, the Western Trust's determinations stated in the May 24th letter, including the trust's determinations that Mandelbrot the person and the entity are unreliable, and have engaged in a pattern and practice of filing unreliable evidence in support of claims filed with the J.T. Thorpe Trust and the Thorpe Insulation Trust, are reasonable in light of the evidence assessed in connection with the audit."); Hrg. Tr. 11:20-12:11, Mar. 27, 2014 (highlighting Mr. Mandelbrot's "practice of submitting unreliable claims to the Trusts" as evidenced by "numerous instances" in which the Trusts found evidence contradicting claims Mr. Mandelbrot had submitted).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

- The settlement does not introduce conditions extraneous to the merits of the matter being settled into the settlement negotiations; it resolves the precise issue in dispute—Mandelbrot's conduct before the Trusts in prosecuting claims.[13]

- There is nothing in the settlement that unfairly subordinates Mandelbrot's own professional interests, or the interests of future clients, to that of a particular settling client; Mandelbrot's clients are not parties to this settlement at all.

Accordingly, the settlement in this case is not of the type covered by Rule 1-500(A), and its enforcement does not implicate any of the policies supporting the Rule.[14]  As with California Business & Professions Code Section 16600, Mandelbrot can point to no authority applying the prohibition of Rule 1-500(A) in a context even vaguely analogous to this case.[15]

Finally, Mandelbrot fails to acknowledge that, as noted above, the TDPs themselves provide for the very same relief – preventing further claims-filing activity as to any unreliable individual or entity that, in each Trust's reasonable determination, has engaged in a pattern or practice of providing unreliable medical or other evidence to the Trust – as the relief Mandelbrot now claims is inappropriate in the context of the settlement agreement.  *See supra* note 6 (quoting

---

[13] *See* Findings, at Findings of Fact ¶¶ 6-9 (adversary proceedings brought in furtherance of the Trusts' audit and investigation of Mandelbrot and claims submitted by Mandelbrot).

[14] California courts reject an absolutist interpretation of Rule 1-500 and take into account all the relevant circumstances and competing interests in determining the proper scope and application of the Rule.  *See Howard*, 863 P.2d at 156-59 (noting that the theoretical freedom of each lawyer to choose whom to represent and what kind of work to undertake, and the theoretical freedom of any client to select his or her attorney of choice is "inconsistent with the reality that both freedoms are actually circumscribed"); *Haight v. Superior Court*, 285 Cal. Rptr. 845, 848 (Cal. Ct. App. 1991) (construing Rule 1-500 to reflect "a balance between competing interests" and finding  that "the rule simply provides that an attorney may not enter into an agreement to refrain altogether from the practice of law").

[15] Mandelbrot mischaracterizes the record when he asserts that this Court's ruling in this case rejecting his public policy claim was based on a distinction between prohibiting a lawyer from practicing and merely restricting his practice.  Motion at 9-10.  In context, the Court, while noting the limits of the practice restriction in the settlement, found Rule 1-500(A) inapplicable on the ground set forth in Part III.A, *supra*.  The ruling was that Rule 1-500(A) did not apply to a settlement of the kind of claim – one based on the misconduct of the very attorney subject to the restriction – before the Court.  Hrg. Tr. 10:21-14:13, Mar. 27, 2014.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    Trust Distribution Procedures § 5.7(a)). Mandelbrot's argument is thus a collateral attack on the

2    TDPs approved by this Court long ago in the chapter 11 plan confirmation orders that created the

3    trusts. To the extent California law is in any way inconsistent with the bankruptcy court-approved

4    TDPs (the Trusts do not believe it is), those objections should have been raised at the time of

5    confirmation and are no longer subject to attack on basic principles of res judicata. *Stoll v.*

6    *Gottleib*, 305 U.S. 165, 170-71 (1938); *Levy v. Cohen*, 561 P.2d 252 (Cal. 1977).

7            In short, Mandelbrot's assertions that the settlement violates the public policy of the State

8    of California as embodied in California Business & Professions Code Section 16600 and

9    California Rule of Professional Conduct 1-500(A) are meritless and should be rejected on appeal.

10   As Mandelbrot cannot show that his appeal is likely to succeed, or even that a serious legal

11   question exists as to the merits of his arguments, the Motion should be denied.

12   **B.    Mandelbrot Does Not Show That He Will Be Irreparably Harmed.**

13           Mandelbrot fails to point to any irreparable injury that he will suffer absent a stay pending

14   appeal. Instead, he asserts that his clients, who have been given notice that they must find new

15   counsel by July 23, 2014, will suffer irreparable harm because of a further delay in the processing

16   of their claims necessitated by the substitution of counsel contemplated by the settlement. Motion

17   at 12-13.[16] Mandelbrot's failure to identify any irreparable injury to him as appellant requires that

18

---

19   [16] Mandelbrot's professed concern for mitigating delay suffered by his clients is disingenuous.

20       The Trusts, not Mandelbrot, have been pushing for prompt substitution of counsel in order to
         mitigate delay, and Mandelbrot's motion for stay pending appeal, like his past practices in

21       obstructing the Trusts' investigation of these claims would, if successful, only have the effect
         of further delaying the resolution of these claims.

22

         Mandelbrot states that the Judgment "restrains his trade" in various ways. Mandelbrot Decl.
23       ¶¶ 5-7. A generous reading of the declaration could arguably find such statements to be an

24       attempt to prove up irreparable harm to Mandelbrot. However, any harm suffered as a result
         of Mandelbrot's own actions cannot constitute irreparable harm. *Caplan v. Fellheimer Eichen*

25       *Braverman & Kaskey*, 68 F.3d 828, 839 (3d Cir. 1995) (where parties agree to settle litigation
         and thereafter argue that they have suffered harm as a result, they have "acted to permit the

26       outcome which they find unacceptable" and such "self-inflicted" harm "does not qualify as
         irreparable"); *accord Salt Lake Tribune Publ'g Co. v. AT&T Corp.*, 320 F.3d 1081, 1106 (10th

27       Cir. 2003) ("We will not consider a self-inflicted harm to be irreparable"); *Dotster, Inc. v.*
         *Internet Corp.*, 296 F. Supp. 2d 1159, 1163 (C.D. Cal. 2003) ("If Plaintiffs entered a

28

                                                                               *(FOOTNOTE CONTINUED)*

1    the Motion be denied under the *Winter* standard.  *Herb Reed Enters., LLC v. Fla. Entm't Mgmt.*,

2    736 F.3d 1239, 1249-1251 (9th Cir. 2013) (citing *Winter*, requiring evidence of a likelihood of

3    irreparable harm, and reversing the district court's issuance of a preliminary injunction for making

4    insufficient factual findings on the likelihood of irreparable harm and "collaps[ing] the likelihood

5    of success and the irreparable harm factors").

6        In any event, there is no evidence that the holder of any valid claim now represented by

7    Mandelbrot will be prejudiced by promptly retaining new counsel of his or her choice.  Claims

8    presented by untainted attorneys will be processed more efficiently than Mandelbrot-represented

9    claims which, based on the results of the Trusts' prior investigations and audits, may lack reliable

10   supporting evidence.[17]

11       Prompt implementation of the Judgment and the Order Following Trial will ***benefit***, not

12   harm, those of Mandelbrot's clients capable of presenting valid claims.  Indeed, Mandelbrot

13   conceded as much when he agreed on the record to promptly transfer all pending claims of current

14   clients to new counsel. Hrg. Tr. 57:16-58:7, Mar. 27, 2014.

15   **C.    Mandelbrot Ignores the Substantial Injury to the Trusts and Their Beneficiaries If a**

16          **Stay Is Issued.**

17       Even if Mandelbrot had established that he would suffer irreparable injury in his own right

18   absent a stay, any such injury would have to be weighed and balanced against the harm to the

19   Trusts, the Western Trust, the Plant Trust, and their respective beneficiaries, the individual

20

21   ─────────────

22   disadvantageous contract, they must suffer the consequences"); *Ventura Cnty. Christian High
     School v. City of San Buenaventura*, 233 F. Supp. 2d 1241, 1253 (C.D. Cal. 2002) (following

23   *Caplan*); *see also Bell Atl. Bus. Sys. v. Storage Tech. Corp.*, 1994 WL 125173, at *3 (N.D.
     Cal. Mar. 31, 1994) ("[L]oss of customers and a resulting loss in revenue … do not amount to

24   irreparable harm because such injuries are measurable and thus have an adequate remedy at
     law.").

25   [17] Mandelbrot mischaracterizes the record by asserting that his clients will suffer harm absent the

26   entry of a stay by losing their position in the distribution queue.  Motion at 13.  The Order
     Following Trial provides that if those claims are timely refiled by untainted counsel, "no

27   additional filing fee will be assessed and the original date of filing will be preserved."  Order
     Following Trial ¶ 7.

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    asbestos claimants, were a stay to issue.  Mandelbrot asserts that the Trusts, the Western Trust,

2    and the Plant Trust would suffer no substantial injury by staying the Judgment and Order

3    Following Trial.  But, absent appointment of replacement counsel, a stay could further delay the

4    Trusts', the Western Trust's, and the Plant Trust's administration of Mandelbrot-represented

5    claims, potentially for years through an extended course of appellate proceedings while the

6    Mandelbrot settlement dispute remains on appeal.  Subjecting these claims to further unnecessary

7    delay would deny prompt compensation to deserving individuals suffering from asbestos-related

8    injuries or their survivors and prevent the Trusts from efficiently weeding out meritless claims.[18]

9         Additionally, if this Court were to stay the Judgment and the Order Following Trial, the

10    Trusts, the Western Trust, and the Plant Trust would  be subject to inconsistent and directly

11    conflicting instructions, because the Motion does not seek a stay of the Enforcement Order.  That

12    Order provides, among other things, that the settlement is "valid and enforceable by the J.T.

13    Thorpe Trust, Thorpe Trust, Western Trust, and the Plant Trust" and that, in connection with the

14    settlement, the Trusts and the Western Trust are to provide notice to claimants and counsel

15    working with Mandelbrot that their claims should be transferred to other counsel by July 23, 2014.

16    Enforcement Order ¶¶ 4, 7.  That notice has been sent and posted on the Trusts' and the Western

17    Trust's websites since on or about April 17, 2014.  *Trusts' Notice of Completion of Providing*

18    *Notice* [Dkt. No. 256].

19         The victims of the conflicting instructions would be the beneficiaries of the Trusts, who

20    would incur additional expense and difficulty in asserting their claims.  Moreover, the Trusts

21

22

23    _____

24    [18] For information with respect to claims pending against the Trusts, *see* the annual reports of the
    Trusts, most recently at *Eighth Annual Report and Accounting, Audited Financial Statements,
    and Claim Report*, *In re J.T. Thorpe, Inc.*, Case No. 02-14216-BB, ECF No. 1718 (Bankr.

25    C.D. Cal. Apr. 29, 2014) (as amended at ECF No. 1727); *Fourth Annual Report and
    Accounting, Audited Financial Statements, and Claim Report*, *In re Thorpe Insulation Co.*, *In

26    re Pacific Insulation Co.*, Case Nos. 07-19271-BB and 07-20016-BB (jointly administered
    under Case No. 07-20016-BB), ECF No. 50 (Bankr. C.D. Cal. April 29, 2014) (as amended at

27    ECF No. 59).

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    would also be harmed, because the resulting confusion would complicate the administration of

2    claims.

3        These harms are not only substantial, they greatly outweigh any conceivable harm to

4    Mandelbrot that might be imagined.  In such circumstances a stay should be denied even if the

5    appellant could, as Mandelbrot cannot, establish a likelihood of success on the merits.

6    **D.    The Public Interest Does Not Favor a Stay Pending Appeal.**

7        To establish the fourth criterion for a stay pending appeal, Mandelbrot must show that the

8    issuance of a stay will serve, rather than disserve, the public interest.  Here, the public interest

9    strongly weighs against a stay.

10        "The public interest requires bankruptcy courts to consider the good of the case as a

11    whole …. [T]he public interest cannot tolerate any scenario under which private agendas can

12    thwart the maximization of value for all."  *In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 284

13    (Bankr. S.D.N.Y. 2007); *see also FTC v. World Wide Factors, Ltd.*, 882 F.2d 344, 347 (9th Cir.

14    1989) ("[W]hen a district court balances the hardships of the public interest against a private

15    interest, the public interest should receive greater effect.").

16        Section 524(g) was specifically enacted to address the crushing social problems of asbestos

17    disease and asbestos litigation.  To that end, the 524(g) plans establishing the Trusts address a

18    public problem as well as the individual claimants' private interests in obtaining just compensation

19    for their injuries.  Thus the implementation of the Order Following Trial and the Judgment, both

20    directed at ensuring the integrity of the Trusts' administration of asbestos claims resolved pursuant

21    to section 524(g), is a matter infused with the public interest.  As the Ninth Circuit noted in

22    rejecting the demand of Continental Insurance Company that it be permitted to arbitrate certain

23    claims arising under a prepetition settlement agreement in the *Thorpe Insulation* case, the

24    bankruptcy court has a special role in these matters:

25        The purpose of § 524(g) is to consolidate a debtor's asbestos-related assets and
        liabilities into a single trust for the benefit of asbestos claimants.  *See* H.R. REP.
26        103-835, at 46-48.  Congress intended that the trust/injunction mechanism be
        "available for use by any asbestos company facing … overwhelming liability."  *See*
27        *id.* at 48.  Congress tasked bankruptcy courts with ensuring that § 524(g)'s "high
        standards" are met and gave them authority to implement and supervise this unique
28        procedure.  *See id.* at 47.  A claim based on a debtor's efforts to seek for itself and

15

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

third parties the protections of § 524(g) implicates and tests the efficacy of the provision's underlying policies.  Because Congress intended that the bankruptcy court oversee all aspects of a § 524(g) reorganization, only the bankruptcy court should decide whether the debtor's conduct in the bankruptcy gives rise to a claim for breach of contract.

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1022 (9th Cir.) *cert. denied* 133 S. Ct. 119 (2012).  Vindicating this Court's supervisory authority over administration of the Trusts so as to ensure the integrity of their claim-processing during the interim period while appeal pends is not only appropriate based on the merits of this appeal and the balance of private harms among appellant, appellees, and third parties implicated by a stay, but also on account of the public interest that attends the proper administration of mass-asbestos trusts created under bankruptcy court authority.

*[remainder of page intentionally left blank]*

## IV.

## CONCLUSION

For the reasons set forth herein, this Court should not issue a stay pending appeal.[19]

DATED: May 13, 2014                    Respectfully submitted,


                                       /s/ *Daniel. J. Bussel*
                                          Daniel J. Bussel

                                       KLEE, TUCHIN, BOGDANOFF & STERN LLP

                                       *Attorneys for the J.T. Thorpe Settlement Trust and*
                                       *Thorpe Insulation Company Asbestos Settlement Trust*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

---

[19]   In the event this Court nonetheless rules that a stay should issue, the Trusts request that the Court entertain further proceedings to consider the appropriate amount of the required supersedeas bond.  Under applicable law, entry of a stay pending appeal must be conditioned on the posting of a bond in an amount sufficient to compensate the appellees for all the harms caused by the delay occasioned by ultimately an unsuccessful appeal.  *See ACC Bondholder Grp. v. Adelphia Commc'ns Corp. (In re Adelphia Commc'ns Corp.)*, 361 B.R. 337, 350-51 (S.D.N.Y. 2007).  The Trusts expressly reserve their right to be heard in connection with the fixing of an appropriate bond should the Court determine to issue a stay pending appeal.

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1999 Avenue of the Stars, Thirty-Ninth Floor, Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*):  Trusts' Opposition to Mandelbrot Amended Motion to Stay Enforcement of Judgment and Order Following Trial  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  May 13, 2014  I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE ATTACHED SERVICE LIST

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*)  May 13, 2014 , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

SEE ATTACHED SERVICE LIST

☒ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  May 13, 2014 , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

**TO BE SERVED BY PERSONAL DELIVERY:**
The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1482
255 E. Temple Street
Los Angeles, CA 90012-3332

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 13, 2014 | Kathryn T. Zwicker | */s/ Kathryn T. Zwicker* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                           **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):**

Daniel J. Bussel, dbussel@ktbslaw.com (attorneys for Plaintiffs J.T. Thorpe Settlement Trust and Thorpe Insulation Company Asbestos Trust)

David N Chandler, courtdocsdncpc@gmail.com (attorneys for the Defendants/Appellants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm)

Dennis D Davis, mvelasquez@gsdllaw.com (attorneys for the Defendants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm)

Gary S Fergus, gfergus@ferguslegal.com (counsel to Futures Representative)

Gabriel I Glazer, gglazer@stutman.com (attorneys for Plaintiffs Thorpe Insulation Company Asbestos Settlement Trust and J.T. Thorpe Settlement Trust)

Gregory K Jones, gjones@stutman.com (attorneys for Plaintiffs Thorpe Insulation Company Asbestos Settlement Trust and J.T. Thorpe Settlement Trust)

Merle Meyers, mmeyers@mlg-pc.com (attorneys for the Defendants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm)

Danielle A Pham, dpham@gordonsilver.com (attorneys for Thorpe Insulation Company Asbestos Settlement Trust and J.T. Thorpe Settlement Trust)

Marcy Railsback, marcy@bovinorailsback.com, marcyrailsback@hotmail.com (attorneys for Witnesses Barbara Malm and Laura Paul)

United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov

**SERVED BY FIRST-CLASS MAIL:**

Eve H. Karasik, Esq.
Danielle A. Pham, Esq.
Gordon Silver
1888 Century Park East, 15th Fl.
Los Angeles, CA 90067

Attorneys for Thorpe Insulation Company Asbestos Settlement Trust and J.T. Thorpe Settlement Trust

Benjamin P. Smith
Morgan, Lewis & Bockius LLP
One Market
Spear Street Tower
San Francisco, CA 94105

Attorneys for the J.T. Thorpe Settlement Trust and Thorpe Insulation Company Asbestos Settlement Trust

Michael J. Mandelbrot, Esq.
Mandelbrot Law Firm
505 San Marin Drive, Suite 200
Novato, CA 94945

Defendants *Pro Se*

David N. Chandler
1747 Fourth St
Santa Rosa, CA 95404

Attorneys for the Defendants/Appellants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm

Michael Molland
Molland Law
30 Fifth Street
Petaluma, CA 94952

Special Litigation Counsel for the Thorpe Trusts and Western Trust

Gary S. Fergus
Fergus, a Law Office
595 Market Street, Suite 2430
San Francisco, CA 94105

Counsel to Futures Representative

Jean L Bertrand
Schiff Hardin LLP
One Market Spear Street Tower
32nd Fl
San Francisco, CA 94105

Attorneys for Witness Charles W. LaGrave

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                     **F 9013-3.1.PROOF.SERVICE**

**SERVED BY E-MAIL:**

David N Chandler, courtdocsdncpc@gmail.com (attorneys for the Defendants/Appellants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm)

Dennis D Davis, mvelasquez@gsdllaw.com (attorneys for the Defendants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm)

Gary S Fergus, gfergus@ferguslegal.com (counsel to Futures Representative)

Michael J. Mandelbrot, mandelbrot@asbestoslegalcenter.org  (Defendant/Appellant)

Merle Meyers, mmeyers@mlg-pc.com (attorneys for the Defendants Michael J. Mandelbrot, Esq. and The Mandelbrot Law firm)

Danielle A Pham, dpham@gordonsilver.com (attorneys for Thorpe Insulation Company Asbestos Settlement Trust and J.T. Thorpe Settlement Trust)

Marcy Railsback, marcy@bovinorailsback.com, marcyrailsback@hotmail.com (attorneys for Witnesses Barbara Malm and Laura Paul)

Michael Molland, mmolland@mollandlaw.com (Special Litigation Counsel for the Thorpe Trusts and Western Trust)

United States Trustee (LA), ustpregion16.la.ecf@usdoj.gov

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                    **F 9013-3.1.PROOF.SERVICE**