1   MICHAEL J. MANDELBROT, SBN172626
    Attorney At Law
2   505 A San Marin Drive, Suite 200
    Novato, CA 94945
3   Telephone: (800) 970-3878

4   Attorney for Beneficiaries of the J.T. Thorpe Settlement Trust

FILED

MAY 22 2014

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY_____ Deputy Clerk

5

6              UNITED STATES BANKRUPTCY COURT

7              CENTRAL DISTRICT OF CALIFORNIA

8                  LOS ANGELES DIVISION

9

10  In re:                              Chapter 11

                                        BY FAX

11  J.T. THORPE, INC.                   Case No. 02-14216-BB

12      and                            Adversary Case No. 2:12-ap-02182-BB

13  THORPE INSULATION COMPANY,          Case No. 07-18271-BB (Case Closed)

14                                      (Jointly Administered with Case No. 07-200016-BB)
        Debtors.

15                                      Adversary Case No. 2:12-ap-02183-BB

16  ─────────────────────────────       REPLY BRIEF IN SUPPORT OF AMENDED

17  J.T. THORPE SETTLEMENT TRUST        MOTION TO STAY ENFORCEMENT OF
                                        JUDGMENT AND ORDER FOLLOWING TRIAL;
18      and                            EXHIBITS 1-3

19  THORPE INSULATION COMPANY           Date: May 27, 2014
    ASBESTOS SETTLEMENT TRUST,          Time: 2:00 p.m.
20                                      Crtrm: 1475
        Plaintiffs,                     Place: 255 E. Temple St., 14th Floor
21                                             Los Angeles, CA 90012
    v.                                  Judge: Honorable Sheri Bluebond
22
    MICHAEL J. MANDELBROT and THE
23  MANDELBROT LAW FIRM,

24      Defendants.

25  ─────────────────────────────

26  ///

27  ///

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

OVERVIEW ................................................................................................. 1

MANDELBROT HAS ALWAYS ENGAGED IN A PRACTICE OF SUBMITTING
RELIABLE CLAIMS BEFORE THE TRUSTS ................................................. 2

MANDELBROT MEETS ALL REQUIREMENTS FOR A STAY PENDING APPEAL.... 7

   I. Mandelbrot Clearly Demonstrates Likelihood of Success on the Merits ........................ 7

   II. Mandelbrot Can Clearly Show Irreparable Harm ........................................ 10

   III. No Injury to the Trusts and Their Beneficiaries If a Stay Is Issued ............... 11

   IV. The Public Interest Clearly Favors a Stay ............................................. 12

   V. Additional Factors Supporting a Stay ................................................... 13

CONCLUSION ......................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

In re Adelphia Corp., 368 B.R. 140, 284, (Bankr. S.D.N.Y. 2007).............................................. 11


**Statutes**

ABA Formal Opinion 93-371 .......................................................................................... 7

ABA Model Rule 5.6 ...................................................................................................... 7

Business and Professions Code Section 16600 .............................................. 1, 6, 7, 8

California Rule of Professional Conduct 1-500(A) ........................................ 1, 6, 7, 8

**OVERVIEW**

1        Michael J. Mandelbrot is a California attorney who has filed claims for compensation against the
Thorpe and Western Asbestos Settlement Trusts on behalf of thousands of claimants. Mandelbrot has
never filed unreliable or fraudulent claims. The Managing Trustee (specifically Trustee Stephen Snyder)
is a former asbestos defense lawyer who is not a "disinterested" party and has interests adverse to the
Trust and Mandelbrot due to his former work at both Brobeck Phleger & Harrison and Morgan Lewis &
Bockius (counsel in this case). Fiduciaries for the Western, Plant, J.T. Thorpe and Thorpe Insulation
Trusts (the "Trusts") are competitors and former employers of Mandelbrot. In retaliation for Mandelbrot
accusing the Trusts, Trustees and Fiduciaries of corruption, bad faith, and misappropriation of funds, the
Trustees made the wholly unreasonable determination to seek instruction from the Court with regards to
Mandelbrot claims. Mandelbrot had never filed unreliable claims and the clear goals of the Trusts were:
a) maliciously attack the Mandelbrot firm and 'wipe out' dissenters; b) to funnel millions of dollars to the
Trustee's friends at Morgan Lewis and Bockius; c) to continue the concealment of multiple bankruptcy
crimes by the Trusts, Trustees and Fiduciaries. To support their case against Mandelbrot, the Trusts
wholly relied on the perjured testimony and fraud of adverse Trust staff, including Laura Paul, head of
claims processing at the Trusts; Sara Beth Brown, Executive Director at the Trusts, and their former
employee John Lynch. Brown, Paul and Lynch each committed numerous acts of perjury to support the
Trusts' case.

        Prior to trial in the Thorpe cases, the Honorable Thomas Carlson dismissed the Western Asbestos
case against Mandelbrot finding no merit to it.

        On January 23, 2014, the third day of trial with the Thorpe Trusts, a wholly unethical, void, and
unconscionable disputed settlement agreement was negotiated by Mandelbrot's former counsel. Almost
immediately and prior to approval of the void disputed settlement agreement, Mandelbrot rescinded the
disputed settlement agreement on multiple grounds and urged the Court to resume trial. Mandelbrot has
never conceded the validity disputed settlement agreement. Clearly, the settlement is void due to its
illegality and violations of California Business and Professions Code Section 16600 ("Section 16600")
and California Rule of Professional Conduct 1-500(A).The disputed settlement agreement is clearly a
covenant not to compete and restricts Mandelbrot's practice extensively.

1    Prior to 2013, Mandelbrot filed approximately 25% of all claims with the Thorpe Trusts. Other

2    individuals and Law Firms who file claims with Trust include Thorpe Trust Advisory Committee

3    Member and Trust Fiduciary Alan Brayton (who has filed fraudulent claims); Thorpe Trust Advisory

4    Committee Member and Trust Fiduciary David McClain; Thorpe Trust Advisory Committee Member

5    and Trust Fiduciary David Rosen; Thorpe Trust Advisory Committee Member and Trust Fiduciary Jerry

6    Neil Paul; and Thorpe Trust Advisory Committee Member and Trust Fiduciary Peter Kraus (currently

7    being sued for bankruptcy fraud). These individual Trust Fiduciaries file approximately 50% of all Trust

8    claims. These individuals and Trust Fiduciaries are clearly competitors to Mandelbrot and have personally

9    supported the claim against Mandelbrot. Each Trust Advisory Member is clearly not "disinterested" and

10   are competitors to Mandelbrot. Additionally, Brayton and Clapper are former employers of Mandelbrot.

11   The Trustees are clearly adversaries and former 'competitors' from their decade long representation of

12   asbestos defendants.

13       The restriction of Mandelbrot's practice by the disputed settlement agreement is extensive. As a

14   result of the disputed settlement agreement, Mandelbrot will be forced to transfer thousands of Trust

15   claims and can never file Trust claims ever in the future. Are the Trusts really suggesting that this is not a

16   restriction on Mandelbrot's practice of law? A large part of Mandelbrot's practice of law (something

17   known to the Trust) was the filing of Trust claims. For the Trusts to allege the enforcement of the

18   disputed settlement agreement is not a restriction is absurd. Mandelbrot has never engaged in misconduct

19   and clearly would never admit the same. A stay pending appeal must issue given the strength of

20   Mandelbrot's legal argument and the probability of success. Mandelbrot has tendered numerous

21   substantial issues on Appeal, including but not limited to violations of various Ethical and Business and

22   Professions Codes, and lack of jurisdiction. Irreparable harm to claimants and Mandelbrot, and the public

23   interest involved, clearly favor a Stay. The Motion meets all criteria for the issuance of a stay pending

24   appeal and should be granted.

25

26   **MANDELBROT HAS ALWAYS ENGAGED IN A PRACTICE OF SUBMITTING RELIABLE**

27   **CLAIMS BEFORE THE TRUSTS**

28   Prior to December 2011, The Thorpe Trusts had never previously accused Mandelbrot of

1    wrongdoing and never questioned the authenticity and veracity of claims filed by Mandelbrot. Mandelbrot

2    was noted as an "Expert" in the filing of bankruptcy claims and firms from around the Country sent

3    claims to Mandelbrot due to his skill and expertise in claim filing. Nonetheless, after Mandelbrot began

4    accusing the trusts of corruption, bad faith and misappropriation of funds in 2010-2011, the Trusts sued

5    Mandelbrot. To support a case against Mandelbrot, the Trusts relied on the testimony of their former

6    employee John Lynch, someone known to the Western Trust (but unknown to Mandelbrot) as a

7    "pathological liar" and felon, who had also stolen over $20,000 from Western Trust processor Whitney

8    Lauren. Lynch also had just burglarized Mandelbrot's office and stolen and forged checks. This was the

9    Trust's "star" witness against Mandelbrot.

10        Prior to trial in the Thorpe cases, the Honorable Thomas Carlson dismissed the Western Asbestos

11   case against Mandelbrot finding no merit to it. The Honorable Roger Efremsky had presided over the case

12   before recusal (*sua sponte*) due to a very, very minor connection to a potential witness in the case.

13        Identical cases with nearly identical facts existed in the J.T. Thorpe Settlement Trust and the

14   Thorpe Insulation Company Asbestos Trust cases v. Mandelbrot in the U.S. Bankruptcy Court for the

15   Central District of California, Case No. 2:12-ap-02182BB. The Honorable Sheri Bluebond presided over

16   that case.

17        Once the bad faith cases against Mandelbrot were filed by the Western and Thorpe Trusts, the

18   Trust sent a letter dated May 24, 2013, with a 'finding' that Mandelbrot was unreliable. The May letter

19   wholly misrepresented facts and was prepared by the Trust through fraud. The May 24, 2013 letter was

20   supported by a "study" of Mandelbrot claims which was a complete fraud with a false and misleading

21   study of Mandelbrot claims done to achieve the results the Trust desired. The control groups used for the

22   'study' of Mandelbrot claims (deficient claims of Mandelbrot v. deficient claims of other firms) were not

23   randomly selected and as many "hold or deferred" claims of other firms are deemed "deficient claims,"

24   the study was a fraud. The study to support the May 24, 2013 letter against Mandelbrot and the entire

25   Thorpe case against Mandelbrot was a complete fraud and defamation and clearly designed to harm

26   beneficiaries and to continue concealment and cover up of fraud by the Trust and its fiduciaries.

27        The case proceeded to trial before the Honorable Sheri Bluebond on January 21, 2014. Lawyers

28   for the Thorpe Trusts were Stutman, Treister and Glatt (along with Morgan). Prior to trial, neither

1  Bluebond nor Stutman revealed a "close and intimate connection" between Bluebond and Stutman.

2  Bluebond and Stutman simultaneously served on the Board of Directors of five different organizations,

3  Stutman was actively campaigning for Judge Bluebond's reappointment in 2015, and Bluebond was

4  serving as a public speaker at Stutman-sponsored fundraising events during the litigation. Recusal was

5  appropriate due to the Honorable Bluebond's bias, prejudice, and close and intimate connection with the

6  Stutman firm. However, the above facts were only discovered by Mandelbrot on March 29, 2014. Neither

7  Stutman nor Bluebond have ever acknowledged the same. Unlike the Honorable Roger Efremsky who

8  recused himself (for a very minor connection to the case), Judge Bluebond did not.

9      During trial Judge Bluebond made every ruling for her friends (Stutman), was rude to litigants

10  (Mandelbrot) and literally "invented" facts in an effort to make Mandelbrot look unreliable and assist the

11  Thorpe/Stutman case. See *Tentative Ruling from Judge Sheri Bluebond, March 25, 2014 containing*

12  *perjury and displaying close relationship to Trust lawyers (Stutman), Docket 228.*

13      In this tentative ruling, Bluebond states (also read into the Record) that "Mandelbrot had a

14  practice of submitting a claim for as large as possible …." This was materially false and clearly showed a

15  bias towards Stutman, and as a result, the Trusts. The practice of submitting a claim for as large as

16  possible was never an allegation against Mandelbrot and/or the Mandelbrot office, was never presented in

17  evidence by the trusts, was materially false, and clearly showed a judicial bias in favor of Stutman and the

18  Trusts. In fact, the critical jobsite in the entire Trust's case relating to "disembarkment" was the Long

19  Beach Naval Shipyard, a LOW value site.

20      Additional evidence at trial showed there were never irregularities in Mandelbrot's submissions,

21  but instead that the Trusts used Trust Processors with clear adverse interests to Mandelbrot (Paul,

22  LaGrave, Lauren) to 'create' deficiencies on Mandelbrot claims. In addition, the Trust never followed the

23  FIFO queue, failed to pay Mandelbrot claims the "Minimum Value" required by the Trust Documents,

24  failed to treat Mandelbrot claims similar to those Trust Advisory Committee members and consistently

25  made "retroactive" changes to the Trust (amendments).

26      Prior to December 2011, Mandelbrot filed approximately 20 deficient claims with the J.T. Thorpe,

27  Inc. Trust indicating that Navy sailors who leave their ships during ship overhauls would "chip refractory"

28  in the shipyard. After both consulting with the Trust Executive Director and Trust staff and realizing that

1   the claims were deficient, Mandelbrot withdrew each of these claims prior to December 20, 2011. An

2   example of an e-mail exchanged with the Trust regarding these claims is as follows:

3   **From:** Michael R Dunning [mailto:dunning@asbestoslegalcenter.org]
    **Sent:** Friday, July 08, 2011 1:40 PM

4   **To:** Laura Paul
    **Subject:** TIST claim #506, Harrison Graham

5
6   Hi Laura,

7   Could you please take a look at the deficiency for TIST claim #506, Harrison Graham. The deficiency
    says the claimant must be on board the ship to qualify. First of all, we're not claiming any exposure on the

8   ship. The site is the shipyard as outlined in the interrogatories and claim form. Secondly, this implies that
    ship based claims are acceptable for Thorpe which we know is not true. If you could let me know your

9   thoughts I would appreciate it.

10  Thanks
11  Michael

12

13  **From:** Whitney Lauren [mailto:wlauren@wastrust.com]
14  **Sent:** Wednesday, July 13, 2011 10:40 AM
    **To:** Michael R Dunning

15  **Cc:** Laura Paul
    **Subject:** TIST claim #506, Harrison Graham

16
17  Hi,

18  We reviewed this claim and the duration is not clear.  Would you clarify how long claimant was
    disembarked and working at Long Beach?

19
20  Thank you,
    Whitney Lauren

21  Western Asbestos & J.T. Thorpe Settlement Trusts
    wlauren@wastrust.com        775.325.6205

22

23       Despite Mandelbrot's good faith in withdrawing each of the claims (long prior to the lawsuit), the

24  Trust's lawsuit began focusing on alleging these claims were fraud (the so called "disembarkment

25  claims"). The clear issue at trial became "whether or not Navy sailors are exposed in Navy Shipyards

26  during overhauls." The clear answer was, "Yes." Mandelbrot submitted Declarations and testimony from

27  Captain F.J. Burger, USN, (Ret.), and Navy sailor Paul Genthner supporting the same.

28

1    On January 23, 2014, Mandelbrot's former counsel negotiated a void, wholly unethical,

2    unconscionable and unenforceable settlement agreement involving not only the Thorpe Trusts, but also

3    the Western Asbestos Company Settlement Trust and the Plant Insulation Settlement Trust. Mandelbrot

4    "reluctantly" agreed on the record despite never having seen the agreement, never being given the

5    opportunity to review and fully understanding the terms of the agreement, and being under considerable

6    duress.

7    The settlement involved not just the Thorpe Trusts, but also the Western Asbestos Company

8    Settlement Trust and the Plant Insulation Trust, two Trusts that Judge Bluebond clearly had no

9    jurisdiction over.

10    On January 27, 2014, Mandelbrot terminated his relationship with his counsel and notified the

11    Thorpe Trusts that the settlement agreement was rescinded, unethical, void and unenforceable.

12    Additionally, the settlement agreement far exceeded the damages prayed for in the Complaint. In addition,

13    Bankruptcy Rule 9019 requires Chapter 11 Trustees to obtain Court approval for such compromises and

14    settlements. The Trustee must show that the settlement is in the best interest of the estate and that the

15    compromise and settlement has been properly served upon creditors so they have an opportunity to review

16    the proposed settlement and object. The Honorable Thomas Carlson has never approved the settlement

17    involving the Western Asbestos Settlement Trust and Plant Insulation Trust despite having exclusive

18    jurisdiction over the Trusts. The disputed settlement is clearly not in the best interest of those Trusts.

19    However, utilizing the close and personal relationship with the Honorable Sheri Bluebond, the Trusts

20    sought enforcement of the invalid January 23, 2014 settlement agreement involving all four Trusts.

21    Despite a vociferous verbal and lengthy written objection by Mandelbrot and a substantial

22    showing of Trust fraud and perjury by the Western Asbestos Settlement Trust and its lawyers, the

23    Honorable Sheri Bluebond ordered enforcement of the January 23, 2014 "agreement." Bluebond's Order

24    effectively terminated and irreparably harmed Mandelbrot's claim filing privileges with the Western

25    Asbestos, Thorpe Insulation, Plant Insulation, and J.T. Thorpe, Inc. Settlement Trusts.

26    The Honorable Thomas Carlson has never approved the settlement as required by Bankruptcy

27    Rule 9019. Mandelbrot has filed a timely Appeal to Judge Sheri Bluebond's Order and "Judgment" citing

28    fraud, lack of jurisdiction, and that the settlement is void and unethical under California law and the

1    Business and Professions Code.

## MANDELBROT MEETS ALL REQUIREMENTS FOR A STAY PENDING APPEAL

### I

### Mandelbrot Clearly Demonstrates Likelihood of Success on the Merits

The disputed settlement agreement barring Mandelbrot from representing claimants before the Trusts, the Western Trust and the Plant Trust clearly violates California Business & Professions Code 16600 and California Rule of Professional Conduct 1-500(A) and is not enforceable. The Trusts Opposition initially focuses on "competition" and their argument has no merit. Clearly, the Trusts and its Fiduciaries are in competition with Mandelbrot. Fiduciaries of the Thorpe and Western Trust include numerous Plaintiff Lawyers who are in direct competition with Mandelbrot. These Trust Fiduciaries (Trust Advisory Committee Members) include but are not limited to: Alan Brayton (Chairman), David McClain, David Rosen, Jack Clapper, Mike Polk and Jerry Neil Paul. Each of these Trust Fiduciaries is competitors directly with Mandelbrot to retain clients, to file claims with the Trusts, and to engage in the lawful profession of representing victims of asbestos related diseases as a plaintiff's attorney. Mandelbrot is a former employee of Alan Brayton and Jack Clapper.

California Business & Professions Code Section 16600 provides that "every contract (settlement agreement) by which anyone is **restrained from engaging** in a lawful profession, or business of any kind is to that extent **void**." (Emphasis added). Clearly, the disputed settlement agreement restrains Mandelbrot from engaging in his lawful practice as an attorney representing victims of asbestos diseases. Ninety percent of California victims of asbestos diseases have claims with the Thorpe, Western and Plant Trusts. If the disputed settlement is enforced, Mandelbrot can no longer compete with the Trust Fiduciaries to engage in his lawful practice of representing these potential clients (asbestos disease victims in California) and in filing claims with the Trusts and is restrained. By attempting to enforce the settlement agreement, the Trusts are clearly enforcing a non-competition covenant against Mandelbrot and in favor of Trust Fiduciaries. If a stay is not granted, Mandelbrot will no longer be able to compete with Trust Fiduciaries to represent clients, file claims, and represent victims of asbestos-related diseases.

1    As additional evidence of 'competition' between Mandelbrot and members of Trust Advisory

2 Committee, it should also be clearly noted that the Trust Advisory Committee attorney Steven Sacks

3 testified against Mandelbrot and committed malicious acts of perjury to protect the fraud and corrupt acts

4 of Chairman and Mandelbrot competitor Alan Brayton. Sacks was the attorney for the Trust Advisory

5 Committee who are all plaintiff lawyer competitors of Mandelbrot.

6    Next, Mandelbrot has never engaged in misconduct and his reputation was superb prior to this

7 malicious and retaliatory prosecution in bad faith by the Trusts. The disputed settlement agreement

8 completely restricts "open competition" and "mobility" of Mandelbrot and violates Section 16600.

9    The Trust's argument that B&P §16600 is solely limited to employees is wholly misguided.

10 Nothing in B&P §16600 makes this restriction or distinction. Notwithstanding, Mandelbrot is a former

11 employee and current competitor of Trust Fiduciaries Alan Brayton (1994-1999) and Jack Clapper (1999-

12 2003). Mandelbrot is also a competitor (adversary in asbestos cases) with Managing Trustee Stephen

13 Snyder, attorney for the Futures Representative Gary Fergus and various Trust Professionals and staff.

14    Similarly, California Rule of Professional Conduct 1-500(A) is entirely applicable to these facts.

15 California Rule of Professional Conduct 1-500(A) provides that a member shall not be a party to or

16 participate in offering or making an agreement whether in connection with the settlement of a lawsuit

17 which restricts the right of a member to practice law. Similarly, ABA Model Rule 5.6 provides that a

18 lawyer shall not participate in an agreement in which a restriction on the lawyer's right to practice is part

19 of the settlement.  If the disputed settlement is enforced, clearly Mandelbrot's right to practice law in the

20 field of asbestos litigation is entirely restricted. Mandelbrot can no longer retain victims of asbestos

21 diseases or engage in his lawful practice of submitting claims to asbestos trusts.

22    As noted in the Trust's opposition, this settlement is "out-of-bounds" per ABA Formal Opinion

23 93-371. Permitting such agreements restricts the access of the public to lawyers who, but virtue of their

24 background and experience might be the very best available talent to represent these individuals.

25 Mandelbrot is clearly the "best available" and an incredibly qualified attorney by virtue of his experience

26 and background with Trusts to represent victims of asbestos diseases with these Trusts. **See Exhibit 1,**

27 ***Declaration of Roni Levine in support of Motion to Stay*; See Exhibit 2, *Declaration of Richard***

28 ***Travers in support of Motion to Stay.*** Clients and claimants want Mandelbrot as their attorney. However,

1   if a Stay is not granted, Mandelbrot will be forced to give up representation of over a thousand Claimants

2   despite a strong countervailing policy favoring the public's right to an unfettered choice of counsel.

3        The Trusts' argument that the disputed settlement agreement "does not involve a settlement

4   between two parties that restricts the practice of one of their lawyers" is absurd. Mandelbrot is clearly and

5   entirely restricted from engaging in his lawful profession of representing victims of asbestos diseases. The

6   public is denied the services of a lawyer who has successfully prosecuted similar claims (hundreds)

7   against a particular Trust in the past. Clearly, Mandelbrot is restricted.

8        Additional attempts to mislead the Court are apparent in the Trust's opposition. For example, the

9   precise issue in dispute was not whether Mandelbrot should be permanently barred or restricted from

10   filing Trusts claims (as the Trust alleges in their Opposition), but for Declaratory Relief in authorizing the

11   Trust's investigation after Mandelbrot threatened to sue to the Trusts. Clearly, the settlement included

12   conditions extraneous to the merits of the case, the inclusion of the Western and the Plant Trust in the

13   settlement agreement and the overall restriction of Mandelbrot's right to practice in asbestos litigation.

14        Moreover, the Trust's argument that Mandelbrot's clients are not parties to the settlement is also

15   absurd. *Id.* **(Levine and Travers Declarations).** The enforcement of the settlement agreement would

16   require every Mandelbrot claimant to find a new attorney despite each wanting Mandelbrot to serve as

17   counsel.

18        Contrary to the Trust's argument, all authority (including cases cited by the Trusts) clearly

19   indicate violations California Business and Professions Code §16600 and California Rule of Professional

20   Conduct 1-500 (A) in the negotiation and enforcement of the disputed settlement agreement.

21   Mandelbrot's practice of law is entirely restricted. There is substantial harm to the public. Mandelbrot and

22   Mandelbrot clients are irreparably harmed.

23        In addition, Mandelbrot's argument is not a collateral attack on the TDP's approved by this Court

24   as section 5.7(a) has never been applied in such an illegal and improper manner in the past. Mandelbrot's

25   office was not even formed at the time of Chapter 11 confirmation. The attack on 5.7(a) is timely raised

26   since this case with Mandelbrot is the first time the Trust has ever applied this provision.

27        Unquestionably, the disputed settlement violates public policy of the State of California as

28   embodied in California Business & Professions Code Section 16600 and California Rule of Professional

1    Conduct 1-500(A) by unethically restricting Mandelbrot's lawful practice of law and prohibiting

2    competition with Trust Fiduciaries.

3    //

## II

### Mandelbrot Can Clearly Show Irreparable Harm

Mandelbrot has made a clear showing of "Irreparable Harm" to his office and his clients. Clearly, if a Stay is not granted, the harm to Mandelbrot will be irreparable. First, Mandelbrot will lose clients by being forced to transfer claims. Mandelbrot's reputation and goodwill will be irreparable harmed (defamatory trust notices and improper communications with Mandelbrot's co-counsel have already begun accomplishing that). **See Exhibit 3, E-Mail from Laura Paul indicating improper communications with attorneys, violations of the Court Order, and irreparable harm to Mandelbrot.**

Moreover, Mandelbrot will suffer irreparable harm in the loss of hundreds of thousands of dollars in filing fees if forced to transfer claims. Mandelbrot has at least 800 claims pending with the Trusts and Mandelbrot paid a $250.00 filing fee for each. If a Stay is not granted, Mandelbrot will lose over $200,000 in filing fees which can never be recovered if a Stay is not granted. This is further irreparable harm to Mandelbrot.

Further, the holders of valid claims now represented by Mandelbrot will be severely prejudiced if forced to retain new counsel. Each of the claims previously sent to Mandelbrot (by Law Firms from around the Country) and/or filed by Mandelbrot with the Trusts was specifically sent to Mandelbrot because of his expertise, skill and background in filing claims. The Firms, attorneys and especially the Mandelbrot Claimants <u>wanted</u> Mandelbrot as their counsel for Trust claim filing because of their personal inexperience at litigating against and filing claims with the Trusts. Mandelbrot has over 20 years of experience. Clearly, forcing clients and counsel to find new and inexperienced counsel if the Stay is not granted, would cause further irreparable harm to Mandelbrot's clients and overall office.

Finally, and most importantly, if the Stay is not granted, Mandelbrot will suffer irreparable harm in that he will never be able to file and another claim with the Trusts. Mandelbrot's practice of law was

1   built around representing victims of asbestos diseases and filing Trust claims with the Trusts. If he is

2   never allowed to file another claim, the harm would clearly be extensive.

3        The wholly misguided implication by the Trusts that there would be no irreparable injury to

4   Mandelbrot is absurd.

### III

### No Injury to the Trusts and Their Beneficiaries If a Stay Is Issued

7        The issuance of a Stay would clearly benefit the Trusts, and the beneficiaries, the individual

8   asbestos claimants. Simple facts are clearly ignored by the Trusts in their argument. First, the transferring

9   of thousands of claims is clearly a "logistical nightmare" for the beneficiaries, especially given the FTP

10  site outage for over 100 days and the prospect of having to work with dozens of new and inexperienced

11  counsel. Of these thousands of claims Mandelbrot is being forced to transfer, some have already been

12  paid, some are pending, some are deficient, some have Releases outstanding and some are deferred

13  claims. While the Trusts have already committed extensive fraud in reviewing these (many valid) claims,

14  the transferring of these claims to inexperienced counsel due to the Court Order would clearly cause

15  injury to the beneficiaries. All claims will have to be re-filed. Claims and payments will be delayed due to

16  dealings with inexperienced counsel. Transfers of files and claims would have to be in "hard copy"

17  (hundreds of thousands of pages) due to the FTP site outage causing further delays. Many new firms will

18  have to "register" for the Trust causing further delays. Transferee firms will no longer be able to review

19  any previously filed claims.

20

21        Further supporting a Stay, the Trusts have not pointed to one pending claim that is unreliable or

22  invalid from Mandelbrot. And if the Trusts find a pending Mandelbrot claim deficient, they can simply

23  issue a deficiency. Clearly, a Stay is beneficial.

24        A Stay and removal from the Trust websites of defamatory Notices also clearly *benefits* the Trust.

25  The benefits to the Trusts are as follows:  No transfers will need to be made; Claims can be reviewed "as

26  is"; The beneficiaries of the Trust can have their claims reviewed approximately one year sooner; The

27  Trusts won't have to deal with inexperienced Counsel; Beneficiaries get the counsel of their choice; and

28  there is less likelihood of future litigation initiated by Mandelbrot related to fraud, bad faith, corruption

1    and defamation.

2    Clearly, the Trust's arguments here ("conflicting instructions") has no merit and the Trusts offer

3    no authority to support the meritless argument. The benefits to the Trust if a Stay is granted are

4    substantial. The harm to the Trust and Beneficiaries if a Stay is not granted is far outweighed by the

5    benefits of a Stay to the Trust and Beneficiaries.

6    //

7

8                                    **IV**

9                    **The Public Interest Clearly Favors a Stay**

10   Mandelbrot has clearly shown that the issuance of a Stay serves the Public Interest. As the Trusts

11   have noted, "The public interest requires bankruptcy courts to consider the good of the case as a whole…

12   [T]he public interest cannot tolerate any scenario under which private agendas can thwart the maximum

13   of valuation for all." In re Adelphia Corp., 368 B.R. 140, 284, (Bankr. S.D.N.Y. 2007).

14   Mandelbrot clearly has no private agenda but the Trustees (Stephen Snyder) and Trust Fiduciaries

15   (Alan Brayton, David McClain) on multiple Trusts clearly have private agendas which thwart the

16   maximum valuation for all. Each Trustee and Fiduciary has already committed substantial criminal

17   bankruptcy fraud in the Kananian matter and have concealed the criminal conduct for nearly a decade.

18   The entire case against Mandelbrot was 'driven' by the private agendas of Sndyer, Brayton and McClain

19   to thwart the "maximum value for all (claimants)" and to misappropriate funds to themselves

20   (individually) and their clients. Each has interests adverse to the Trusts and Mandelbrot and each has

21   committed and attempted to conceal criminal bankruptcy fraud. Clearly, the denial of the Stay would only

22   perpetuate this criminal conduct of Trustees and Trust Fiduciaries and harm the public.

23   Moreover, the "good of the case as a whole" clearly favors the granting of the Stay. The Public is

24   clearly better served by keeping the status quo and not being forced to: 1) re-file their already valid

25   claims; 2) choose new counsel; 3) wait another year for claims to be reviewed; 4) transfer claims that have

26   already passed; 5) no longer have Mandelbrot as their attorney and 6) have inexperienced counsel

27   handling their claims.

28                                    **V**

1

**Additional Factors Supporting a Stay**

2

3      In addition to the above, this Court clearly had no jurisdiction over the Western Trust and the

4  Plant Trust (raised on Appeal) and no authority to enforce a settlement relating to those Trusts (also raised

5  on Appeal). The Judge with exclusive jurisdiction over those Trusts and to approve settlements in those

6  Trusts is the Honorable Judge Thomas Carlson, not Judge Bluebond. A Stay must be granted to resolve

7  these issues so that claimants are not irreparably harmed.

8      Furthermore, since approximately February 1, 2014, the FTP of every Trust has been taken offline

9  by the Trusts. As a result, Mandelbrot can no longer review any passed or filed claims, cannot determine

10  the spot in FIFO, cannot see reviewers' notes and cannot competently and intelligently transfer claims.

11  The irreparable harm to Mandelbrot, the beneficiaries and any transferee firms is clearly substantial due to

12  this FTP Trust site outage. This clearly causes Mandelbrot and the public irreparable harm. In Annual

13  Reports, the Trust has indicated that an attempt was made by someone to file "one false claim" and this

14  justified the removing of ten years of claims, claim data and other necessary information on previously

15  filed and pending claims. It is widely believed that that FTP website outage is an additional attempt by the

16  Trusts to conceal criminal fraud (by Trustees and Fiduciaries), bad faith and the misappropriation of the

17  funds by the same. As an additional factor supporting the Stay, Mandelbrot notes the irreparable harm to

18  Mandelbrot, claimants, and transferee Law Firms by the Trusts' FTP site outage. This factor clearly

19  supports a Stay.

20

21

22                                    **CONCLUSION**

23      For the reasons set forth herein, this Court should issue a stay pending appeal.

24

25  Dated: May 20, 2014                          /s/ _M. Mon_

26                                              MICHAEL J. MANDELBROT
                                                Attorney for Beneficiaries
27

28

# EXHIBIT 1

**Declaration of Roni Levine in Support of Motion to Stay**

05/01/2014 THU 12:47  FAX 310 750 1104                                    ☒001/002

May, 01, 2014

I, Rhonda Levine, declare the following to be true and correct:

I am currently a client of the Mandelbrot Law Firm and have been a client of the Mandelbrot Law Firm since 2009.

My father Donald Levine died of Mesothelioma on September 8, 2009. He was exposed to asbestos at shipyards in New York, San Francisco and at various construction projects in the San Francisco Bay Area.

The Mandelbrot Law Firm has handled all bankruptcy claims on my behalf, including a claim and settlement from the Western Asbestos Settlement Trust due to my father's work at Bethlehem Shipyard, San Francisco. I am the beneficiary of that claim.

In addition, the Mandelbrot Law Firm is responsible for the handling of all future bankruptcy claims on my behalf, including of claims with the Plant Insulation Settlement Trust.

I recently learned that the Mandelbrot Law Firm may be forced to transfer my past claim with the Western Asbestos Settlement Trust and my future claim with the Plant Insulation Trust to another attorney by July 23, 2014. If the Mandelbrot is forced to transfer these past and future claims on my behalf, it will cause me irreparable harm. I want Michael Mandelbrot and the Mandelbrot Law Firm to be my attorney for claims.

First off, I will face irreparable harm in that I will be forced to find a new attorney my asbestos claims. I do not want to find a new attorney. I want Michael Mandelbrot and the Mandelbrot Law Firm to handle all claims on my behalf. The Mandelbrot Law Firm has always been honest, trustworthy, communicative and thorough in the handling of my claims. In addition, I know the Mandelbrot Law Firm knows the extensive liability of these companies (including Plant Insulation) and, I believe, is the best firm to handle these claims. If Mandelbrot is forced to withdraw from these claims, I will suffer irreparable harm in being forced to find a new attorney.

Since the passing of my father, I no longer live in the area and do not know any other asbestos attorneys skilled at bankruptcy claims like the Mandelbrot Law Firm and Michael Mandelbrot. Mr. Mandelbrot personally met with my father while he was alive and nobody knows my case and my bankruptcy claims like the Mandelbrot Law Firm. I absolutely want all claims to remain with the Mandelbrot Law Firm.

Next, if Mandelbrot is forced to transfer my claims, I will face irreparable harm in not knowing whether future recoveries that I am entitled to will ever be paid. My substantial Western Asbestos Settlement Trust settlement may be increased in the near future. I want to know that these monies will be paid to me. I know claims will be paid if the claims remain with the Mandelbrot Law Firm. I trust the Mandelbrot Law Firm and want the claims to remain with them.

Next, if Mandelbrot is forced to transfer my claims, I will face irreparable harm in the delays in the filing and processing of my claims. I recently learned that if Mandelbrot is forced to transfer claims, all claims on my behalf will need to be re-filed. This will cause a delay of nearly a year before my claim is

processed. During that year delay, witnesses who worked with my father will pass away, evidence could be destroyed and the amount of money I receive (the payment percentage) could decrease. As a result, if Mandelbrot is forced to transfer claims, these delays will cause irreparable harm.

Signed under the penalty of perjury under the laws in the State of California.

Rhonda Levine

# EXHIBIT 2

**Declaration of Richard Travers in Support of Motion to Stay**

I, Richard Travers, declare the following to be true and correct:

I am currently a client of the Mandelbrot Law Firm and have been a client of the Mandelbrot Law Firm since September 2013. I was diagnosed with lung cancer caused by exposure to asbestos in March 2013. I was born on March 19, 1947 and am currently 67 years old.

I was exposed to asbestos at multiple locations during my lifetime, including but not limited to: Multiple Navy Ships and Shipyards, Vehicle and truck repair facilities, hospitals, various Government facilities, and my family home.

The Mandelbrot Law Firm has handled all bankruptcy claims on my behalf, including a pending valid claim with the Western Asbestos Trust.

In addition, the Mandelbrot Law Firm is responsible for the handling of all future bankruptcy claims on my behalf, including a claim with the Plant Insulation Settlement Trust.

I recently learned that the Mandelbrot Law Firm may be forced to transfer my past claim with the Western Asbestos Settlement Trust and my future claims with the Plant Insulation Trust to another attorney by July 23, 2014. If the Mandelbrot is forced to transfer these past and future claims on my behalf, it will cause me irreparable harm. I want Michael Mandelbrot and the Mandelbrot Law Firm to be my attorney for bankruptcy claims.

First off, I will face irreparable harm in that I will be forced to find a new attorney for my asbestos claims. I do not want to find a new attorney. I want Michael Mandelbrot and the Mandelbrot Law Firm to handle all claims on my behalf. The Mandelbrot Law Firm has always been honest, trustworthy, communicative and thorough in the handling of my claims. In addition, I know the Mandelbrot Law Firm knows the extensive liability of these companies (including Plant Insulation) and, I believe, is the best firm to handle these claims. If Mandelbrot is forced to withdraw from these claims, I will suffer irreparable harm in being forced to find a new attorney.

In addition, I do not know any other asbestos attorneys skilled at bankruptcy claims like the Mandelbrot Law Firm and Michael Mandelbrot. Mr. Mandelbrot personally spoke with me extensively about my asbestos exposure history and nobody knows my case and my bankruptcy claims like the Mandelbrot Law Firm. I absolutely want all claims to remain with the Mandelbrot Law Firm.

Next, if Mandelbrot is forced to transfer my claims, I will face irreparable harm in my 3rd party case against solvent asbestos defendants. I hired Mandelbrot to file my valuable 3rd party case and do not want to hire another attorney to handle my case. If Mandelbrot is forced to transfer my Western claim by July 23, 2014, I will also be forced to find a new attorney for my 3rd party action. This will cause extensive delays and irreparable harm to my 3rd party case. In addition, due to my lung cancer, these delays will cause irreparable harm in that I may not ever see my asbestos case ever make it to trial due to my lung cancer.

Next, if Mandelbrot is forced to transfer my claims, I will face irreparable harm in the delays in the filing and processing of my bankruptcy claims. I recently learned that if Mandelbrot is forced to transfer

claims, all bankruptcy claims filed on my behalf will need to be re-filed. This will cause a delay of nearly a year before my claim is processed. During that year delay, witnesses who worked with me will pass away, evidence could be destroyed and the amount of money I receive (the payment percentage) could decrease. As a result, if Mandelbrot is forced to transfer claims, these delays will cause irreparable harm.

Signed under the penalty of perjury under the laws in the State of California.

Richard Travers

# EXHIBIT 3

**Unethical and improper communications by Laura Paul with counsel in violation of Court
Order**

----- Forwarded Message -----
**From:** Laura Paul <lpaul@524qtrust.com>
**To:** Diana Linde <Diana@bergmanlegal.com>
**Cc:** Sam Asher <sam@bergmanlegal.com>; Glenn Draper <Glenn@bergmanlegal.com>; "Mike
Mandelbrot (dunning@asbestoslegalcenter.org)" <dunning@asbestoslegalcenter.org>;
"mandelbrot@asbestoslegalcenter.org" <mandelbrot@asbestoslegalcenter.org>;
"bpsmith@morganlewis.com" <bpsmith@morganlewis.com>; Jeanine Donohue
<jdonohue@524qtrust.com>
**Sent:** Thursday, May 8, 2014 11:48 AM
**Subject:** RE: Mandlebrot Claims

Hi Diana,

The Trust will transfer the following paid claims to your firm pursuant to your spreadsheet which
includes, 8 Western claims, and 7 JT Thorpe claims.

The 7 pending claims for Western, and 37 for JT Thorpe will be withdrawn and your firm will
need to resubmit the claim packet in its entirety.

If you have any questions please feel free to contact me.

Thanks

Laura Paul
Claims Manager

**From:** Diana Linde [mailto:Diana@bergmanlegal.com]
**Sent:** Wednesday, May 07, 2014 4:14 PM
**To:** Laura Paul
**Cc:** Sam Asher; Glenn Draper; Mike Mandelbrot (dunning@asbestoslegalcenter.org);
mandelbrot@asbestoslegalcenter.org
**Subject:** Mandlebrot Claims

Laura,

Attached please find two letters from Glenn S. Draper in regards to Mandelbrot claims filed with
J.T. Thorpe Settlement Trust and Western Asbestos Settlement Trust. Please let me know if you
have any questions.

**Diana Linde**
Paralegal

**Bergman Draper Ladenburg**
614 1st Ave, 4th Floor
Seattle, WA 98104
P: (206) 957-9510
F: (206) 957-9549

www.bergmanlegal.com
Confidential Communication/Attorney-Client Privileged. This e-mail is sent by a law firm and may contain information that is PRIVILEGED or
CONFIDENTIAL. If you are not the intended recipient, please delete the e-mail and any attachments and notify our office immediately. Thank
you.

----- Forwarded Message -----
**From:** Elizabeth V. Heller <elizabeth@ghalaw.com>
**To:** 'Laura Paul' <lpaul@wastrust.com>; '''lpaul@524gtrust.com''' <lpaul@524gtrust.com>
**Cc:** 'Martha Berman' <MarthaBerman.Esq@gmail.com>; 'Andrew Kostick'
<andrew@asbestoslegalcenter.org>; ''mandelbrot@asbestoslegalcenter.org''
<mandelbrot@asbestoslegalcenter.org>
**Sent:** Thursday, May 8, 2014 11:25 AM
**Subject:** Transfer of Claims

**From:** Elizabeth V. Heller
**Sent:** Thursday, May 08, 2014 12:14 PM
**To:** 'Laura Paul'; 'lpaul@524gtrust.com'
**Cc:** Martha Berman; 'Andrew Kostick'
**Subject:** Transfer of Claims

Dear Laura:

Per our conversation this morning, this is to confirm that we have asked attorney Martha Berman assist us
with the handling of the "pending" claims on the attached charts.  Please forward any future
correspondence or information related to "paid" claims to my attention.  If you have any questions or
need any additional information, please do not hesitate to call me.  Thanks for your cooperation.  Liz

Elizabeth V. Heller
**Goldenberg Heller Antognoli & Rowland, P.C.**
2227 South State Route 157
Edwardsville, IL  62025
Telephone:   (618) 656-5150
Facsimile:   (618) 656-6230
E-Mail:       elizabeth@ghalaw.com

 **GOLDENBERG HELLER
ANTOGNOLI & ROWLAND,** P.C.

**ATTORNEYS AT LAW**

----- Forwarded Message -----
From: Laura Paul <lpaul@524gtrust.com>
To: Kendra Levrault <KLevrault@tenlaw.com>
Cc: "Michael Mandelbrot (mandelbrot@asbestoslegalcenter.org)"
<mandelbrot@asbestoslegalcenter.org>; Janine Lovuolo <JLovuolo@tenlaw.com>; Garrett Bradley
<GBradley@tenlaw.com>; Jeanine Donohue <jdonohue@524gtrust.com>; "bpsmith@morganlewis.com"
<bpsmith@morganlewis.com>
Sent: Thursday, May 8, 2014 11:36 AM
Subject: RE: Thornton & Naumes Claims Inventory

Hi Kendra,

The Trust will transfer the following paid claims to your firm pursuant to your spreadsheet which
includes, 76 Western claims, 178 JT Thorpe claims, and 1 Thorpe Insulation claim.

The 13 pending claims for Western, JT Thorpe, and Thorpe Insulation will be withdrawn and
your firm will need to resubmit the claim packet in its entirety.

If you have any questions please feel free to contact me.

Thanks

Laura Paul
Claims Manager


From: Kendra Levrault [mailto:KLevrault@tenlaw.com]
Sent: Wednesday, May 07, 2014 9:16 AM
To: Laura Paul
Cc: Michael Mandelbrot (mandelbrot@asbestoslegalcenter.org); Janine Lovuolo; Garrett Bradley
Subject: Thornton & Naumes Claims Inventory

Laura,

Per your conversation with Garrett Bradley, below are four links to spreadsheets containing what
we believe to be the inventory of our claims within Western, J.T. Thorpe and Thorpe
Insulation. Password to follow.

We are requesting your confirmation on the below inventory, as well as the transfer of these
claims back to our office. If possible, I would also like to request the contact information of a
claims reviewer that could assist us with questions. I have extensively reviewed the criteria
outlined on the websites, but want to make every effort to assure we are filing the most qualified
claims, as well as qualified documents and information. If we could set up a call, that would
probably prove to be the most helpful.


76 Western Paid Claims
https://tenlaw.box.com/s/pxoiur4i2ojtnej0nul5

178 J.T. Thorpe Paid Claims
https://tenlaw.box.com/s/qs4n7xazgr9sha6cyagr

1 Thorpe Insulation Claim
https://tenlaw.box.com/s/2hx08k24vrza10hbmtia

13 Pending Western/J.T. Thorpe/Thorpe Insulation Claims per Mandelbrot
https://tenlaw.box.com/s/01iz0o6zo41azwfrm9pv

We appreciate your help on this matter.

**Kendra L. Levrault** | **Thornton and Naumes, LLP**
Director of Revenue

100 Summer Street, 30th Floor | Boston, MA  02110

Phone: (617) 720-1333 | Fax: (617) 720-2445

**Please consider the environment before printing this email**

This e-mail and any files transmitted with it are confidential and are intended solely for the use of the individual or entity to whom they are addressed. This communication may contain material protected by the attorney-client privilege. If you are not the intended recipient or the person responsible for delivering the e-mail to the intended recipient, be advised that you have received this e-mail in error and that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you have received this e-mail in error; please immediately notify us by telephone at (800) 431-4600. You will be reimbursed for reasonable costs incurred in notifying us.

1

## CERTIFICATE OF SERVICE

2

     Pursuant to FRCP 5(b), I hereby certify that I am an employee of Mandelbrot Law

3

Firmand that on this date I served a true and correct copy of the herein document by (X) EFiling

Notification by ( ) fax transmission with confirmation of receipt or ( ) depositing addressed

4

sealed envelopes with U.S. first-class postage, in the U.S. Mail, at Novato, California, and

addressed as follows:

5

EVE H. KARASIK (Cal. Bar No. 155356)    MICHAEL MOLLAND (Cal. Bar No. 111830)

GABRIEL I. GLAZER (Cal. Bar No. 246384)  MOLLAND LAW

6

STUTMAN TREISTER & GLATT        30 Fifth Street

PROFESSIONAL CORPORATION       Petaluma, CA 94952

7

1901 Avenue of the Stars, 12th Floor     mmolland@mollandlaw.com

Los Angeles, California 90067        Telephone: (707) 202-5511

8

Telephone: (310) 228-5600          Facsimile: (707) 202-5513

Facsimile: (310) 228-5788

9

10

BENJAMIN P. SMITH (Cal. Bar No. 197551)

MORGAN, LEWIS & BOCKIUS LLP

One Market

11

Spear Street Tower

San Francisco, California 94105

12

Telephone: (415) 442-1000

Facsimile: (415) 442-1001

13

Attorneys for the J.T. Thorpe Settlement Trust

14

and Thorpe Insulation Company

Asbestos Settlement Trust

15

16

Gary S. Fergus

17

Fergus, a law office

18

595 Market Street, Suite 2430

San Francisco, California  94105

19

20

**Kathryn T. Zwicker**

21

Klee, Tuchin, Bogdanoff & Stern LLP

22

1999 Avenue of the Stars

Thirty-Ninth Floor

23

Los Angeles, CA 90067-6049

24

25

26

DATED 22nd day of May, 2014.

Ronni Pepper
An employee of
The Mandelbrot Law Firm

PROOF OF SERVICE - 2