O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: J.T. THORPE, INC. & THORPE INSULATION COMPANY, DEBTORS | Case No. CV 14-03883-VAP<br>USBC Case No.<br>2:02-BK-14216-BB<br>ADVERSARY Case No.<br>2:12-AP-02182-BB<br><br>**ORDER AFFIRMING THE BANKRUPTCY COURT'S ORDERS AND JUDGMENT**<br><br>**[Appeal from Bankruptcy Court]** |

Appellants Michael J. Mandelbrot and The Mandelbrot Law Firm challenge the bankruptcy court's refusal to countenance their withdrawal from a stipulation that limits their ability to present claims against Appellees J.T. Thorpe Settlement Trust and Thorpe Insulation Co. Asbestos Settlement Trust on behalf of clients allegedly injured by exposure to asbestos. This matter is appropriate for resolution without hearing. See Fed. R. Civ. P. 78; L.R. 7-15. For the reasons discussed below, the Court affirms the bankruptcy court's orders and judgment.

# I. BACKGROUND

Appellees are statutory trusts created under 11 U.S.C. § 524(g). They are charged with assuming the liability for thousands of present and future mass-asbestos claims against two unrelated insolvent companies, J.T. Thorpe, Inc. ("JTT") and Thorpe Insulation Co. ("Thorpe"). JTT and Thorpe had installed and distributed asbestos insulation in various commercial and industrial settings, including shipyards and U.S. Navy ships. Appellees were established by the companies' Chapter 11 bankruptcy plan confirmation orders and affirmed by California Central District Judges Otero and Fischer.

Given the expiration of the deadlines to file an appeal, the affirmances by Judges Otero and Fischer have become final. SER Tabs A-E. Under these orders, Appellees remain under the bankruptcy court's post-confirmation supervision. SER Tab A at 20 § K (JTT); SER Tab C at 381 ¶ 16 (Thorpe). Appellees' court-approved trust distribution procedures ("TDPs") authorize them to reject the claims filed by attorneys found to be unreliable and to engage in a pattern or practice of submitting unreliable evidence in support of their claims. See SER Tab L at 1122-23 § 5.7; SER Tab M at 1156-57 § 5.7.

     Appellants are a lawyer and his law firm who filed claims with Appellees on behalf of asbestos victims. ER Tab 10 at 694 ¶¶ 15, 17. In the wake of an investigation, Appellees withdrew Appellants' claim-filing privileges because they were unreliable and had engaged in a pattern or practice of submitting unreliable evidence. See SER Tab F at 465-68. The audit revealed hundreds of filings on behalf of claimants not likely to have encountered the insolvent companies' asbestos and supported by declarations and answers to interrogatories from persons not likely to have personal knowledge regarding the exposures (e.g., children not yet born and spouses not yet married). SER Tab J at 700-03 ¶ 48-54.

     In many cases, Appellants simply refused to cooperate with the investigation or provide the alleged victims' prior deposition testimony. SER Tab J at 703-05 ¶¶ 55-61; SER Tab F at 469-81. Instead, Appellants accused Appellees of misconduct and threatened to sue if they did not stop the audit. In response, Appellees filed adversary proceedings to confirm the reasonableness of their decision to investigate Appellants. ER Tab 1 at 12 ¶¶ 9-10; ER Tab 8 at 658-59 ¶¶ 7-9; see ER Tab 12 at 748-49 ¶¶ 4-7. After they concluded the audit, Appellees also requested instructions to confirm that their findings and remedy were reasonable and authorized under the TDPs. ER Tab 8 at 660 ¶ 12; SER Tab G.

```
 1        Following comprehensive discovery, the bankruptcy
 2   court set these matters for trial.  The parties submitted
 3   affirmative trial evidence through declarations and
 4   exhibits.  During the presentation of their
 5   case-in-chief, Appellants cross-examined six Appellee
 6   witnesses, including their Executive Director, Managing
 7   Trustee, and Futures Representative.  Appellants also
 8   cross-examined Senior Supervising Paralegal Laura Paul,
 9   who first raised the problems with their claims and
10   selected 200 of the claims for the audit.  Paul testified
11   extensively regarding the implausibilities in the claims.
12   Her testimony showed that Appellants had a practice of
13   submitting unreliable evidence.  See SER Tab J at 697-99
14   ¶¶ 40-44.
15
16        On the third day of trial, after Appellants had
17   presented the majority of their case-in-chief, but before
18   Mandelbrot took the stand, the parties read into the
19   record a detailed stipulation endorsed by Appellants and
20   their counsel.  ER Tab 7 at 630-50, ER Tab 8 at 654-57 ¶
21   3.  It provided that Appellants would withdraw their
22   objections and defenses and agree that: (1) Appellees
23   acted reasonably in conducting an investigation,
24   confirming that their evidence was unreliable, and
25   imposing a remedy; and (2) Appellants would promptly
26   transfer the claims of current clients to other counsel
27   and not file new claims against Appellees and the two
28
```

4

1  other § 524(g) trusts sharing their claim-processing
2  facilities. 4 ER Tab 8 at 654-57 ¶ 3.  In reliance on
3  the stipulation, the bankruptcy court terminated the
4  trial.  ER Tab 4 at 71:20-72:20; ER Tab 7; ER Tab 8 at
5  653.

7      In its Findings of Fact, the bankruptcy court decided
8  that the trusts had reasonably determined Appellants to
9  follow "a pattern and practice of filing unreliable
10 evidence in support of claims[.]"  See ER Tab 1 at 12 ¶
11 9.  Later, the bankruptcy court commented that the
12 subjects of the stipulation were "factual findings which
13 I would have made on my own, based on the record as the
14 state that it was ... factual findings that weren't
15 simply because of the stipulations between the parties,
16 but also consistent with the evidence that I had heard."
17 SER Tab R at 1233.

19     Appellants subsequently attempted to renege on the
20 stipulation.  The bankruptcy court rejected their efforts
21 and, upon Appellees' motion, issued three orders: (1) the
22 Order Granting Motion to Enforce January 23, 2014
23 Stipulated Agreement, ER Tab 1 at 3-8 ("Enforcement
24 Order"); (2) the Order Following Trial on Adversary
25 Complaints and Motion for Instructions, ER Tab 1 at 9-14
26 ("Order Following Trial"); and (3) the Judgment in
27 Adversary Proceedings, ER Tab 1 at 15-16 ("Judgment")
28

(collectively, "Orders"). This appeal attacks the Orders by challenging the validity of the stipulation. ER Tab 1 at 1-2.

## II. LEGAL STANDARD

A federal district court has jurisdiction to entertain an appeal from the Bankruptcy Court under 28 U.S.C. § 158(a), which provides: "The district courts of the United States shall have jurisdiction to hear appeals ... from final judgments, orders, and decrees."

A district court reviews a bankruptcy court's conclusions of law de novo, and the bankruptcy court's factual findings for clear error. In re Greene, 583 F.3d 614, 618 (9th Cir. 2009) (citing In re Raintree Healthcare Corp., 431 F.3d 685, 687 (9th Cir. 2005); In re Salazar, 430 F.3d 992, 994 (9th Cir. 2005)); In re Coleman, 560 F.3d 1000, 1003 (9th Cir. 2009) (citing In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990)). "Mixed questions of law and fact are reviewed de novo." In re Chang, 163 F.3d 1138, 1140 (9th Cir. 1998), cert. denied, 526 U.S. 1149, 119 S. Ct. 2029, 143 L. Ed. 2d 1039 (1999) (citing In re Bammer, 131 F.3d 788, 792 (9th Cir. 1997) (en banc)); see also Fed. R. Bank. Pro. 8013.

When conducting a "de novo review, the appellate [(<u>i.e.</u>, district)] court accords no deference to the trial [(<u>i.e.</u>, bankruptcy)] court, but rather determines for itself whether the ... decision should be reversed on the ground that it is arbitrary, capricious, an abuse of discretion, or contrary to law. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175 (9th Cir. 2000) (citing <u>Lake Mohave Boat Owners Ass'n v. Nat. Park Serv.</u>, 138 F.3d 759, 762 (9th Cir. 1998)). In other words, the court does not afford "deference to the [bankruptcy] court's conclusion." <u>Voigt v. Savell</u>, 70 F.3d 1552, 1564 (9th Cir. 1995) (citing <u>Kayes v. Pac. Lumber Co.</u>, 51 F.3d 1449, 1454 (9th Cir. 1995)).

Under the clearly erroneous standard, however, "the court must accept the bankruptcy court's findings of fact unless, upon review, the court is 'left with the definite and firm conviction that a mistake has been committed' by the bankruptcy judge." <u>In re Greene</u>, 583 F.3d at 618 (citing <u>Latman v. Burdette</u>, 366 F.3d 774, 781 (9th Cir. 2004) (quoting <u>United States v. United States Gypsum Co.</u>, 333 U.S. 364, 395, 68 S. Ct. 525, 92 L. Ed. 746 (1948)).

### III. DISCUSSION

Whether the bankruptcy court abused its discretion by enforcing the parties' stipulation depends on three issues:

**A. Whether the Bankruptcy Court's limited post-confirmation and post-consummation jurisdiction constitutionally extends to third parties such as Appellants**

    **1. Appellants waived their Stern claim.**

First, Appellants cite Stern v. Marshall, __ U.S. __, 131 S. Ct. 2594, 180 L. Ed.2d 475 (2011), to argue that the bankruptcy court exceeded its jurisdiction. The Stern court held that, "although the Bankruptcy Court had the statutory authority to enter judgment on [a] counterclaim [against the estate], it lacked the constitutional authority to do so." Id. at 2601. Appellants claim to be "two steps further removed from the estate" than the counter-claimant in Stern because they "represented injury claimants and made no claims on behalf of themselves," and because the claims "were not filed against the estate, but against the Trust which contractually assumed liability on the claims." Opening Br. at 5 (Doc. No. 17).

Appellants waived their Stern claim by stipulating that "the only appropriate jurisdiction [to enforce the stipulation] is the supervising bankruptcy court that appointed the Trust fiduciaries." ER Tab 7 at 636-37, 643-44. The "right to a hearing in an Article III court ... is waivable" for both core and non-core matters. In re Bellingham Ins. Agency, 702 F.3d 553, 566-67 (9th Cir.

1 | 2013), aff'd on other grounds sub nom. Exec. Benefits
2 | Ins. Agency v. Arkison, __ U.S. __, 134 S. Ct. 2165, 189
3 | L. Ed. 2d 83 (2014).  Thus, "a bankruptcy court may
4 | constitutionally enter final judgment on a Stern claim
5 | against a nonclaimant to the bankruptcy estate with the
6 | consent of the parties."  Mastro v. Rigby, 764 F.3d 1090,
7 | 1095 (9th Cir. 2014).

### 2. The Orders' alleged non-core status makes no difference.

Further, Appellants contend that "[i]ntervention by [Appellees] and the Courts in the professional contractual relationship between [Appellants] and [their] clients is not a 'core proceeding[.]'"  Reply Br. at 5 (Doc. No. 28).  Although it is indeed "the sole province of Article III judges" to enter final judgment in non-core proceedings under 28 U.S.C. § 157(c)(1), In re Bellingham, 702 F.3d at 558, Appellants' decision to enter the stipulation makes the core/non-core distinction irrelevant.  "Article III's guarantee of an impartial and independent federal adjudication is subject to waiver. And in fact, § 157(c)(2) expressly provides that bankruptcy courts may enter final judgments in non-core proceedings 'with the consent of all the parties to the proceeding.'"  Id. at 567 (citations omitted).

### 3. The Orders fall within the bankruptcy court's post-confirmation jurisdiction.

Next, Appellants claim that the Orders did not pass the test for post-bankruptcy plan confirmation jurisdiction because the needed "close nexus ... does not exist in terms of disqualifying a licensed attorney from filing claims against the Trust." Reply Br. at 5. While "post-confirmation bankruptcy court jurisdiction is necessarily more limited than pre-confirmation jurisdiction," liquidating trusts formed under the plan for the benefit of pre-petition creditors "by their nature maintain a connection to the bankruptcy even after the plan has been confirmed." In re Pegasus Gold Corp., 394 F.3d 1189, 1194 (9th Cir. 2005) (citation omitted). Thus, "matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus." Id.

The Orders have the required "close nexus" to JTT and Thorpe's bankruptcy plans because they address how the § 524(g) trusts created under the plan confirmation orders should approach the review and payment of claims filed by Appellants. See Travelers Indem. Co. v. Bailey, 557 U.S. 137, 151-52, 129 S. Ct. 2195, 174 L. Ed. 2d 99 (2009) (finding it "easy" to hold that a bankruptcy court had jurisdiction to "interpret and enforce its own orders,"

especially where it "explicitly retained jurisdiction"); In re Courtyard, 729 F.3d 1279, 1288, 1292-93 (9th Cir. 2013) (extending Pegasus to find related-to jurisdiction over "post-confirmation, post-consummation disputes related to the interpretation and execution of the confirmed Plan"); In re A.H. Robins Co., 86 F.3d 364 (4th Cir. 1996) (finding jurisdiction over attorneys' fee calculation that could affect the operation of the trust and impact its handling and administration).

### 4. The Orders fall within the bankruptcy court's inherent authority.

Further, Appellants allege that the bankruptcy court overstepped its jurisdiction by enforcing a stipulation that curbed their right to present claims against two other § 524(g) trusts sharing Appellees' claim-processing facilities. Opening Br. at 7. The bankruptcy court, however, had the inherent authority to enforce the parties' stipulation entered on its record. A bankruptcy court, as a court of equity, has "the power to summarily enforce settlements." In re City Equities Anaheim, 22 F.3d 954, 958 (9th Cir. 1994). This authority "has as its foundation the policy favoring the amicable adjustment of disputes and the concomitant avoidance of costly and time consuming litigation." In re Springpark Assocs., 623 F.2d 1377, 1380 (9th Cir. 1980) (citing Dacanay v. Mendoza, 573 F.2d 1075, 1078 (9th Cir. 1978)).

Nothing in this circuit's holdings forbids the enforcement of a settlement that serves to benefit third parties.

**B.   Whether the evidentiary record and opportunity to present evidence supports the Findings of Fact**

Next, Appellants claim that the bankruptcy court violated their due process rights by denying them "an opportunity to present [their] case or ... any evidence other than through cross examination of [Appellees'] witnesses."  Opening Br. at 8.  However, Appellants exercised their due process rights by presenting affirmative evidence and cross-examining Appellees' lay witnesses in support of their case-in-chief.  They chose to waive their rights to cross-examine Appellees' experts and have Mandelbrot take the stand by stipulating to end the trial.  See City Equities, 22 F.3d at 959 ("[W]e reject CEA's claim that the bankruptcy court's summary proceeding [enforcing a settlement upon motion] violated due process."); Doi v. Halekulani Corp., 276 F.3d 1131, 1141 (9th Cir. 2002) ("[W]e cannot countenance a plaintiff's agreeing to settle a case in open court, then subsequently disavowing the settlement when it suits her.").

12

## C. Whether California law applies to enforcement of the Settlement Agreement

Further, Appellants argue that California public policy prevents enforcement of the stipulation because it restricts Mandelbrot's practice of law. Opening Br. at 9. They urge the Court to apply the law of California because the parties entered the stipulation and expected to perform its terms in California. Id. (citing ER Tab 8 at 666-669). Appellants point out they litigated in California, their attorneys were licenced in California, and Appellees were created by courts sitting in this state. Reply Br. at 3.

In contrast, Appellees contend that Nevada law applies because Appellees are Nevada entities that maintain their principal offices and conduct their business in Nevada. Response Br. at 29 (citing SER Tab P at 1218 (JTT); SER Tab Q at 1223 (Thorpe)). They observe that claimants reside all over the United States and retain counsel throughout the country, and that Appellants' clients are generally represented by non-California attorneys who associate with Appellants to file a claim. Id. (citing ER Tab 5 at 202, 267).

The stipulation resolved all of Appellees' adversary proceedings. "The construction and enforcement of settlement agreements are governed by principles of local law which apply to interpretation of contracts

generally." United Commer. Ins. Serv. v. Paymaster Corp., 962 F.2d 853, 856 (9th Cir. 1992) (citing Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1989)). "This is true even though the underlying cause of action is federal." Id. (citing In re Beverly Hills Bancorp., 649 F.2d 1329, 1332-33 (9th Cir. 1981)).

Under the general law governing the interpretation of contracts in California, the stipulation is controlled by the law of California, not Nevada. Cal. Civ. Code § 1646 provides that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Here, the parties agreed to dismiss the adversary proceedings in litigation occurring in California and entered the stipulation on the record before a court sitting in this state.

**1. Cal. Bus. & Prof. Code § 16600 does not preclude enforcement of the stipulation.**

Cal. Bus. & Prof. Code § 16600 voids "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind." Section 16600 expresses California's "settled legislative policy in favor of open competition and employee mobility" by protecting the freedom to choose one's business and

1  occupation.  Edwards v. Arthur Andersen LLP, 44 Cal. 4th
2  937, 946, 189 P.3d 285, 81 Cal. Rptr. 3d 282 (2008).  As
3  a result, the Edwards court applied § 16600 to invalidate
4  a non-competition agreement that an employee had signed
5  upon employment.  Id. at 948.

7     Other courts have also applied § 16600 to deny
8  requests for enforcement of non-competition agreements.
9  See, e.g., Silguero v. Creteguard, Inc., 113 Cal. Rptr.
10 3d 653, 661, 187 Cal. App. 4th 60 (2010) (sustaining
11 claim for wrongful termination based on a non-competition
12 agreement with a former employer); Dowell v. Biosense
13 Webster, Inc., 102 Cal. Rptr. 3d 1, 3, 9, 179 Cal. App.
14 4th 564 (2009) (invaliding secrecy, non-competition, and
15 non-solicitation agreements); cf. In re Marriage of
16 Greaux, 167 Cal. Rptr. 3d 881, 891, 223 Cal. App. 4th
17 1242 (2014) (holding that § 16600 does not preclude non-
18 competition orders).

20    Section 16600 protects lawyers' freedom of employment
21 and competition.  Those interests have nothing to do with
22 this case.  Appellants did not work for Appellees and did
23 not agree not to compete with them.  Appellants cite no
24 case where a court has applied § 16600 to void a
25 settlement in proceedings alleging submission of
26 unreliable claim evidence.  The Court finds no public
27 policy purpose for extending § 16600 to ban § 524(g)

trusts from protecting their beneficiaries from a lawyer they find to be unreliable on the ground that refusing to deal with the lawyer would harm his practice.

### 2. Cal. R. Prof. Conduct 1-500(A) does not prevent enforcement of the stipulation.

Cal. R. Prof. Conduct 1-500(A) "prohibits any agreement that restricts an attorney's ability to practice law." Gen-Probe Inc. v. Becton, Dickinson & Co., 267 F.R.D. 679, 687 (S.D. Cal. 2010). This rule has been applied in two types of circumstances, the first of which overlaps with § 16600. First, if an agreement "is considered a covenant not to compete, it may be found unenforceable." Id. Second, a settlement restricting the practice of a party's lawyer violates public policy. See ABA Comm. on Prof'l Ethics & Prof'l Responsibility, Formal Op. 93-371 (interpreting ABA Model Rule 5.6(b), the ABA analog of Rule 1-500).

Rule 1-500 safeguards lawyers' freedom to compete and clients' freedom to choose their counsel. Those issues are beside the point in this case. Appellants did not enter an agreement not to compete with Appellees, and their clients did not acquiesce to a settlement that inhibited Appellants' ability to practice. Rather than identify any cases applying Rule 1-500 in this context, Appellants argue that ABA Opinion 93-371 renders the

16

stipulation "out of bounds" because "[Mandelbrot] is clearly the best available and qualified professional to represent [his] individual clients[.]"  Reply Br. at 4.

This effort to engraft Rule 1-500 onto the case fails because the policy cited in ABA Opinion 93-371 does not apply.  The stipulation does not deny the public access to a lawyer who prevailed against the defendant in a prior action.  Instead, it protects the public from one who submitted unreliable evidence that led to further scrutiny, audits, and expense.  The Court finds no basis for applying Rule 1-500 to bar § 524(g) trusts from stipulating to the imposition of the remedies authorized by their TPDs to safeguard claimants from an attorney that the trusts find to be unreliable, as opposed to forcing the trusts to litigate the matter in the face of powerful evidence to its obvious conclusion.

### IV. CONCLUSION

For the foregoing reasons, the Court affirms the Bankruptcy Court's orders and judgment.

Dated: September 3, 2015

_____
VIRGINIA A. PHILLIPS
United States District Judge