1  Daniel J. Bussel (State Bar No. 121939)
   Thomas E. Patterson (State Bar No. 130723)
2  Sasha Gurvitz (State Bar No. 301650)
   KLEE, TUCHIN, BOGDANOFF & STERN LLP
3  1999 Avenue of the Stars, Thirty-Ninth Floor
   Los Angeles, California 90067
4  Telephone:      310-407-4000
   Facsimile:      310-407-9090
5  Email:          dbussel@ktbslaw.com
                   tpatterson@ktbslaw.com
6                  sgurvitz@ktbslaw.com

7  Benjamin P. Smith (State Bar No. 197551)
   MORGAN LEWIS & BOCKIUS LLP
8  One Market, Spear Street Tower
   San Francisco, California 94105
9  Telephone:      (415) 442-1000
   Facsimile:      (415) 442-1001
10 Email:          bpsmith@morganlewis.com

11 *Attorneys for the J.T. Thorpe Settlement Trust and*
   *Thorpe Insulation Company Asbestos Settlement Trust*

12
                    UNITED STATES BANKRUPTCY COURT
13                   CENTRAL DISTRICT OF CALIFORNIA
                         LOS ANGELES DIVISION
14

15 In re                                  | Chapter 11

16 J.T. THORPE, INC.                       | Case Nos. 2:02-bk-14216-BB and 2:07-bk-
                                           | 19271-BB
17         and
                                           | Adv. Case Nos. 2:12-ap-02182-BB and 2:12-
18 THORPE INSULATION COMPANY,              | ap-02183-BB

19         Debtors.                        | On Remand

20 ─────────────────────────────           | **PLAINTIFFS J.T. THORPE**
   J.T. THORPE SETTLEMENT TRUST and        | **SETTLEMENT TRUST AND THORPE**
21 THORPE INSULATION COMPANY               | **INSULATION COMPANY ASBESTOS**
   ASBESTOS SETTLEMENT TRUST,              | **SETTLEMENT TRUST'S OPENING**
22                                         | **BRIEF ON REMAND**
           Plaintiffs,
23                                         | Date:  February 1, 2018
           v.                              | Time:  10:00 a.m, (PT)
24                                         | Place: Courtroom 1539
   MICHAEL J. MANDELBROT and               |        255 E. Temple St.
25 THE MANDELBROT LAW FIRM,                |        Los Angeles, CA 90012
                                           | Judge: Honorable Sheri Bluebond
26         Defendants.

27 ─────────────────────────────

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1

**TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................. 1

II.     STATEMENT OF FACTS ............................................................................... 4

        A.      The Trusts and Trust Governance .................................................... 4

        B.      The Trusts Audit and the Mandelbrot Claims ................................ 7

        C.      The Trusts File this Adversary Proceeding and Move this Court for
                Instructions ........................................................................................ 8

        D.      Mandelbrot Agrees to Transfer Existing Claims and Refrain From Filing
                New Claims with the Trusts and the Western Trust and Plant Trust ...... 9

        E.      This Court Rejects Mandelbrot's Attempt to Renege and the District Court
                Affirms .............................................................................................. 10

        F.      The Ninth Circuit Remand ............................................................. 12

III.    ARGUMENT ................................................................................................. 13

        A.      Section 16600, *Edwards, Great Western Distillery* & *USS-Posco*. ......... 13

        B.      *Golden*'s Limited Extension of the *Edwards* Rule To a No-Rehire Covenant
                Based on California Policies Favoring Open Competition and Employee
                Mobility Does Not Apply to Mandelbrot. ...................................... 18

        C.      The Mandelbrot Settlement is Enforceable Under California's Rule of
                Reason. .............................................................................................. 22

        D.      Rule 1-500 Provides No Basis Upon Which to Void the Stipulated
                Settlement. ........................................................................................ 26

        E.      California Public Policy Does Not Regulate Practice Before § 524(g)
                Trusts. ............................................................................................... 29

IV.     CONCLUSION ............................................................................................. 32

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

i

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Boughton v. Socony Mobil Oil Co.*,
    231 Cal. App. 2d 188 (Cal. Ct. App. 1964)...............................................................16

*Centeno v. Roseville Cmty. Hosp.*,
    107 Cal. App. 3d 62 (Cal. Ct. App. 1979)............................................................16, 20

*Chamberlain v. Augustine*,
    172 Cal. 285 (1916)...............................................................................14, 15, 17, 21

*Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*,
    671 F.3d 1011 (9th Cir. 2012), *cert. denied* 568 U.S. 815, 133 S. Ct. 119 (2012) ...................30

*Edwards v. Arthur Andersen LLP*,
    44 Cal. 4th 937 (2008)..............................................2, 3, 13, 14, 16, 18, 20, 21, 22, 23

*Gibbs v. Consolidated Gas Co.*,
    130 U.S. 396, 9 S. Ct. 553 (1889) .......................................................................15

*Golden v. Cal. Emer. Phys. Med. Group*,
    782 F.3d 1083 (9th Cir. 2015).................1, 2, 3, 4, 11, 12, 13, 16, 17, 18, 19, 20, 21, 22, 23, 27

*Great Western Distillery Prods., Inc. v. John A. Wathen Distillery Co.*,
    10 Cal. 2d 442 (1937).........................................................3, 13, 15, 17, 20, 21, 28

*Haight v. Superior Court*,
    234 Cal. App. 3d 693 (Cal. Ct. App. 1991)..............................................................28

*Howard v. Babcock*,
    6 Cal. 4th 409 (1993).......................................................................................4, 28

*King v. Gerold*,
    109 Cal. App. 2d 316 (Cal. Ct. App. 1952)............................................................15, 16

*Levy v. Cohen*,
    19 Cal. 3d 165 (1977).......................................................................................29

*Mandelbrot v. J.T Thorpe Settlement Trust*,
    870 F.3d 1121 (9th Cir. 2017)...........................................1, 2, 4, 12, 13, 27, 30, 31

*Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*,
    618 F.3d 988 (9th Cir. 2010)...............................................................................29

*Stoll v. Gottlieb*,
    305 U.S. 165, 59 S. Ct. 134 (1938) ....................................................................29

*The Standard Oil Co. of N.J. v. United States*,
     221 U.S. 1, 31 S. Ct. 502 (1911) ............................................................17, 18

*United States v. Addyston Pipe & Steel Co.*,
     85 F. 271 (6th Cir. 1898) (Taft, J.), *aff'd* 175 U.S. 211, 20 S. Ct. 96 (1899)............................18

*USS-Posco Indus. v. Case*,
     244 Cal. App. 4th 197 (Cal. Ct. App. 2016) ...............................................13, 16, 17

*Willis v. Santa Ana Cmty. Hosp. Assn.*,
     58 Cal. 2d 806 (1962) ..............................................................................17

**Federal Statutes**

11 U.S.C. § 524(g) .................................................1, 3, 4, 12, 23, 24, 27, 29, 30, 31

18 U.S.C. § 152 ...........................................................................................7

Sherman Act section 1 ...................................................................................17

**California Statutes**

Cal. Bus. & Prof. Code § 16600............2, 3, 11, 12, 13, 14, 16, 17, 18, 19, 20, 21, 22, 26, 27, 29, 30

Cal. Bus. & Prof. Code § 16601..........................................................................14

Cal. Bus. & Prof. Code § 6092.5..........................................................................26

Cal. Civ. Code § 1673 ...............................................................................13, 14, 15

**Other Authorities**

ABA Comm. on Prof'l Ethics & Prof'l Responsibility, Formal Op. 93-371 ................................28

ABA Comm. on Prof'l Ethics & Prof'l Responsibility, Formal Op. 95-394 ................................28

Cal. R. Prof. Conduct 1-500..............................................................3, 4, 11, 12, 26, 27, 28, 29, 30

H.R. Rep. 103-835........................................................................................33

Model R. of Prof. Conduct 5.6(b) ....................................................................27, 28

Model R. of Prof. Conduct 11 ...............................................................................7

18B Wright, Miller & Cooper, Fed. Prac. & Proc: Jurisdiction 2d (2d ed.
     2002)...............................................................................................4, 27

Klee, Tuchin, Bogdanoff & Stern LLP
1999 Avenue of the Stars, Thirty-Ninth Floor
Los Angeles, California 90067
Telephone: 310-407-4000

iii

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    Plaintiffs J.T. Thorpe Settlement Trust (the "**JTT Trust**") and Thorpe Insulation Company

2    Asbestos Settlement Trust (the "**Thorpe Trust,**" and, with JTT Trust, the "**Plaintiff Trusts**"),

3    hereby submit this *Opening Brief on Remand*.  In support of this brief, the Plaintiff Trusts rely on

4    the *Declaration of Stephen M. Snyder* (the "**Snyder Declaration**"), filed concurrently herewith, as

5    well as the record in this adversary proceeding.

6                                         **I. INTRODUCTION**

7        The purpose of this remand is for this Court in the first instance to decide "whether federal

8    or state law governs (including whether the federal law argument has been waived), and what

9    impact, if any, *Golden v. Cal. Emer. Phys. Med. Group*, 782 F.3d 1083 (9th Cir. 2015) has on this

10   case" and whether in light of those proceedings, to amend, modify, vacate, or supplement its

11   orders that are the subject of this appeal.[1]  *Golden* was issued by the Ninth Circuit while appeal

12   was pending in the District Court in this matter (and after briefing in the District Court had been

13   completed), and so this Court had no opportunity to address it during the initial trial of this matter.

14   Plaintiff Trusts filed a Notice of Supplemental Authority, Dist. Ct. Dkt. No. 33, notifying the

15   District Court of the issuance of *Golden* and distinguishing the case, but the District Court did not

16   expressly address *Golden* in its *Order Affirming the Bankruptcy Court's Orders and Judgment*,

17   Dist. Ct. Dkt. 35 (the "**Affirmance Order**"), prompting the Ninth Circuit to remand this case.

18       The orders of this Court at issue here (the "**Bankruptcy Court Orders**") approved and

19   enforced the settlement between the Plaintiff Trusts, two other § 524(g)[2] trusts administered by

20   common fiduciaries and claim-handling staff, the Western Asbestos Settlement Trust (the

21   "**Western Trust**") and the Plant Insulation Company Asbestos Settlement Trust (the "**Plant

22   Trust**" and with the Western Trust and the Plaintiff Trusts, the "**Trusts**"), on the one hand, and

23   _____

24   [1]   *Order Remanding Matter to the Bankruptcy Court*, Dkt. No. 299 (Nov. 15, 2017) ("**Remand

25   Order**") (*quoting Mandelbrot v. J.T. Thorpe Settlement Trust*, 870 F.3d 1121 (9th Cir. 2017) (Dkt.
     No. 297) ("**Mandelbrot I**")).  Unless otherwise noted, references to (i) "Dkt. No." are to this

26   Court's docket in this adversary proceeding, (ii) "Dist. Ct. Dkt. No." are to the docket in
     Mandelbrot's District Court appeal, Case No. 2:14-cv-03383-VAP, and (iii) "9th Cir. Dkt. No."

27   are to the docket in Mandelbrot's Ninth Circuit appeal, Case No. 15-56430.

28   [2]   References to "**§ 524(g)**" are to 11 U.S.C. § 524(g).

                                                    1

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  Michael Mandelbrot and the Mandelbrot Law Firm (together, "**Mandelbrot**") on the other.[3]

2  Mandelbrot initially challenged the Bankruptcy Court Orders on a wide range of grounds, but the

3  only question remaining on this remand is whether California Business and Professions Code

4  § 16600 ("**§ 16600**") voids the provision in the settlement prohibiting Mandelbrot from filing or

5  prosecuting asbestos claims against the Trusts in the future.

6  This Opening Brief addresses the reasons why *Golden* does not apply, and why the

7  settlement should be upheld under longstanding California case law that adopts the "rule of

8  reason" with respect to agreements that could have an impact on the exercise of a trade or

9  profession, but that do not raise public policy issues that warrant a heightened standard.  In so

10  doing, it covers ground with which the Court is already familiar, but does so in furtherance of an

11  effort to comprehensively address the factual and legal bases for the application of the "rule of

12  reason" here.  This Brief also addresses whether federal law would uphold the agreement in the

13  face of a contrary result under § 16600, and whether that argument has been preserved.[4]

14  Careful consideration of both the federal preemption issue and *Golden* in light of

15  *Mandelbrot I* demonstrates that there is no need to amend, modify, or vacate the Bankruptcy Court

16  Orders or alter the claim-filing prohibition to which Mandelbrot agreed.  The Plaintiff Trusts,

17  however, respectfully submit that this Court should, in resolving this remand, enter supplemental

18  findings of fact and conclusions of law addressing the issues it has been instructed to consider.

19  With respect to *Golden*, the Plaintiff Trusts suggest that this Court find that (i) *Golden*,

20  properly construed, does not apply to this case because the California policies (employee mobility

21  and free competition) supporting *Golden*'s limited extension of the *Edwards v. Arthur Andersen*

22  *LLP*, 44 Cal. 4th 937 (2008) categorical rule against non-competition covenants to a no-rehire

23  _____

24  [3]    The Bankruptcy Court Orders consist of the *Order Granting Motion to Enforce January 23, 2014 Stipulated Agreement* [Dkt No. 232], the *Order Following Trial on Adversary Complaints*

25  *and Motion for Instructions* [Dkt No. 233], the *Judgment in Adversary Proceedings* [Dkt No. 234], and the *Findings of Fact and Conclusions of Law* [Dkt No. 235].

26  [4]    The Plaintiff Trusts anticipate that Mandelbrot will assert in his *Opening Brief on Remand*, to

27  be filed concurrently with this brief, that *Golden* applies and that the claim-filing prohibition he agreed to qualifies as a "restraint of a substantial character" within *Golden*.  The Plaintiff Trusts

28  will address any such claim by Mandelbrot in their responsive brief due on January 25, 2018.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  covenant in a settlement of an employee's wrongful discharge claim do not apply to the claim-

2  filing prohibition Mandelbrot agreed to in this case; (ii) since neither *Edwards* nor *Golden* apply

3  here, the "rule of reason" governs application of § 16600 to the Mandelbrot settlement under a

4  long line of California authorities rooted in common law, *see Great Western Distillery Prods., Inc.*

5  *v. John A. Wathen Distillery Co.*, 10 Cal. 2d 442 (1937); (iii) the restraint Mandelbrot agreed to in

6  the settlement is reasonable and any effect on competition or that restricts Mandelbrot in the

7  practice of his profession does not void the settlement because it is a by-product of its legitimate

8  purpose in protecting the Trusts and their assets from a professional with an admitted pattern and

9  practice of filing unreliable claims; and (iv) to the extent that the *Golden* rule may be extended to

10 cover the Mandelbrot claim-filing prohibition, then the Mandelbrot restraint is not "of a

11 substantial character" within the meaning of *Golden* in light of the limited scope of the prohibition

12 and limited market share of the Trusts.

13 With respect to federal preemption, the Plaintiff Trusts respectfully suggest that this Court

14 find that although the preemption issue has been properly preserved by the Plaintiff Trusts

15 throughout these proceedings, California law, properly construed, does not conflict with § 524(g)

16 and the court approved Trust Distribution Procedures ("**TDPs**") implementing the statutory

17 requirements of § 524(g)(2)(B)(i) (requiring the establishment of a trust) and § 524(g)(2)(B)(ii)(V)

18 (mandating trust distribution procedures providing reasonable assurance that present and future

19 claims will be treated similarly).  However, to the extent that § 16600 is construed to preclude the

20 Trusts, acting in full compliance with their court-approved TDPs, from prohibiting a professional

21 the Trustees have reasonably determined to be unreliable from agreeing to file no further claims,

22 then the California statute conflicts with central federal policies governing the administration of

23 asbestos trusts created under § 524(g) and is preempted.

24 Finally, the Plaintiff Trusts respectfully suggest that this Court reaffirm its prior findings

25 and conclusions regarding the application of California Rule of Professional Responsibility 1-500

26 ("**Rule 1-500**") to this case.  These findings and conclusions were expressly affirmed by the

27 District Court, *Order Affirming the Bankruptcy Court's Orders and Judgment* at Part III.C.2.

28 ("Cal. R. Prof. Conduct 1-500(A) does not prevent enforcement of the stipulation."), Dist. Ct. Dkt.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

No. 35.  Nothing in *Mandelbrot I* suggests this Court or the District Court erred in analyzing Rule 1-500.  Accordingly, at this point in the proceedings, this Court's prior rejection of the challenge to the Mandelbrot settlement under Rule 1-500, as subsequently affirmed by the District Court, is "law of the case," *see generally* 18B WRIGHT, MILLER & COOPER, FED. PRAC. & PROC: JURISDICTION 2D at § 4478 (2d ed. 2002), and nothing in *Golden* constitutes a basis for revisiting that determination given that the employee in that case was not a lawyer regulated by the State Bar of California or subject to Rule 1-500.  In any event, however, the purposes of Rule 1-500 are not implicated by the facts of this case and California's established rule of reason approach to the application of Rule 1-500, *see Howard v. Babcock*, 6 Cal. 4th 409 (1993), requires no modification of the Bankruptcy Court Orders or the Mandelbrot settlement.

## II. STATEMENT OF FACTS

### A.    The Trusts and Trust Governance

This matter arises out of the successful § 524(g) reorganizations of two unrelated firms—J.T. Thorpe, Inc. ("**JTT**") and Thorpe Insulation Co. ("**Thorpe**")—overseen by this Court.  JTT and Thorpe each faced thousands of claims for asbestos-related injuries.  Their chapter 11 cases were resolved under consensual reorganization plans channeling each firm's legacy asbestos liabilities to its respective trust and funding it in compliance with § 524(g).  The Plaintiff Trusts are now solely responsible for administering the asbestos liabilities of these former debtors for the benefit of asbestos claimants.  The Western Trust and the Plant Trust are similar § 524(g) trusts created and funded through the chapter 11 process of their former debtors under the supervision of the United States Bankruptcy Court for the Northern District of California.

The Trusts have nearly identical governance structures defined by four documents approved by the Trusts' supervising bankruptcy courts: a trust agreement ("**Trust Agreement**"), by-laws, TDPs, and a claims matrix.  Snyder Decl., ¶ 3.  Only the Trust Agreements and TDPs, however, are implicated by these proceedings and the current versions of the Trust Agreements and TDPs are therefore attached to and authenticated by the Snyder Declaration.  *Id.* at ¶¶ 4 & 12.

The Trust Agreements set forth the powers and duties of the Trustees.  *Id.* at ¶ 4.  Each Trust is managed by the same three Trustees: the Managing Trustee, Stephen M. Snyder, an

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  attorney, Sandra R. Hernández, M.D., a public health expert, and John F. Luikart, an investment

2  advisor (collectively, the "**Trustees**").  *Id.* at ¶¶ 5 & 21.  The Trustees administer the Trusts and

3  their assets in accordance with the Trusts' underlying purpose, which (as expressed in the Thorpe

4  Trust's Trust Agreement) is "to assume the liabilities of [the debtor], arising from or relating to

5  Asbestos Related Claims and to use the Trust's assets and income to pay holders of Asbestos

6  Related Claims in accordance with the Trust Agreement and in such a way that all holders of

7  similar Asbestos Related Claims are treated in a substantially equivalent manner and to otherwise

8  comply in all respects with the requirements set forth in section 524(g)(2)(B)(i) of the Bankruptcy

9  Code." *Id.* at ¶ 5; Trust Agreement, § 1.2.[5]

10  In addition to the Trustees, the Trust Agreements also specify the powers and duties of two

11  other trust fiduciaries, the Futures Claims Representative ("**FCR**") and the Trust Advisory

12  Committee ("**TAC**").  Snyder Decl., ¶ 4.  The TAC "serve[s] in a fiduciary capacity representing

13  holders of [asbestos claims]." *Id.* at ¶ 6; Trust Agreement, § 6.2.  The FCR "serve[s] in a fiduciary

14  capacity representing the interests of the future asbestos claimants for the purpose of protecting the

15  rights of persons who might subsequently assert [asbestos claims]."  Snyder Decl., ¶ 6; Trust

16  Agreement, § 5.1.  The Trusts are expected to exist until all future claims are liquidated, which

17  may not finally occur for many years.  Snyder Decl., ¶ 7.  Some potential Trust actions might

18  affect the rights and interests of present or future claim holders differentially.  *Id.*  The role of the

19  TAC and the FCR is to ensure that the Trustees properly consider the effect that their decisions

20  may have on both of these constituencies.  *Id.*

21  The TAC and FCR each have rights of approval with respect to certain actions under the

22  Trust Agreements and TDPs, and, even when not required, the Trustees may consult with them

23  with respect to other matters.  *Id.* at ¶ 8; Trust Agreement, §§ 5.1 & 6.2.  Where the Trust

24  Agreements or other documents require TAC or FCR consent for certain actions or decisions, the

25  _____

26  [5]  Unless otherwise noted, for ease of reference all citations to the Trust Agreement and TDPs
27  are to the Thorpe Trust's Trust Agreement and TDPs.  The Trust Agreements and TDPs for the
    JTT Trust, the Plant Trust, and the Western Trust are to the same effect in all material respects
28  relevant to this proceeding.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  Trustees may, in lieu of obtaining that consent, "apply to the Bankruptcy Court on an expedited

2  basis for approval of such action or decision."  Snyder Decl., ¶ 8; Trust Agreement, §§ 5.7 & 6.9.

3      The four TACs are comprised of plaintiffs lawyers who represent current asbestos

4  claimants with claims against the Trust they advise.  Snyder Decl., ¶ 9.  Although there is some

5  overlap, each TAC has at least one member who does not serve on any of the other TACs.  *Id.*

6  Changes in TAC composition require Bankruptcy Court approval.  *Id.*; Trust Agreement, § 6.4.

7      The FCR has been, for many years, the Honorable Charles Renfrew.  Snyder Decl., ¶ 10.

8  Unfortunately, Judge Renfrew passed away in December 2017.  *Id.*  A copy of the obituary

9  outlining his illustrious career is attached to the Snyder Declaration.  *Id.*  The FCR has an

10 independent fiduciary duty to advocate for the interests of future claimants and enforcement of the

11 TDPs' claim allowance requirements.  *Id.*  A successor FCR will be appointed by the Trustees,

12 subject to Bankruptcy Court approval.  *Id.*; Trust Agreement, § 5.3.

13     The TDPs specify the procedures for claimants to file and for the Trusts to process claims.

14 Snyder Decl., ¶ 12.  TDP modifications are submitted for Bankruptcy Court approval.  *Id.*  Under

15 the TDPs claimants need not prove their claims as they would have to in the tort system.  *Id.*

16 Instead, the TDPs contemplate streamlined procedures to efficiently and promptly resolve claims.

17 *Id.*  Adjusting claims economically is critical to the goal of distributing the greatest amount of

18 compensation feasible to claimants equitably and promptly.  *Id.*  Accordingly, in submitting

19 claims to the Trusts, claimants may rely on affidavits, verified interrogatory responses, or

20 deposition transcripts from cases against other defendants in the tort system to substantiate their

21 condition and the time and place of asbestos exposure.  *Id.*  Similarly, to assist claimants in

22 identifying whether they could have been exposed to asbestos related to their former debtors, the

23 Trusts publish lists of specific sites where the applicable debtor distributed or installed asbestos,

24 and lists of occupations of workers who might have been exposed at those locations.  *Id.*

25     These streamlined procedures might expose the Trusts to unscrupulous parties asserting

26 unfounded claims.  *Id.* at ¶ 13.  Hence, the TDPs provide that the Trusts "with the consent of the

27 TAC and [FCR] shall develop methods for auditing the reliability of evidence reasonably related

28 to the value of the claim.…"  *Id.*; TDPs, § 5.7(a).  The TDPs go on to provide that:

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

> In the event that the Trust reasonably determines that any unreliable individual or entity has engaged in a pattern or practice of providing unreliable medical or other evidence to the Trust, it may decline to accept additional evidence from such provider in the future.  Further, in the event that an audit reveals that fraudulent information has been provided to the Trust, the Trust may penalize any responsible claimant or claimant's attorney by disallowing the related Trust Claims or by other means including, but not limited to, requiring the claimant or attorney submitting the fraudulent information to pay the costs associated with the audit and any future related audit or audits, … refusing to accept additional evidence from the same, seeking the prosecution of the claimant or the claimant's attorney for presenting a fraudulent claim in violation of 18 U.S.C. § 152, and seeking Rule 11 sanctions."

Snyder Decl., ¶ 13; TDPs, § 5.7(a).[6]

The claims matrix sets forth the specific claim values for asbestos claims based on factors relating to the claimant and the nature of the asbestos exposure, including the medical condition suffered, the age of the claimant, the degree and persistence of exposure to debtor-related asbestos, the number of the claimant's dependents, and other factors affecting the several liability of the debtor were the claims asserted in the tort system.  Snyder Decl., ¶ 14.  The TDPs also authorize the Trusts to establish a "payment percentage"—a percentage of matrix value based on the Trusts' estimates of their assets and present and future claims.  *Id.*; TDPs at § 4.2.  Together, the claims matrix and TDPs are designed to enable the Trusts to pay present and future claimants equivalent percentages of the former debtor's several share of liability based on settlements, judgments, and verdicts historically obtained for substantially similar claims under state law.  Snyder Decl., ¶ 14.

**B.    The Trusts Audit and the Mandelbrot Claims**

The history of the Mandelbrot claims issues is recounted in the *Declaration of Laura Paul* [Dkt. No. 152-1] (the "**Paul Declaration**").  Senior Supervising Paralegal Laura Paul ("**Paul**") has processed and supervised the processing of thousands of asbestos claims on behalf of the Trusts since 2004.  Paul Decl., ¶¶ 1–4.  Over the course of her extensive interaction with Mandelbrot, Paul began to suspect that Mandelbrot was tailoring submissions to the Trusts to meet criteria for compensation without proof of the underlying facts.  *Id.*, ¶ 30; Snyder Decl., ¶ 15.

---

[6]    TDP § 5.7(a) is substantially identical for the Thorpe Trust, the JTT Trust, and the Western Trust.  The Plant Trust TDP contains substantially similar language at § 5.8(a).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    When a further review of Mandelbrot-filed claims revealed disturbing patterns, the matter

2    was raised at a meeting of the Trustees in September 2011.  Paul Decl., ¶ 50; Snyder Decl., ¶ 15.

3    There, after hearing from a number of individuals, the Trustees voted, with the consent of the

4    TACs and FCR, to audit Mandelbrot claims filed with the Western Trust, the JTT Trust, and the

5    Thorpe Trust (the Plant Trust had yet to receive claims).  Paul Decl., ¶¶ 50–51; Snyder Decl., ¶ 15.

6    TAC and FCR consent was required for the decision to conduct an audit under TDP § 5.7,

7    although, in the absence of TAC or FCR consent, the Trustees could have sought bankruptcy court

8    approval to initiate the audit.  Snyder Decl., ¶ 16.

9    The investigation ultimately focused on four types of claims: (i) claims by active service

10   seamen who contended they were exposed to shipyard asbestos ("disembarkation" claims); (ii)

11   deceased civilian worker claims, (iii) claims supported by testimony from persons lacking

12   personal knowledge of the events giving rise to the exposure; and (iv) claims from persons whose

13   duties would not ordinarily expose them to asbestos.  Paul Decl., ¶ 48–54.

14   Based on the audit, the Trustees determined that Mandelbrot was unreliable and had

15   engaged in a pattern or practice of submitting unreliable evidence to the Trusts pursuant to the

16   TDPs.  Snyder Decl., ¶ 17.  By letter dated May 24, 2013 (the "**Snyder Letter**"), a copy of which

17   is attached to the Snyder Declaration, the Trustees notified Mandelbrot of the results of the audit

18   determination and proposed to place conditions on his claim-filing privileges to reflect the

19   unreliability in the evidence that Mandelbrot adduced.  *Id.*  Mandelbrot rejected the conditions.

20   Snyder Decl., ¶ 18

21   **C.    The Trusts File this Adversary Proceeding and Move this Court for Instructions**

22   After advising Mandelbrot that the Trustees had determined that he was unreliable and that

23   he had engaged in a pattern or practice of filing unreliable evidence in support of claims, the

24   Plaintiff Trusts moved this Court for instructions based on the audit and its findings.  Dkt. No. 235

25   at Part II, ¶¶ 11–12.  The matters were set for trial in January 2014.  Dkt. Nos. 193–195.

26   The Plaintiff Trusts supplied this Court with numerous examples of audited Mandelbrot

27   claims (i) verified by individuals lacking personal knowledge (Paul Decl., Ex 32), (ii) not

28   supported by deposition evidence (Ex. 33), (iii) contradicted by prior litigation testimony by the

8

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   claimant or by government records (Ex. 34), (iv) supported by serially inconsistent interrogatory

2   responses, asserting that the sailor making the claim both disembarked at the shipyard and was

3   exposed to asbestos there, and also remained on board ship and was exposed to asbestos there (Ex.

4   43), and (v) suffering from a host of other forms of unreliability, some supporting strong

5   inferences of outright fraud.  *See* Paul Decl. at ¶ 89 (explaining that, in at least eleven instances in

6   support of disembarkation claims, Mandelbrot, "either signed contradictory interrogatory

7   responses stating that a claimant both 'disembarked' and 'remained on board' on the same day, or

8   back-dated his signature on the 'remained on board' response to match the signature date of the

9   'disembarked' interrogatory responses").  Mandelbrot submitted a declaration and his proposed

10  trial exhibits.

11       The Plaintiff Trusts' case in chief commenced on January 21, 2014, with Mandelbrot

12  cross-examining the Trust's declarants.   Paul's testimony was particularly devastating to

13  Mandelbrot.   In addition, Mandelbrot cross-examined five other Trust witnesses, including

14  Stephen Snyder (the Trusts' Managing Trustee), the FCR, and Sara Beth Brown (the Trusts'

15  Executive Director).

16  **D.    Mandelbrot Agrees to Transfer Existing Claims and Refrain From Filing New Claims
        with the Trusts and the Western Trust and Plant Trust**

17       On the third day of trial, after all the Plaintiff Trusts' witnesses other than expert witnesses

18  had been cross-examined, but before the Plaintiff Trusts cross-examined Mandelbrot, Mandelbrot

19  and his counsel entered into a detailed stipulation on the record with the Trusts and the FCR

20  resolving the litigation.  Dkt. No. 235 at Part II, ¶ 3; *see also* Dkt. No. 195 at 2:9–16:15 (hearing

21  transcript).  The key elements of the agreement include:

22       Mandelbrot agreed that the [JTT Trust's, the Thorpe Trust's,] and the Western
         Trust's determinations stated in the [Snyder Letter], including the determination by
23       all three trusts that Mandelbrot, the person and the firm, are unreliable and with
         respect to the [JTT Trust and the Thorpe Trust] specifically, have engaged in a
24       pattern and practice of filing unreliable evidence and support claims filed with
         those two trusts, are reasonable in light of the evidence assessed in connection with
25       the audit.

26       Mandelbrot agreed that the remedy imposed by the [JTT Trust and the Thorpe
         Trust] in the [Snyder Letter] disallowing all further evidentiary submissions by
27       Mandelbrot is authorized under the [TDPs] of each trust, and is reasonable in light
28       of the Trusts' audit and investigative findings.

9

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1

2

3

4

> Mandelbrot agreed that the investigation of Mandelbrot – by the [JTT Trust, the Thorpe Trust,] and the Western Trust – and the determinations and the remedy imposed were reasonable, not based upon improper interpretations of the terms of the three trusts, were and are consistent with the trusts' fiduciary duties, were conducted pursuant to a valid trust purpose, were not done in bad faith and were not an abuse of discretion.

Dkt. No. 235 at Part II, ¶¶ 3(g)–3(i).

5

6

7

Mandelbrot agreed not to file new claims with the Trusts and to transfer his current clients

to new counsel to pursue their claims or receive future payments.  Dkt. No. 235 at Part II, ¶ 3(b).

8

9

He also stipulated to this Court's enforcement of the stipulation.  Dkt. No. 195 at 14:20–25 ("If

Mandelbrot violates any of the terms set forth on the record, all four trusts shall have the right to

10

bring such violations to the attention of this Court, or any supervising court, and seek relief.").

11

12

This Court found that the JTT Trust, the Thorpe Trust, and the Western Trust had

reasonably determined that "Mandelbrot the person and the entity are unreliable, and have

13

engaged in a pattern and practice of filing unreliable evidence in support of claims filed with the

14

[JTT Trust and the Thorpe Trust]…."  *See* Dkt. No. 233 at ¶ 9.  This Court later observed that the

15

matters to which Mandelbrot stipulated were "factual findings which I would have made on my

16

own, based on the record as the state that it was. … So I did make factual findings that weren't

17

simply because of the stipulations between the parties, but also consistent with the evidence that I

had heard."  Dkt. No. 281 at 3:18–4:1.

18

19

In reliance on that stipulation, this Court terminated the trial.  *See* Dkt. No. 235 at 1:12–16;

20

Dkt. No. 195.  This Court later noted that the only reason for terminating the trial was the parties'

21

express acknowledgement on the record that the matter had been fully resolved subject only to

final approval by the Trusts' governing authorities in Nevada, a pro forma matter as the Managing

22

23

Trustee had attended the trial and personally negotiated the stipulation.  Dkt. No. 230 at 8:20–

9:20.  Approval was promptly obtained in Nevada.  *Id.* at 7:22–8:8.

24

**E.    This Court Rejects Mandelbrot's Attempt to Renege and the District Court Affirms**

25

26

Mandelbrot subsequently tried to renege on the stipulation, declining to execute a written

agreement memorializing its terms and refusing to perform.  Dkt. No. 235 at Part II, ¶ 19.  The

27

Trusts accordingly sought to enforce the stipulation.  This Court found the stipulation made in its

28

presence, and upon which it relied in terminating the trial, to be valid and binding.  Dkt. No. 230

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  at 9:12–10:24.  After exhaustively considering Mandelbrot's myriad rationales for releasing him

2  from that obligation, *id.* at 10:24–47:22, this Court rejected Mandelbrot's attempt to withdraw his

3  stipulation, *Id.* at 47:22, and entered the Bankruptcy Court Orders.  Dkt. Nos. 232–235.

4      Mandelbrot appealed and unsuccessfully sought a stay pending appeal in both this Court

5  and the District Court.  Dkt. No. 283 at 3:1–2; Dist. Ct. Dkt. No. 27 at p. 7.  In seeking that stay,

6  Mandelbrot made extravagant assertions that the Trusts' witnesses had perjured themselves and

7  that the entire case against Mandelbrot was fabricated to advance the personal interests of the

8  Trustees and others associated with them, including this Court.  Dkt. No. 273.  No evidence

9  supported these charges and both this Court and the District Court rejected the allegations.

10      On appeal in the District Court, Mandelbrot's primary claims were that this Court

11  exceeded its jurisdiction and denied him due process.  In addition, Mandelbrot argued that § 16600

12  and Rule 1-500 precluded enforcing the settlement as an impermissible restraint on trade and

13  unethical restriction of a lawyer's practice.  While the matter was *sub judice* in the District Court,

14  on April 8, 2015, the Ninth Court decided *Golden*, 782 F.3d 1083.  Although merits briefing of the

15  appeal had closed, the Plaintiff Trusts promptly brought *Golden* to the District Court's attention,

16  and noted that its reasoning did not apply to the current case.  Dist. Ct. Dkt. No. 33 (Notice of

17  Supplemental Authority) & No. 34 (Notice of Denial of Rehearing).  Mandelbrot, on the other

18  hand, made no argument on the basis of the *Golden* decision before the District Court, and did not

19  dispute the Trusts' contentions regarding *Golden*.

20      The District Court subsequently affirmed the Bankruptcy Court Orders in a written

21  memorandum without expressly referring to *Golden*.  Dist. Ct. Dkt. No. 35.  The Affirmance

22  Order rejected all of Mandelbrot's challenges.  Germane to this remand, the District Court rejected

23  Mandelbrot's contentions that § 16600 and Rule 1-500 voided the settlement.  *Id.* at Part III.C.1 &

24  2.  The District Court determined that California law governed the settlement.  *Id.* at 14:8–10.

25  After noting that § 16600 "protects lawyers' freedom of employment and competition[,]" the

26  District Court concluded that "[t]hose interests have nothing to do with this case" because

27  Mandelbrot "did not work for [the Trusts] and did not agree not to compete with them."  *Id.* at

28  15:20–23.  The District Court accordingly held that there was "no public policy purpose for

extending § 16600 to ban § 524(g) trusts from protecting their beneficiaries from a lawyer they

find to be unreliable on the ground that refusing to deal with the lawyer would harm his practice."

*Id*. at 15:26–16:3  Similarly, there is "no basis for applying Rule 1-500 to bar § 524(g) trusts from

stipulating to the imposition of the remedies authorized by their TDPs to safeguard claimants from

an attorney that the trusts find to be unreliable, as opposed to forcing the trusts to litigate the

matter in the face of powerful evidence to its obvious conclusion."  *Id*. at 17:11–17.

**F.      The Ninth Circuit Remand**

Mandelbrot appealed the Affirmance Order to the Ninth Circuit, making *Golden* the

centerpiece of his argument.  Dist. Ct. Dkt. No. 37.  A divided Ninth Circuit  remanded the matter

to the District Court for consideration of two issues: "whether federal or state law governs [the

enforceability of the Mandelbrot settlement] (including whether the federal law argument has been

waived), and what impact, if any, *Golden* has on this case."  870 F.3d at 1125.

The majority noted that in *Golden*, the Ninth Circuit had, in articulating a new standard

that "the district court … did not have the benefit of," remanded that case "so the district court

could order additional briefing or conduct further fact-finding."  *Id*. at 1124–25 (*citing Golden*,

792 F.3d at 1093).  The Ninth Circuit majority decided "the same approach is appropriate here."

870 F.3d at 1125.  Judge Edward Korman[7] in dissent found remand unnecessary given the very

limited guidance that *Golden* provided on what constitutes a "substantial" restraint in this context.

*Id*. at 1139 (Korman, S.D.J. dissenting).  After reviewing at length both the federal interest in

ensuring the viability of the § 524(g) mechanism and the clear threat to that mechanism posed by

allowing continued claim-filing by a lawyer with an admitted record of misleading submissions,

he concluded that the federal interest in maintaining the integrity of the § 524(g) trust mechanism

outweighed any countervailing interest that California might have in the matter.  *Id*. (Korman,

S.D.J. dissenting).    Moreover, after independently examining *Golden* and the California

authorities on which it was based, Judge Korman concluded that California law properly construed

did not require a different result on the facts of this case.  *Id*. (Korman, S.D.J. dissenting).

_____

[7]    Senior District Judge of the Eastern District of New York, sitting by designation.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    The Ninth Circuit majority did not dispute Judge Korman's analysis of the merits, but

2 concluded that even if "it may be, as the dissent suggests, that *Golden* has no application here

3 because (1) federal law governs, or (2) the facts in this case differ materially from those in *Golden*

4 … these calls are best for the district court to make in the first instance." *Id.* at 1125.

5    The District Court in turn remanded this matter to this Court for its determination in the

6 first instance "whether federal or state law governs [the enforceability of the Mandelbrot

7 settlement] (including whether the federal law argument has been waived), and what impact, if

8 any, [*Golden*] has on this case." Dkt. No. 299 (*quoting Mandelbrot I*, 870 F.3d at 1125).

### III. ARGUMENT

**A.**    **Section 16600, *Edwards, Great Western Distillery* & *USS-Posco*.**

11    Notwithstanding the breadth of the statutory language in its Business & Professions Code,

12 California law does not provide and has never provided for a *per se* rule voiding all contracts

13 under § 16600[8] that restrain a person in the exercise of a profession, trade, or business. For 150

14 years California courts have consistently recognized that the legislature could not have intended

15 and did not intend to render all contracts with an incidental effect on trade unenforceable. The

16 statute, which is drawn from the common law, like the common law itself, is necessarily, albeit

17 implicitly, limited to contractual arrangements that constitute unreasonable restraints on trade. *See*

18 Cal. Civ. Code § 3510 ("When the reason of a rule ceases, so should the rule itself.").

19    For over 100 years, however, California has singled out one particular contractual

20 arrangement, the post-employment covenant not to compete, as being of special concern in light of

21 California's public policy in favor of open competition and employee mobility. *Edwards*, 44 Cal.

22 4th at 946 ("In the years since its original enactment as Civil Code section 1673, our courts have

23 consistently affirmed that section 16600 evinces a settled legislative policy in favor of open

24 competition and employee mobility."). The California Supreme Court has specifically determined

---

[8]   The current version of § 16600 provides: "Except as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600 (Deering 2016). The language in the predecessor to § 16600, enacted in 1872 as CAL. CIV. CODE § 1673, was similarly unqualified.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   that post-employment covenants not to compete are categorically void under § 16600 unless they

2   fall within the applicable statutory exceptions.  *Id.* at 942 ("We conclude that section 16600

3   prohibits employee noncompetition agreements unless the agreement falls within a statutory

4   exception.").   In declaring this rule, the *Edwards* Court was careful to limit the scope of this

5   categorical prohibition to covenants not to compete in the employment context.  *See, e.g.*, *id.* at

6   941 (limiting the Court's review to whether "section 16600 prohibit[s] ***employee noncompetition***

7   ***agreements***" (emphasis added)).

8        The *Edwards* rule categorically banning employee noncompetition agreements is derived

9   from *Chamberlain*, in which the California Supreme Court affirmed a judgment voiding a contract

10   between a seller and purchasers of a business under California Civil Code § 1673 (the statutory

11   predecessor to § 16600).  *Chamberlain v. Augustine*, 172 Cal. 285 (1916).  The contract at issue in

12   *Chamberlain* obligated the seller of the business to pay the purchasers $5,000 if the seller, within

13   three years after the sale, participated in any business that competed with the business sold in

14   California, Oregon, or Washington.  *Id.* at 286–87.  This provision implicated the public policy

15   concerns animating § 16600, in this instance, by restricting open competition.   As such, the

16   California Supreme Court looked to whether the provision operated as a "restraint of a substantial

17   character" on the exercise of the seller's business, and finding that it did, affirmed the judgment

18   voiding the contract.    *Id.* at 288–89.    Although the California legislature has rejected

19   *Chamberlain*'s holding on its facts by clarifying that California law enforces reasonable non-

20   competition covenants in the context of a sale of a business (*see,* Cal. Bus. & Prof. Code § 16601)

21   it has never rejected the *Chamberlain* approach in the context of employee non-competition

22   covenants, which California courts consistently refused to enforce over the following 100 years.

23   The *Edwards* court, relying on the public policy interest in employee mobility and competition,

24   affirmed California's longstanding categorical position on this specific issue.

25        On the other hand, California has been just as consistent in applying the common law "rule

26   of reason" to challenges to other kinds of contractual provisions under § 16600.  A contractual

27   provision may not directly prohibit competition but may incidentally effect competition or restrain

28   one of the parties' trade.  Such a provision falls outside the scope of the *Edwards* rule and "will be

14

1   sustained although it in some degree may be said to restrain trade" so long as the restraint is

2   reasonably necessary to protect the legitimate interests of the counterparty and society. *Great*

3   *Western Distillery*, 10 Cal. 2d at 448–49 ("[I]f the public welfare be not involved and the restraint

4   upon one party be not greater than protection to the other requires, the contract will be sustained

5   although it in some degree may be said to restrain trade."); *cf. Gibbs v. Consolidated Gas Co.*, 130

6   U.S. 396, 409, 9 S. Ct. 553, 557 (1889) ("Public welfare is first considered, and if it be not

7   involved, and the restraint upon one party is not greater than the protection to the other party

8   requires, the contract may be sustained … [if it is not] unreasonable.").

9        In *Great Western Distillery*, the California Supreme Court reversed a judgment voiding a

10  contract between a supplier and a distributor under California Civil Code § 1673.  10 Cal. 2d at

11  450.  The contract at issue provided that the distributor would exclusively sell the supplier's

12  products and prohibited the supplier from selling to anyone in California other than the distributor

13  and one other party. *Id.* at 444–45.  The Court first looked to whether public policy concerns were

14  implicated—namely, whether "the facts surrounding its execution showed the contract to be part

15  of a scheme to restrain competition in the [relevant] business" line. *Id.* at 448.  Distinguishing

16  cases such as *Chamberlain* in which the contract was designed to stifle competition, the Court

17  determined that the "limited restriction" "does not appear to affect the public interests." *Id.* at 449.

18  Accordingly, because neither of the policies animating the statute were implicated, the Court did

19  not apply the substantial restraint framework.  Instead, the Court applied the rule of reason and

20  considered whether the restraint on the supplier was reasonably necessary for the protection of the

21  distributor. *Id.* at 449–50.  The Court upheld the contract as reasonable even though it might

22  "incidentally and indirectly restrict trade" because the restraint was "obviously designed only to

23  protect the respective parties in dealing with each other." *Id.* at 446 & 450.

24       Other California courts have upheld reasonable restraints under the rule of reason when the

25  contract did not implicate employee mobility or free competition. *See, e.g.*, *King v. Gerold*, 109

26  Cal. App. 2d 316, 318 (Cal. Ct. App. 1952) (upholding a reasonable licensing arrangement that did

27  not restrict open competition or employee mobility, but rather prevented the licensee from selling,

28  after the expiration of the licensing arrangement, products of the particular design and style

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

15

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1   invented by the licensor); *Centeno v. Roseville Cmty. Hosp.*, 107 Cal. App. 3d 62, 68–72 (Cal. Ct.

2   App. 1979) (upholding a reasonable exclusive services contract that did not restrict open

3   competition or employee mobility, but rather made a group of physicians a hospital's exclusive

4   provider of certain services).  Moreover, the "mere allegation that the purpose of the restriction is

5   to prevent competition" is not alone sufficient to obviate the rule of reason analysis.  *See, e.g.*,

6   *Boughton v. Socony Mobil Oil Co.*, 231 Cal. App. 2d 188, 190–91 (Cal. Ct. App. 1964) (rejecting

7   a § 16600 challenge and upholding a reasonable restriction in a deed that limited the use of the

8   subject property, notwithstanding the plaintiff's allegation that the purpose of the restriction was

9   to prevent competition, because the court independently determined "the question of monopoly is

10  not involved" and thus the restriction did not implicate open competition).[9]

11      More recent California authority confirms the correctness of this bifurcated approach

12  whereby contracts alleged to violate § 16600 are analyzed under either the *Edwards* rule or the

13  rule of reason depending on whether or not the restraint is properly characterized as a covenant not

14  to compete.  In *USS-Posco*, decided **after** *Golden*, the California Court of Appeal affirmed a

15  judgment upholding a contract between an employee and an employer.  *USS-Posco Indus. v. Case*,

16  244 Cal. App. 4th 197, 208 (Cal. Ct. App. 2016).  The employee alleged that the contract violated

17  § 16600 because it required the employee to reimburse his employer for the cost of a training

18  program if the employee left his job within 30 months after the training.  *Id.*  The contract did not

19  restrain open competition because it "did not restrain [the employee] from working for a

20  competitor or any other entity."  *Id.*  Nor did the contract restrict employee mobility because, the

21  Court reasoned, the benefits of the training program "transcend any specific employment and are

22  readily transportable" and the employee was "entirely free to," and in fact did, quit his job to work

23  elsewhere.  *See id.* at 208–10.  Accordingly, the Court distinguished *Edwards* as involving "a

24  quintessential noncompete agreement" in the employment context, and further distinguished

---

26  [9]   Indeed, in applying a categorical rule, rather than the rule of reason, to post-employment
27  covenants not to compete, the *Edwards* Court expressly distinguished *Boughton* and *King* on the
    basis that "neither involved noncompetition agreements in the employment context" and therefore
28  the agreements at issue there were not subject to the *Edwards* rule.  *Edwards*, 189 P.3d at 293 n.5.

16

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  *Chamberlain* and *Golden*, which implicated open competition and employee mobility,

2  respectively.  *See id.* at 209–10.  Given these public policy concerns were not implicated by the

3  contract, the *USS-Posco* Court upheld the contract, which reasonably protected the employer's

4  investment in training the former employee.  *See id.*

5      The rule of reason approach to § 16600 is deeply embedded in California law.  As the

6  California Court of Appeal noted in *Centeno v. Roseville Community Hospital*:

> Section 16600 is basically a codification of the common law relating to contracts in
> restraint of trade.  Where, as here, there is no express intent to depart from, alter, or
> abrogate the common law rules, a statute purporting to embody such doctrine or
> rules will be construed in light of common law decisions on the same subject.
>
> "There is an established principle at common law that an action will lie where the
> right to pursue a lawful business, calling, trade, or occupation is intentionally
> interfered with either by unlawful means or means otherwise lawful when there is a
> lack of sufficient justification. [citations omitted in original].  Whether there is
> justification is determined not by applying precise standards, but by balancing, in
> the light of all the circumstances the respective importance to society and the
> parties of protecting the activities interfered with on the one hand and permitting
> the interference on the other."

14  107 Cal. App. 3d at 68—69 (citations omitted, *quoting Willis v. Santa Ana Cmty. Hosp.*

15  *Assn.*, 58 Cal. 2d 806, 810 (1962)).

16      This approach is also consistent with how courts have interpreted and applied section 1 of

17  the Sherman Act,[10] which is framed in terms parallel to § 16600 and was enacted in the same era

18  to address similar concerns at the federal level.  *See* 15 U.S.C. § 1.  Although § 16600 and section

19  1 of the Sherman Act both prohibit "[e]very contract" that "restrain[s] … trade[,]" both the

20  California courts in construing § 16600[11] and the federal courts in construing the Sherman Act[12]

---

10  Section 1 of the Sherman Act provides that: "Every contract, combination in the form of trust
or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with
foreign nations, is hereby declared to be illegal."

11  *Great Western Distillery*, 10 Cal. 2d at 446 ("Statutes are interpreted in the light of reason and
common sense, and it may be stated as a general rule that courts will not hold to be in restraint of
trade a contract between individuals, the main purpose and effect of which are to promote and
increase business in the line affected, merely because its operations might possibly in some
theoretical way incidentally and indirectly restrict trade in such line." (internal quotation omitted)).

12  *The Standard Oil Co. of N.J. v. United States*, 221 U.S. 1, 66, 31 S. Ct. 502, 518 (1911) ("If
the criterion by which it is to be determined in all cases whether every contract, combination, etc.,

*(FOOTNOTE CONTINUED)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    have always recognized that the general prohibition of "every contract" is, of necessity, subject to

2    limitations in light of the public policies animating the statute. *See Standard Oil*, 221 U.S. at 68,

3    31 S. Ct. at 519 ("[A]s we have already pointed out, unaided by the light of reason it is impossible

4    to understand how the statute may in the future be enforced and the public policy which it

5    establishes be made efficacious."). An absolute prohibition of every contract "in restraint of trade

6    or commerce" or which restrains any "lawful profession, trade, or business" would make illegal

7    ordinary business arrangements fundamental to the proper functioning of a modern economy. *Id.*

8    at 63 ("To hold to the contrary would require the conclusion either that every contract, act or

9    combination of any kind or nature, whether it operated a restraint on trade or not, was within the

10    statute, and thus the statute would be destructive of all right to contract or agree or combine in any

11    respect whatever as to subjects embraced in interstate trade or commerce.").

**B.    *Golden*'s Limited Extension of the *Edwards* Rule To a No-Rehire Covenant Based on California Policies Favoring Open Competition and Employee Mobility Does Not Apply to Mandelbrot.**

14    Before the Ninth Circuit, Mandelbrot over-read *Golden* as establishing a *per se* rule

15    voiding all contracts under § 16600 that restrain a person in the exercise of a profession, trade, or

16    business. *Appellants' Opening Brief*, 9th Cir. Dkt. No. 15, at 13, n.10. Neither the Ninth Circuit

17    in ordering remand here, nor *Golden* itself, however, suggests that, in disregard of the

18    longstanding California authorities discussed in Section III.A above, § 16600 should be read to

19    void all contracts that may have an effect of restraining a person in the exercise of a lawful

20    profession. Instead, *Golden* stands for the narrow proposition that *Edwards* (which addressed only

---

22    is a restraint of trade within the intendment of the law, is the direct or indirect effect of the acts involved, then of course the rule of reason becomes the guide …. [I]n every case where it is claimed that an act or acts are in violation of the statute the rule of reason, in the light of the principles of law and the public policy which the act embodies, must be applied."); *United States v. Addyston Pipe & Steel Co.*, 85 F. 271, 282 (6th Cir. 1898) (Taft, J.) ("[T]he contract must be one in which there is a main purpose, to which the covenant in restraint of trade is merely ancillary. The covenant is inserted only to protect one of the parties from the injury which, in the execution of the contract or enjoyment of its fruits, he may suffer from the unrestrained competition of the other. The main purpose of the contract suggests the measure of protection needed, and furnishes a sufficiently uniform standard by which the validity of such restraints may be judicially determined. In such a case, if the restraint exceeds the necessity presented by the main purpose of the contract, it is void …."), *aff'd* 175 U.S. 211, 20 S. Ct. 96 (1899).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    post-employment covenants not to compete) is not strictly limited to post-employment covenants

2    not to compete but may encompass other contractual restrictions implicating California pro-

3    competition and employee mobility public policies. *Golden*, 782 F.3d at 1093.

4         *Golden* involved a settlement between Golden, a physician, and the California Emergency

5    Physicians Medical Group ("**CEP**"), an entity that manages and staffs emergency rooms and other

6    medical facilities in California and other states. *Id.* at 1084. Dr. Golden lost his staff membership

7    with CEP and sued, asserting various state and federal claims against CEP, including for racial

8    discrimination. *Id.* Prior to trial, Dr. Golden settled his employment law claims and waived any

9    right to reinstatement with CEP or at any CEP-owned facility. *Id.* at 1084–85. Further, Dr.

10   Golden agreed that if, in the future, CEP acquired or contracted to manage an emergency room

11   where he was then employed, CEP could terminate him from performing work in that emergency

12   room. *Id.* at 1085 (quoting the agreement's term that "'if CEP contracts to provide services to, or

13   acquires rights in, a facility that is an emergency room … at which Golden is employed or

14   rendering services, CEP has the right to and will terminate Golden from any work in the

15   emergency room without any liability whatsoever.'"). Golden later repudiated the settlement,

16   contending it violated § 16600. *Id.* at 1089. The district court determined that § 16600 applies

17   only to covenants not to compete and that the challenged provision was not such a covenant. *Id.*

18   On that basis, the district court concluded that § 16600 had no application to the challenged

19   provision and enforced the settlement against Golden. *Id.*

20        Golden appealed and the Ninth Circuit framed the issue as "whether the district court erred

21   by categorically excluding this settlement agreement from the ambit of section 16600 on the sole

22   ground that it did not constitute a covenant not to compete." *Id.* The Ninth Circuit observed that

23   the "California Supreme Court has not ruled expressly whether section 16600 applies only to

24   typical so-called 'non-compete covenants'" and thus "California seems not to have settled whether

25   a contract can impermissibly restrain professional practice, within the meaning of the statute, if it

26   does not prevent a former employee from seeking work with a competitor and if it does not

27   penalize him should he do so." *Id.* The Court reasoned that the "statutory context of section

28   16600 … suggests that the prohibition on professional restraints extends to a larger category of

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    contracts than simply those where the parties 'agree … to refrain from carrying on a similar

2    business, within a specified geographic area.'" *Id.* at 1092. Although the "courts of California

3    have not clearly indicated the boundaries of section 16600," the Court concluded that "[a]t the

4    very least, we have no reason to believe that the State has drawn section 16600 simply to prohibit

5    'covenants not to compete' and not also other contractual restraints on professional practice."

6    *Golden*, 782 F.3d at 1093. The district court, in holding that § 16600 did not apply solely because

7    the provision was not a covenant not to compete, "mischaracterized the appropriate legal rule" and

8    abused its discretion. *Id.* at 1092–93. The Ninth Circuit remanded the case, directing the district

9    court to determine whether the no-rehire restriction was a restraint of a substantial character and if

10   so whether it fell within the still undefined scope of § 16600. *Id.* at 1093.

11   Prior to *Golden*, California law under § 16600 involved two principal strands. <u>First</u>, the

12   *Edwards/Chamberlain* line of cases held as a matter of public policy that § 16600 prohibits

13   covenants not to compete, except to the extent falling within an express statutory exception.

14   <u>Second</u>, all other contractual restraints were assessed for reasonableness and would be upheld if

15   "the restraint upon one party is not greater than protection to the other requires, . . . although it in

16   some degree may be said to restrain trade." *Great Western Distillery*, 74 P.2d at 748.

17   Significantly, the rule making certain contracts void is "not based upon any consideration for the

18   party against whom the relief is sought, but upon considerations of sound public policy."

19   *Centeno*, 107 Cal. App. 3d at 69 n.2 (citing cases).

20   In this legal context, the *Golden* district court did err in finding that § 16600 had **no**

21   application to the *Golden* settlement. The no-rehire covenant was not a covenant not to compete,

22   and so was not strictly prohibited under *Edwards*. Indeed, under the *Golden* settlement Dr.

23   Golden was free to work without restriction for any competitor of CEP. CEP was more than

24   happy for Dr. Golden to work for a competitor; it just did not want him working for it.

25   Nevertheless, § 16600 still had some application and the no-rehire covenant needed to be tested

26   for reasonableness under *Great Western Distillery*.

27   *Golden*, however, did not simply remand for a rule of reason assessment under *Great*

28   *Western Distillery*. It suggested that *Edwards* and its underlying policies of employee mobility

20

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    and competition might be implicated on the facts of the case.  Set in the context of *Golden*, this

2    limited extension of *Edwards* may be plausible because the no-rehire provision potentially limited

3    Dr. Golden's employment prospects at non-CEP emergency rooms that might be acquired or

4    managed by CEP in the future.  Dr. Golden had argued before the Ninth Circuit that CEP

5    controlled a very large share of the relevant market for emergency physician services and was

6    intent on growing that market share by contracting with increasing numbers of emergency rooms

7    including potential future employers of Dr. Golden.  Thus the direction from the Ninth Circuit in

8    *Golden* to the district court was to assess the effect of the no-rehire covenant on Dr. Golden's

9    future employment opportunities.

10       In sum, what *Golden* adds to the long-established rule that § 16600 voids post-employment

11   covenants not to compete is the narrow proposition that the *Edwards* rule is not limited to an

12   agreement that on its face is a covenant not to compete.  *Golden*, 782 F.3d at 1093.  It extends

13   further to "other contractual restraints on professional practice" [such as, perhaps, *Golden*'s no-

14   rehire covenant] that implicate the "'settled legislative policy in favor of open competition and

15   employee mobility.'"  *See id.* at 1091 & 1093 (quoting *Edwards*, 44 Cal. 4th at 946).

16       A contractual provision that implicates California's competition and employee mobility

17   policies falls within the scope of *Golden*.  Section 16600 voids such a provision if it constitutes a

18   "'restraint of a substantial character,' no matter its form or scope."  *Golden*, 782 F.3d at 1092

19   (quoting *Chamberlain*, 172 Cal. at 288).  A provision may, however, incidentally impact the

20   exercise of a profession, trade, or business, but not implicate open competition and employee

21   mobility.  Such a provision is outside of *Golden* and "will be sustained although it in some degree

22   may be said to restrain trade" so long as the restraint is reasonably necessary to protect the

23   legitimate interests of the counterparty.  *Great Western Distillery*, 10 Cal. 2d at 448–49.

24       Applying this understanding of the post-*Golden* legal landscape, the challenged provision

25   of Mandelbrot's settlement implicates neither of the *Edwards* public policy concerns or the

26   *Golden* extension of *Edwards*.  The Trusts neither compete with nor employ Mandelbrot.  Unlike

27   the no-rehire covenant in *Golden*, Mandelbrot's agreement not to file claims against the Trusts

28   does not contractually bar him from working for a present or future competitor of the Trusts.

1  Indeed the Trusts are not engaged in market activity and in a practical sense have no competitors

2  and did not act to advance any competitive interests.  Accordingly, *Golden* is not applicable and

3  the Mandelbrot settlement does not violate § 16600.

4          California's "rule of reason" on the other hand does apply here.  That standard as discussed

5  below in Part III.C is satisfied because the restraint is narrowly tailored to address the Trusts'

6  interest in protecting present and future beneficiaries of the Trusts from Mandelbrot's misconduct

7  and that legitimate interest of the Trusts outweighs any burden on Mandelbrot or on competition.

8  **C.      The Mandelbrot Settlement is Enforceable Under California's Rule of Reason.**

9          Since the Mandelbrot settlement does not implicate the public policy concerns that animate

10  the *Edwards* rule, the rule of reason framework is the appropriate standard under which to evaluate

11  Mandelbrot's § 16600 challenge.  The rule of reason requires a balancing of any competitive

12  concerns against the legitimate interests of the protected party.  That balancing requires

13  enforcement of the parties' settlement in this case.  Any competitive concerns here are attenuated

14  given that Mandelbrot and the Trusts are not competitors.  The settlement fully preserves

15  Mandelbrot's legitimate interest in being able to pursue his profession by bringing asbestos claims

16  against any other person or in any venue other than the four settling Trusts.  The Trusts have acted

17  responsibly and reasonably limited the prohibition to protect their present and future beneficiaries

18  from an established pattern and practice of abuse and have a legitimate interest in doing so.

19          1.      Public Policy Concerns of Open Competition.

20          The Trusts do not compete with Mandelbrot.  *Id.*  The Trusts do not engage in business and

21  their only interest is in protecting present and future Trust beneficiaries.  *Id.* at ¶¶ 21 & 23.  The

22  Trusts have no economic or other interest in the success or failure of Mandelbrot's law practice.

23  *Id.* at ¶ 21.  Additionally, other than with respect to issues of reliability, the Trusts have never

24  favored claims filed by any one firm over any other firm and have no reason to do so.  *Id.*  The

25  Trustees likewise do not compete with Mandelbrot.  *Id.*  Mr. Snyder is an attorney, but he does not

26  represent asbestos claimants, and the other two Trustees are an investment advisor and a public

27  health expert.  *Id.*  As such, the Trustees have no economic or other stake in the success or failure

28  of Mandelbrot's law practice, nor do they have any reason to bar Mandelbrot from the Trusts other

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    than to protect the Trusts from Mandelbrot's documented practice of filing unreliable evidence.

2    *Id.* at ¶¶ 21 & 23.  The FCR also does not compete with Mandelbrot, nor does the FCR have any

3    economic or other interest in the success or failure of Mandelbrot's law practice.  *Id.* at ¶ 22.

4        As lawyers representing asbestos claimants, TAC members do potentially compete with

5    Mandelbrot.  However, once the TAC (and the FCR) consented to the audit of Mandelbrot's

6    claims, the TAC played, with one exception noted in the Snyder Declaration, no role in the audit,

7    the decision of the Trusts to file this adversary proceedings in 2012, the Snyder Letter, the

8    decision to seek specific remedies pursuant to the Trusts' 2013 filings in this adversary

9    proceeding, or the settlement itself.  *Id.* at ¶¶ 19, 20 & 23.  Indeed, the TAC was specifically not

10    required to consent to or approve of these decisions, the Trusts did not seek the TAC's consent or

11    approval, and the TAC neither consented nor declined to consent.  *Id.* at ¶ 19.[13]  The Trusts'

12    decision to bar Mandelbrot was not affected by any member of the TAC and was instead entirely

13    motivated by the results of the audit and the documented record of Mandelbrot's misconduct.  *Id.*

14    at ¶ 23.  Moreover, even if the Trusts had sought the consent of the TAC (they did not), the Trusts

15    could have and would have acted in the same manner irrespective of the TAC's position.  *Id.* at

16    ¶ 16.  As such, the settlement also does not implicate public policy concerns for open competition

17    and was not entered into for the purpose of restraining competition.

18        2.    Public Policy Concerns of Employee Mobility.

19        Because the Trusts never employed Mandelbrot, the *Edwards* public policy concerns do

20    not arise here.  But even if they did, the settlement does not prohibit Mandelbrot from working for

21    any employer or carrying on his own practice, whether in the area of asbestos trust litigation or

22    any other area of law practice.  In contrast to the challenged provision in *Golden,* the Bankruptcy

23    Court Orders and the stipulated settlement do not contemplate terminating or precluding

24    Mandelbrot from any employment now or in the future.  Moreover, the stipulated settlement has a

25    defined and limited scope—it does not bar Mandelbrot from filing claims with other § 524(g)

27    [13]    The TAC reviewed the Snyder Letter prior to delivery and questioned whether Mandelbrot
      should be afforded the opportunity to continue to prosecute claims subject to stated conditions

28    The Trustees nevertheless afforded Mandelbrot that opportunity, but he rejected it.

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    trusts currently managed by different fiduciaries, or from other trusts that the Western Trust's

2    claims handling facility might contract with in the future or that the current Trust fiduciaries might

3    be involved with in the future. *Id.*

4        3.    The Legitimate Interests of the Trusts.

5        The settlement is designed to protect the Trusts and their present and future beneficiaries

6    from Mandelbrot's documented misconduct and unreliability.  The provision barring Mandelbrot

7    from filing claims against the Trusts is reasonable because it is proportional to the scope of the

8    documented record of Mandelbrot's misconduct and is narrowly tailored to protect the Trusts from

9    that misconduct.  Snyder Decl., ¶ 32.  The Trusts' meticulous audit found that Mandelbrot was

10   unreliable and had engaged in a pattern and practice of submitting unreliable evidence to the

11   Thorpe Trust and the JTT Trust.  The Western Trust also found that Mandelbrot was unreliable.

12   These audit findings amply demonstrate substantial misconduct posing a significant threat to the

13   legitimate interests of the Trusts in protecting Trust assets for the benefit of present and future

14   asbestos claimants, and were further reinforced by the extensive evidence of Mandelbrot's

15   misconduct revealed at trial.  Based on that showing, this Court concluded that the Trusts'

16   determinations as to Mandelbrot's unreliability, the Trusts' actions in initiating the audit and this

17   proceeding, and the Trusts' decision to bar Mandelbrot from filing claims against the Trusts was

18   reasonable, authorized, and appropriate in light of the evidence.  Dkt. No. 235, at Part III, ¶ 7.

19       The Trustees also reasonably concluded that any settlement with Mandelbrot must include

20   a claim-filing bar in favor of all four Trusts.  Snyder Decl., ¶ 27.  The Western Trust, the oldest of

21   the Trusts, has established a claim-handling facility that the other three Trusts have contracted to

22   use.  *Id.* at ¶ 28.  A settlement with only the Thorpe Trust and JTT Trust would have left the

23   Western Trust and Plant Trust and their shared claim-handling services exposed to unreliable

24   evidence from Mandelbrot.  *Id.*  Given the finding that Mandelbrot had submitted unreliable

25   evidence to the joint claim-handling facility, it was reasonable for the Trustees (who are fiduciary

26   administrators of all four Trusts) to conclude that a consensual resolution with Mandelbrot must

27   protect all the Trusts currently employing that facility.  *Id.*

28

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1      Moreover, the Trustees determined that Mandelbrot was especially prone to unreliability

2  because in many cases he acted as local counsel for other firms.  *Id.* at ¶ 29.  It became apparent,

3  as the Trusts audited the Mandelbrot claims, that Mandelbrot acting as local counsel lacked direct

4  contact with the client or other mechanisms to ensure the evidence he submitted would be reliable.

5  *Id.*  The Trusts proposed various remedial steps in the Snyder Letter that would have ameliorated

6  these concerns, but Mandelbrot refused to agree to them.  *Id.*  Accordingly, the only alternatives

7  open to the Trusts absent a claim-filing bar on Mandelbrot would have involved significant added

8  expense in assessing Mandelbrot-filed claims, and an unacceptable continuing risk of paying

9  invalid or improperly-supported claims, to the detriment of other trust beneficiaries.  *Id.*

10      Mandelbrot's own conduct in connection with the Trusts' efforts to deal with his claims

11  was another strong factor in the Trusts' insistence that he agree to not file further claims with all

12  four Trusts.  *Id.* at ¶ 30.  As summarized in Snyder Letter and as this Court has previously been

13  advised, Mandelbrot attempted to frustrate the Trusts' efforts to examine his claims at every turn.

14  *Id.*  He objected to, and appealed from, orders for 2004 examinations of the underlying claimants,

15  then withdrew the claims of claimants whose examinations had been ordered to avoid the

16  testimony ever being given; he threatened the Trustees and other Trust fiduciaries with legal

17  action, contending the claim audit was animated by an improper purpose on the part of the Trust

18  fiduciaries; he refused to undertake the Trusts' requested corrective steps to assure the reliability

19  of evidence; and he has threatened and bullied the Trusts' claims handling staff, both in person

20  and on a blog maintained on his firm's website.  *Id.*  Mandelbrot has never explained how the

21  pattern and practice of unreliable evidence came about, nor has he ever indicated in any

22  satisfactory way what steps could be taken to ensure that pattern and practice does not persist.  *Id.*

23      The Trusts also made important concessions to Mandelbrot in exchange for his agreement

24  not to file claims against them.  Specifically, the Plaintiff Trusts agreed to end the trial and waive

25  the equitable relief sought in this adversary proceeding, as well as their right under the TDPs to

26  impose the costs of the audit on Mandelbrot.  *Id.* at ¶ 32.

27      Perhaps most powerfully, the reasonableness of the settlement is established by

28  Mandelbrot's own admission to his misconduct and lack of reliability, as well as his express

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  agreement that the remedy sought by the Plaintiff Trusts was reasonable. *See* Dkt. No. 235, at Part

2  II, ¶¶ 3(g) ("Mandelbrot agreed that the [JTT Trust's, the Thorpe Trust's,] and the Western Trust's

3  determinations stated in the [Snyder Letter], including the determination by all three trusts that

4  Mandelbrot, the person and the firm, are unreliable and with respect to the [JTT Trust and the

5  Thorpe Trust] specifically, have engaged in a pattern and practice of filing unreliable evidence and

6  support claims filed with those two trusts, are reasonable in light of the evidence assessed in

7  connection with the audit.") & 3(h) ("Mandelbrot agreed that the remedy imposed by the [JTT

8  Trust and the Thorpe Trust] in the [Snyder Letter] providing for the disallowance of all further

9  evidentiary submissions by Mandelbrot is authorized under the Trust Distribution Procedures of

10 each trust, and is reasonable in light of the Trusts' audit and investigative findings.").

11     Accordingly, the Mandelbrot settlement was reasonable in light of the lack of material

12 competitive concerns, the narrowly tailored effect on Mandelbrot's ability to continue to practice

13 his profession, the legitimate need to protect the Trusts from Mandelbrot's amply established

14 misconduct, and the reasonableness and measured nature of the Trusts' actions in response thereto.

15 The Mandelbrot settlement is not void under § 16600.

16 **D.      Rule 1-500 Provides No Basis Upon Which to Void the Stipulated Settlement.**

17     The District Court expressly rejected Mandelbrot's assertion that the Mandelbrot

18 settlement violated Rule 1-500,[14] concluding that there is "no basis for applying Rule 1-500 to bar

---

[14]  Rule 1-500 provides that:

(A) A member shall not be a party to or participate in offering or making an agreement,
    whether in connection with the settlement of a lawsuit or otherwise, if the agreement
    restricts the right of a member to practice law, except that this rule shall not prohibit such
    an agreement which:

    (1) Is a part of an employment, shareholders', or partnership agreement among members
        provided the restrictive agreement does not survive the termination of the employment,
        shareholder, or partnership relationship; or

    (2) Requires payments to a member upon the member's retirement from the practice of
        law; or

    (3) Is authorized by Business and Professions Code sections 6092.5 subdivision (i), or
        6093.

*(FOOTNOTE CONTINUED)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

§ 524(g) trusts from stipulating to the imposition of the remedies authorized by their TDPs to safeguard claimants from an attorney that the trusts find to be unreliable, as opposed to forcing the trusts to litigate the matter in the face of powerful evidence to its obvious conclusion."  Dist. Ct. Dkt. No. 35 at 17:11–17.  The District Court determined that Rule 1-500 is inapplicable because "[t]he stipulation does not deny the public access to a lawyer who prevailed against the defendant in a prior action.  Instead, it protects the public from one who submitted unreliable evidence that led to further scrutiny, audits, and expense." *Id.* at 17:7–11.  In addition to his argument that the settlement is void under § 16600 and *Golden*, Mandelbrot, after the Affirmance Order, pressed his argument that the stipulated settlement violates Rule 1-500 to the Ninth Circuit.  Because the District Court correctly affirmed this Court's prior rejection of Mandelbrot's Rule 1-500 challenge, and because nothing in *Golden* or *Mandelbrot I* in any way suggests that this Court's analysis of Rule 1-500, as subsequently affirmed by the District Court, is incorrect or should be revisited, this Court's prior determination that Rule 1-500 is not violated by the Mandelbrot settlement is "law of the case."  18B WRIGHT, MILLER & COOPER, FED. PRAC. & PROC.: JURISDICTION 2D at § 4478 (2d ed. 2002).

Whether "law of the case" applies or not, however, this Court's prior determination that Rule 1-500 is not implicated by this case is amply supported by the applicable California authorities.  Rule 1-500 does not apply because neither of the two specific situations at which it is directed exists here: the claim-filing prohibition is not a covenant not compete between a lawyer and his former employer or partners, and it is not a condition of a client settlement.[15]

---

(B) A member shall not be a party to or participate in offering or making an agreement which precludes the reporting of a violation of these rules.

[15] Rule 1-500, like its analogue ABA Model R. of Prof. Conduct 5.6(b) embodies a policy that prohibits settlements that contain an extraneous term restricting the practice of one of the parties' lawyers.  ABA Formal Opinion 93-371 explains why:

First, permitting such agreements restricts the access of the public to lawyers who, by virtue of their background and experience, might be the very best available talent to represent these individuals.  Second, the use of such agreements may provide clients with rewards that bear less relationship to the merits of their claims than they do to the desire of the defendant to "buy off" plaintiff's counsel.  Third, the offering of such restrictive agreements places the plaintiff's lawyer in a

*(FOOTNOTE CONTINUED)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

In particular, the policies that support the prohibition on settlements restricting the practice of one of the parties' lawyers do not apply here.  The Mandelbrot settlement does not deny the public the services of a lawyer who has successfully prosecuted similar claims against a particular defendant in the past; it protects the public from one known to have engaged in a practice of filing claims on unreliable evidence that has led to additional scrutiny, audits, and expense.  It also is not collateral to the matter being settled; it resolves the issue in dispute—Mandelbrot's conduct in prosecuting claims.  Finally, the stipulation does not subordinate Mandelbrot's own professional interests, or the interests of future clients, to those of a particular settling client; Mandelbrot's clients are not parties to this stipulation.  Accordingly, the Mandelbrot settlement is not the type of agreement covered by Rule 1-500, and its enforcement does not implicate the policies supporting the Rule.  Finally, the California Rules of Court have a mechanism that, analogous to the settlement here, permits an attorney charged with misconduct to ask the California Supreme Court to permit that attorney to resign from the bar in lieu of facing a disciplinary proceeding, further supporting the notion that 1-500 is inapplicable when the attorney's own conduct is at issue.

In any event, even if Rule 1-500 did apply, under *Howard v. Babcock*, the Rule's application remains subject to a rule of reason analysis analogous to the *Great Western Distillery* framework discussed above in Part III.A.  *See, e.g.*, *Howard*, 6 Cal. 4th at 425 ("We have recognized that restraint of competition among partners is permissible [under Rule 1-500] only to the extent it protects the reasonable interests of the business seeking the restraint"); *Haight v. Superior Court*, 234 Cal. App. 3d 693, 969 (Cal. Ct. App. 1991) (construing Rule 1-500 to reflect

---

situation where there is conflict between the interests of present clients and those of potential future clients.  While the Model Rules generally require that the client's interests be put first, forcing a lawyer to give up future representations may be asking too much, particularly in light of the strong countervailing policy favoring the public's unfettered choice of counsel.

ABA Comm. on Prof'l Ethics & Prof'l Responsibility, Formal Op. 93-371*; see also* State Bar of Cal. Comm. on Prof'l Responsibility & Conduct, Formal Op. 1988-104 (same); ABA Comm. on Prof'l Ethics & Prof'l Responsibility, Formal Op. 95-394 (extending Rule 5.6 to cover settlements between public agencies and private parties).

1    "a balance between competing interests" and finding  that "the rule simply provides that an

2    attorney may not enter into an agreement to refrain altogether from the practice of law").  For the

3    same reasons set forth in Part III.C *supra*, the provision barring Mandelbrot from filing claims

4    against the four Trusts is reasonably necessary for the protection of the Trusts' legitimate interest

5    in protecting present and future trust beneficiaries.  Rule 1-500 therefore provides no basis for

6    voiding the stipulated settlement in this case.

7    **E.        California Public Policy Does Not Regulate Practice Before § 524(g) Trusts.**

8           The Trusts are creatures of federal bankruptcy law, and the provisions of their governing

9    documents were approved in final orders affirmed in the District Court.  Moreover, the relief to

10   which Mandelbrot stipulated and which he now claims violates California public policy derives

11   from the TDPs, which expressly authorize the Trusts to prevent further claim-filing by an

12   unreliable individual or entity that, in each Trust's reasonable determination, has engaged in a

13   pattern or practice of providing unreliable evidence to the Trust.  Mandelbrot's argument that the

14   stipulated settlement violates California public policy as expressed in § 16600 or Rule 1-500 is

15   thus a collateral attack on the TDPs approved long ago in the plan confirmation orders that created

16   the Trusts.  To the extent California law is inconsistent with the court-approved TDPs (the Trusts

17   do not believe it is), those objections should have been raised at the time of confirmation and are

18   no longer subject to attack on basic principles of *res judicata*.  *Stoll v. Gottlieb*, 305 U.S. 165,

19   170–71, 59 S. Ct. 134, 136–37 (1938); *Levy v. Cohen*, 19 Cal. 3d 165, 172–73 (1977).

20          Moreover, even if the stipulation did violate California public policy as expressed in

21   § 16600 or Rule 1-500—it does not—that public policy does not control this case.[16]  Ensuring the

---

23   [16]   The Plaintiff Trusts never waived the argument that federal law controls the outcome of this
24   case.  "Although no bright line rule exists to determine whether a matter [h]as been properly raised
     below, an issue will generally be deemed waived on appeal if it was not raised sufficiently for the
25   trial court to rule on it."  *Mercury Interactive Corp. Sec. Litig. v. Mercury Interactive Corp.*, 618
     F.3d 988, 992 (9th Cir. 2010) (internal quotation marks and citation omitted).  The determination
26   as to whether an argument has been waived is a matter of judicial discretion.  *Id.*  Here, the Trusts
     have not waived the right to argue that federal law governs the enforceability of the stipulated
27   settlement because the argument was raised sufficiently at each stage of these proceedings.  In the
     initial *Motion to Enforce* [Dkt. No. 208], the Trusts raised the argument that "[a]pplication of
28   Section 16600 would also interfere with the purposes of Section 524(g) settlement trusts, and is

*(FOOTNOTE CONTINUED)*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1  integrity of the Trusts' administration of asbestos claims resolved pursuant to § 524(g) is a matter

2  infused with the federal interest. As the Ninth Circuit noted in a prior appeal from the underlying

3  *Thorpe Insulation* case, the bankruptcy court has a special role in furthering this federal interest:

4      The purpose of § 524(g) is to consolidate a debtor's asbestos-related assets and
       liabilities into a single trust for the benefit of asbestos claimants. [] Congress
5      intended that the trust/injunction mechanism be "available for use by any asbestos
       company facing … overwhelming liability." *See id.* at 48. Congress tasked
6      bankruptcy courts with ensuring that § 524(g)'s "high standards" are met and gave
       them authority to implement and supervise this unique procedure. *See id.* at 47. A
7      claim based on a debtor's efforts to seek for itself and third parties the protections
       of § 524(g) implicates and tests the efficacy of the provision's underlying policies.
8      Because Congress intended that the bankruptcy court oversee all aspects of a
       § 524(g) reorganization, only the bankruptcy court should decide whether the
9      debtor's conduct in the bankruptcy gives rise to a claim for breach of contract.

10  *Cont'l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.)*, 671 F.3d 1011, 1022 (9th

11  Cir. 2012), *cert. denied* 568 U.S. 815, 133 S. Ct. 119 (2012). Indeed, in his *Mandelbrot I* dissent,

12  Judge Korman argued that the provision barring Mandelbrot from filing claims with the Trusts is

13  enforceable because "[t]here is a significant federal interest in its enforceability as a means to

14  protect both the assets of congressionally-authorized asbestos trusts, and the integrity of

15  bankruptcy court proceedings." *Mandelbrot I*, 870 F.3d at 1131 (Korman, S.D.J. dissenting).

16

17  _____

18  therefore preempted. In connection with asbestos settlement trusts, courts have repeatedly found

19  state laws regarding private contracts expressly and impliedly preempted by the U.S. Bankruptcy
    Code. The same is true here." *Mtn. to Enforce,* 20:12–20 (citations omitted). Citing the Trusts'
20  purpose to provide "fair and equitable treatment for all Trust Claims that may presently exist or
    may arise in the future in substantially the same manner," *id.* at 20:20–22, the *Motion to Enforce*
21  explained that "[a]pplication of Section 16600 to preclude a lawyer's stipulated agreement to Trust
    findings of unreliability, and to the stipulated end of his claims-filing activity, would directly
22  contravene the TDPs and the purposes of Section 524(g) asbestos trusts. Accordingly, California
    Business & Professions Code §16600 is preempted." *Id.* at 20:24–27. Mandelbrot did not
23  respond to the preemption argument in his opposition to the *Motion to Enforce, see* Dkt No. 216,
24  and the Trusts again raised the argument in reply, *see* Dkt. No. 217 ("even if Section 16600 was
    otherwise applicable, Section 16600 would be preempted by the Bankruptcy Code, as set forth in
25  the Trusts' Motion"). The Trusts likewise raised the argument on appeal before the District Court.
26  *See Appellees' Answering Brief*, Dist. Ct. Dkt No. 22, at 29:4–30:12 ("[The Trusts] are creatures
    of federal bankruptcy law …. California public policy as expressed in § 16600 or Rule 1-500 …
27  does not control this case" nor does it "trump the federal … public policies that clearly favor
    enforcement of the stipulation in accordance with its terms."). And again on appeal before the
28  Ninth Circuit. *See Appellees' Answering Brief*, 9th Cir. Dkt No. 21, at § VI.E. (same).

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

1    The Trusts are thus federal actors imbued by Congress and by the Bankruptcy Code with a

2  federal purpose: to protect their assets for the benefit of present and future trust beneficiaries.  *See,*

3  *e.g.*, § 524(g)(2)(B)(i) (requiring the establishment of a trust) and § 524(g)(2)(B)(ii)(V)

4  (mandating trust distribution procedures providing reasonable assurance that present and future

5  claims will be treated similarly).  The Trusts have the power to further their federal purpose by

6  regulating the attorneys entitled to participate before them, and that power includes the power to

7  bar Mandelbrot from filing claims.  *See, e.g.*, *Mandelbrot I*, 870 F.3d at 1135 (Korman, S.D.J.

8  dissenting) ("the privilege of practice before federal tribunals, including nonjudicial ones, has

9  always been subject to exclusive federal control").  Thus the Trusts, as entities imbued with a

10  federal purpose, may carry out federal policy even in the face of otherwise applicable state law.

11  Furthermore, the regulation of professionals who act before the Trusts is crucial to the Trusts'

12  federal purpose, and thus warrants preemption of any law—even one allegedly of general

13  application—that could imperil that objective.  *See id.* at 1123 ("Trusts often compensate

14  claimants through a streamlined procedure less clunky than traditional litigation. This system

15  diverts fewer resources away from compensating claimants, which is generally a good thing.  But

16  because these nonadversarial procedures present the opportunity for untested chicanery, the trusts

17  can take steps to debar a lawyer suspected of submitting bogus compensation claims.").

18    The provision barring Mandelbrot from filing claims with the Trusts is thus consistent with

19  the purposes and federal public policy underlying the Trusts.  Snyder Decl., ¶ 31.  The Trusts'

20  TDPs further the federal public policy of § 524(g) by adopting streamlining procedures designed

21  to distribute the greatest possible share of the Trust assets to claimants, rather than consume those

22  assets in adjusting or litigating individual claims.  *Id.*  By adopting non-adversarial standards of

23  evidence, the Trusts are exposed to the potential for abuse.  *Id.*  The ability to debar therefore

24  furthers the federal public policy of adopting procedures that reduce the expense of adjusting

25  individual claims, limit abuse, and conserve the resources of the Trusts for the benefit of those

26  holding legitimate claims.  *Id.*  Any inconsistent California statute or State Bar rule is therefore

27  preempted by § 524(g) which expressly directs the bankruptcy court to condition approval of the

28  reorganization plan creating the trust on the basis that "the trust will operate through mechanisms

such as structured, periodic, or supplemental payments, pro rata distributions, matrices, or periodic review of estimates of the numbers and values of present claims and future demands, or other comparable mechanisms, that provide reasonable assurance that the trust will value, and be in a financial position to pay, present claims and future demands that involve similar claims in substantially the same manner." § 524(g)(2)(B)(ii)(V).    The Trusts' court-approved TDPs, including the debarment power in TDP § 5.7, implement this statutory mandate and would override any contrary state law, if any existed.

## IV.  CONCLUSION

For the foregoing reasons, the Trusts respectfully submit that the Mandelbrot settlement should be enforced and that the Bankruptcy Court Orders should be supplemented as necessary to support that conclusion on remand.

DATED: Jan. 12, 2018                    Respectfully submitted,


                                        */s/ Daniel J. Bussel*
                                        Daniel J. Bussel

                                        Daniel J. Bussel (State Bar No. 121939)
                                        Thomas E. Patterson (State Bar No. 130723)
                                        Sasha Gurvitz (State Bar No. 301650)
                                        KLEE, TUCHIN, BOGDANOFF & STERN LLP

                                        *Appellate Counsel for the J.T. Thorpe Settlement Trust and
                                        Thorpe Insulation Company Asbestos Settlement Trust*

                                        and

                                        Benjamin P. Smith (State Bar No. 197551)
                                        MORGAN LEWIS & BOCKIUS LLP

                                        *Trial Counsel for the J.T. Thorpe Settlement Trust and
                                        Thorpe Insulation Company Asbestos Settlement Trust*

KLEE, TUCHIN, BOGDANOFF & STERN LLP
1999 AVENUE OF THE STARS, THIRTY-NINTH FLOOR
LOS ANGELES, CALIFORNIA 90067
TELEPHONE: 310-407-4000

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 1999 Avenue of the Stars, Thirty-Ninth Floor Los Angeles, CA 90067.

A true and correct copy of the foregoing document entitled (*specify*):   **PLAINTIFFS J.T. THORPE SETTLEMENT TRUST AND THORPE INSULATION COMPANY ASBESTOS SETTLEMENT TRUST'S OPENING BRIEF ON REMAND**  will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*)  Jan, 12, 2018   I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

SEE ATTACHED SERVICE LIST

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*)  Jan. 12, 2018  , I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

The Honorable Sheri Bluebond
U.S. Bankruptcy Court
Roybal Federal Building
Bin outside of Suite 1534
255 E. Temple Street
Los Angeles, CA 90012

☒ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| Jan. 12, 2018 | Sasha M. Gurvitz | */s/ Sasha M. Gurvitz* |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**ADDITIONAL SERVICE INFORMATION (if needed):**

**SERVICE BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**

- Daniel J Bussel      dbussel@ktbslaw.com
- David N Chandler     courtdocsdncpc@gmail.com
- Dennis D Davis       mvelasquez@gsdllaw.com
- Gary S Fergus        gfergus@ferguslegal.com
- Gabriel I Glazer     gglazer@pszjlaw.com
- Gregory K Jones      gjones@afrct.com, CAcossano@dykema.com;DocketLA@dykema.com
- Eve H Karasik        ehk@lnbyb.com
- Michael J Mandelbrot     mandelbrot@asbestoslegalcenter.org, mjmandelbrot@yahoo.com
- Merle Meyers         mmeyers@mlg-pc.com
- Danielle A Pham      dpham@gordonsilver.com
- Marcy Railsback      marcy@bovinorailsback.com, marcyrailsback@hotmail.com
- United States Trustee (LA)      ustpregion16.la.ecf@usdoj.gov

**SERVICE BY EMAIL**

- Dirk Van Ausdall      dirkvanausdall@gmail.com
- Michael Mandelbrot   mandelbrot@asbestoslegalcenter.org

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.